IN THE U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SANDRA C. TORRES, Individually | § | |
| and as Mother and Representative of | § | |
| the Estate of Decedent, ELIAHNA | § | |
| TORRES, and as Next Friend of E.S.T., | § | |
| Minor Child; ELI TORRES, JR.; and | § | |
| JUSTICE TORRES, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00059-AM-CW |
| | § | |
| DANIEL DEFENSE, LLC, ET AL., | § | |
| | § | |
| *Defendants.* | § | |

## DANIEL DEFENSE, LLC'S
## RULE 12(b)(6) MOTION TO DISMISS

TO CHIEF UNITED STATES DISTRICT JUDGE ALIA MOSES:

Now comes Defendant Daniel Defense, LLC f/k/a Daniel Defense, Inc. ("Daniel Defense") and files this Rule 12(b)(6) Motion to Dismiss.  The Court should dismiss all of Plaintiffs' claims against Daniel Defense as congressionally mandated by the Protection of Lawful Commerce in Arms Act (15 U.S.C. § 7901 *et seq.*) (the "PLCAA").

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND .............................................................................................................2

I.  Plaintiffs sue Daniel Defense for negligence arising out of the Uvalde school shooting. ..................................................................................................................2

ARGUMENTS AND AUTHORITIES...........................................................................3

I.  The standards for dismissal under Rule 12(b)(6) are well established. ...............3

II.  The PLCAA broadly prohibits bringing actions against firearms manufacturers and sellers arising out of the criminal misuse of firearms by third parties. .........4

    A.  Congress provided extensive findings in support of its legislation and clearly laid out its purposes......................................................................4

    B.  The PLCAA prohibits bringing "qualified civil liability actions."..........6

III.  Plaintiffs' action against Daniel Defense is "a qualified civil liability action" and should be dismissed. .........................................................................................9

IV.  Plaintiffs cannot rely on the FTCA as a "predicate exception," to avoid statutory immunity under the PLCAA, for four reasons....................................................10

    A.  The FTCA does not qualify as a predicate exception statute under Section 7903(5)(A)(iii) because it is not *specifically* applicable to the sale or marketing of firearms...........................................................................11

        1.  Federal courts narrowly construe the predicate exception, limiting it to statutes that specifically regulate firearms..........................11

        2.  The FTCA is a general statute not specifically "applicable to the sale or marketing" of firearms.  Consequently, it cannot serve as a predicate exception. ................................................................15

    B.  This Court has no jurisdiction to consider whether the FTCA was violated because that is a matter within the Federal Trade Commission's exclusive jurisdiction. ....................................................................................17

        1.  Plaintiffs do not have a cause of action under the FTCA and, thus, lack standing to enforce the statute..........................................17

165441

2.    This Court lacks jurisdiction to consider violations of the FTCA because such matters are within the exclusive jurisdiction of the Federal Trade Commission. ......................................................................18

C.    Plaintiffs fail to plead required elements for an "unfair" act or practice under the FTCA, and one element they can never plead. ......................................19

1.    There are three elements for an "unfair" act or practice under the FTCA. ..................................................................................................20

2.    Plaintiffs fail to plead the second element of an "unfair" act or practice (and inadequately plead the other two elements). ........................21

3.    Plaintiffs can never plead the second element of an "unfair" act or practice in this case. ................................................................................23

D.    Plaintiffs do not allege any facts that any supposed unfair act or practice proximately caused their injuries. ........................................................24

V.    The Court should deny Plaintiffs leave to amend their claims because any amendment would be futile. ....................................................................................26

CONCLUSION ............................................................................................................27

CERTIFICATE OF SERVICE ....................................................................................28

iii

165441

## INTRODUCTION

On May 24, 2022, an Assailant[1] attacked Robb Elementary School killing 19 students and two teachers and injuring 18 others (the "Shooting").  Plaintiffs in this lawsuit include the mother and siblings of one of the deceased students.  Plaintiffs sue Daniel Defense as the manufacturer and seller of the firearm used in the Shooting (the "Subject Firearm").  The Assailant's victims and their families, including Plaintiffs, deserve the compassion of their community, the people of Texas, and our Nation.  The law, however, prohibits Plaintiffs from bringing their claims against the innocent manufacturer of a lawful product, Daniel Defense, that properly transferred, under federal and state law, the Subject Firearm to a Texas federal firearms licensee ("FFL"), who then lawfully transferred the firearm to the Assailant.  It is the criminal who committed the crime, not Daniel Defense.

The Court should dismiss all of Plaintiffs' claims against Daniel Defense because the PLCAA, *crafted and enacted for extremely important legal and societal reasons*, requires holding Daniel Defense immune from this suit. *See* Section III, *infra*.  With the PLCAA, Congress prohibited *bringing* actions against firearms manufacturers and sellers for harm caused by the criminal conduct of individuals like the Assailant.  The PLCAA is not just a defense to liability; it mandates *immunity from suit.  See In re Academy, Ltd.*, 625 S.W.3d 19, 34 (Tex. 2021) (citing federal cases) ("*Academy*").

Plaintiffs attempt to plead the so-called "predicate exception" to the PLCAA.  This exception exempts a claim from immunity if the defendant knowingly violated a state or federal statute "applicable to the sale or marketing" of firearms.  Plaintiffs allege the Federal Trade Commission Act (15 U.S.C. § 45 *et seq.*) (the "FTCA") is such a predicate exception and that

---

[1] Daniel Defense refers to Salvador Ramos as the "Assailant" to minimize reference to this criminal and deny him the notoriety he sought.

1

165441

Daniel Defense violated it by committing "unfair" acts and practices in marketing its products. Plaintiffs' reliance on the FTCA fails, as a matter of law, for four reasons.

First, the FTCA is not a predicate statute at all because it does not specifically regulate firearms, as federal precedent requires for a statute to qualify as a predicate exception. *See* Section IV(A), *infra*. Second, even if the FTCA was a predicate statute, the Court lacks jurisdiction to consider it here. Rather, the Federal Trade Commission has exclusive jurisdiction over the statute and whether it has been violated. *See* Section IV(B), *infra*. Third, even if: (1) the FTCA qualified as a predicate exception, and (2) the Court had jurisdiction to consider Plaintiffs' FTCA argument, it still fails because Plaintiffs do not plead the elements of a violation of the act and, in fact, can never plead required elements for such a violation. *See* Section IV(C), *infra*. Finally, Plaintiffs fail to allege any facts that Daniel Defense's supposed violations of the FTCA proximately caused their injuries. *See* Section IV(D), *infra*.

Daniel Defense is not and cannot be liable for the criminal acts of the Assailant. All of Plaintiffs' claims against Daniel Defense are precluded by the PLCAA, and Daniel Defense is immune from suit. Accordingly, the Court should dismiss all of Plaintiffs' claims against Daniel Defense with prejudice.

## BACKGROUND

### I.    Plaintiffs sue Daniel Defense for negligence arising out of the Uvalde school shooting.

Plaintiffs filed their Original Complaint on November 28, 2022. Doc. 1. In addition to suing Daniel Defense, Plaintiffs also sued multiple governmental entities, government officers, and others. *Id.* With respect to Daniel Defense, Plaintiffs assert only a single cause of action for negligence. *Id.*, ¶¶ 220-233 (First Cause of Action). Plaintiffs maintain Daniel Defense "was subject to the general duty imposed on all persons not to expose others to reasonably foreseeable

165441

risks of injury." *Id.*, ¶ 221.  Plaintiffs request actual and exemplary damages.  *See id.*, p. 75 (Prayer for Relief).  Plaintiffs seek damages of $100 billion.

Over two months after filing suit, Plaintiffs have not served any Defendant or even requested citation to serve any Defendant.

## ARGUMENTS AND AUTHORITIES

**I.     The standards for dismissal under Rule 12(b)(6) are well established.**

The standards governing motions to dismiss under Rule 12(b)(6) are well known and, recently, this Court summarized them.

> To survive dismissal under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

> The factual allegations of the complaint must be taken as true, and all reasonable inferences must be drawn in favor of a plaintiff's claims. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Galindo v. City of Del Rio*, No. DR-20-CV-20-AM/CW, 2021 WL 2763033, at *2 (W.D. Tex. Mar. 26, 2021); *see Fernandez-Lopez v. Hernandez*, No. DR:19-CV-46-AM-CW, 2020 WL 9396523, at *10 (W.D. Tex. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020) (citing standards).

While the Court must accept all of Plaintiffs' factual allegations as true for purposes of Rule 12(b)(6), that "tenet . . . is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678; *see*

165441

*BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist. of Jefferson Cnty., Tex.*, 49 F.4th 420, 425 (5th Cir. 2022) (citing *Iqbal* and stating "we do not presume that a complaint's legal conclusions are true, no matter how well they are pleaded"); *Mandawala v. Northeast Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (same).

Applying these standards, the Court should dismiss all of Plaintiffs' claims against Daniel Defense.

## II.    The PLCAA broadly prohibits bringing actions against firearms manufacturers and sellers arising out of the criminal misuse of firearms by third parties.

### A.    Congress provided extensive findings in support of its legislation and clearly laid out its broad purposes.

Congress enacted the PLCAA on October 26, 2005.   Congress enumerated several findings in support of its legislation recognizing a variety of concerns –constitutional, legal, and commercial– with respect to actions against firearms manufacturers and sellers arising from the criminal conduct of others.  15 U.S.C. § 7901(a).[2]  Those findings are:

- The Second Amendment preserves the right of the people to keep and bear arms, including of individuals not in the military.

- Lawsuits have been commenced against manufacturers, distributors, and dealers of firearms, which operate as designed and intended, for harm caused by misuse by third parties, including criminals.

- Businesses engaged in lawful interstate and foreign commerce regarding firearms "***are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended.***"

- Imposing liability on an entire industry for harm solely caused by others, including criminal actors, is an abuse of the legal system, erodes confidence in the Nation's laws, threatens to diminish constitutional rights and civil liberties, destabilizes industries

---

[2] Daniel Defense includes a copy of the PLCAA as Appendix 1, and citations to the statute in this motion are hyperlinked to the appendix for the Court's convenience.

lawfully competing in our free enterprise system, and is an unreasonable burden on interstate and foreign commerce.

● The liability actions commenced or contemplated by litigants against the firearm industry are based on theories without foundation in the common law and jurisprudence of the United States and sustaining such actions "would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislators of the several states" and would constitute a deprivation of rights guaranteed by the Fourteenth Amendment.

● The liability actions commenced or contemplated by litigants against the firearm industry "attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees" threating the Separation of Powers doctrine and weakening principles of federalism, State sovereignty and comity between the States.

15 U.S.C. § 7901(a) (emphasis added).

Congress next set out seven broad purposes for the PLCAA, including:

(1) ***Prohibiting "causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."***

(2) ***Preserving citizens' access to firearms and ammunition "for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting."***

(3) Guaranteeing citizens' rights, privileges, and immunities under the Fourteenth and Fifth amendments to the Constitution.

(4) ***Preventing "the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce."***

(5) Protecting the First Amendment rights of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

5

165441

     (6)     Preserving and protecting the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

     (7)     Exercising congressional power under the Full Faith and Credit Clause of the Constitution.

15 U.S.C. § 7901(b) (emphasis added).

     **B.**     **The PLCAA prohibits bringing "qualified civil liability actions."**

Next, in Section 7902, "Prohibition on bringing of qualified civil liability actions in Federal or State court," Congress prohibited bringing any "qualified civil liability actions" in federal or state court.

     **(a) In general**

A ***qualified civil liability action*** may not be brought in any Federal or State court.

     **(b) Dismissal of pending actions**

A qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending.

15 U.S.C. § 7902 (bold italics added).

In Section 7903(5)(A), Congress defined a "qualified civil liability action" as well as ***six exceptions*** to such an action.

     The term "qualified civil liability action" ***means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party***, but shall not include--

          **(i)** an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law,

by a party directly harmed by the conduct of which the transferee is so convicted;

**(ii)** an action brought against a seller for negligent entrustment or negligence per se;[3]

**(iii)** an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--[4]

> **(I)** any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

> **(II)** any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

**(iv)** an action for breach of contract or warranty in connection with the purchase of the product;

**(v)** an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

**(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

---

[3] There is no exception for ordinary negligence claims. *Id.*

[4] In the PLCAA caselaw, this exception is referred to as the "predicate exception."

15 U.S.C. § 7903(5)(A) (bold italics added).   Thus, if an action meets the definition of a "qualified civil liability action," it is barred unless an exception is established.[5]

The PLCAA clearly prohibits civil actions against manufacturers and sellers for actual and punitive damages, injunctive or declaratory relief, as well as "other relief." *Id.*[6]  The statute provides immunity from suit as the Texas Supreme Court explained in *Academy*.

> "By its terms, the Act bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that fall within the Act's exceptions."   ***The PLCAA thus "immunizes a specific type of defendant from a specific type of suit" and "bars the commencement or the prosecution of qualified civil liability actions.***"

*Academy*, 625 S.W.3d at 35 (quoting *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397–398 (2d Cir. 2008)) (emphasis added); *see Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (stating the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims").

Importantly, no provision in the PLCAA "shall be construed to create a public or private cause of action or remedy."   15 U.S.C. § 7903(5)(C); *see Academy*, 625 S.W.3d at 30 (acknowledging the PLCAA does not create a public or private cause of action); *see also Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1133 (D. Nev. 2019) (same); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) (same).

---

[5] Plaintiffs attempt to assert the predicate exception based on the FTCA.  Doc. 1, ¶¶ 227, 230.  As shown below, this exception is inapplicable as a matter of law.

[6] Under the PLCAA, a "manufacturer" means "with respect to a qualified product, a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of Title 18." 15 U.S.C. § 7903(2).  Daniel Defense is a "manufacturer" for purposes of the PLCAA.  Daniel Defense is also a "seller" as defined in 15 U.S.C. § 7903(6) which includes a "dealer" as defined in 18 U.S.C. § 921(a)(11).  The definition of a "dealer" includes "any person engaged in the business of selling firearms at wholesale or retail . . . ."  *Id.*  Daniel Defense sells the firearms it manufactures including the Subject Firearm.  A "qualified product" "means a firearm as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18, including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).  The Subject Firearm is a "qualified product."

**III.    Plaintiffs' action against Daniel Defense is "a qualified civil liability action" and should be dismissed.**

Plaintiffs' action against Daniel Defense is within the broad scope of the PLCAA.  Again, a "qualified civil liability action" has five separate requirements, including:

> (i)     "a civil action or proceeding or an administrative proceeding",
>
> (ii)    "brought by any person",
>
> (iii)   "against a manufacturer or seller of a qualified product, or a trade association",
>
> (iv)    "for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief", and
>
> (v)     "resulting from the criminal or unlawful misuse of a qualified product by the person or third party".

15 U.S.C. § 7903(5); *Academy*, 625 S.W.3d at 26.

Plaintiffs' Complaint satisfies all five elements of a "qualified civil liability action." ***First***, the Complaint is indisputably a "civil action or proceeding" because it is a lawsuit filed in this Court.  ***Second***, the action is brought by multiple people –Plaintiffs.  ***Third***, the complaint is brought against the manufacturer and seller of a qualified product.  It is undisputed that Daniel Defense manufactured and sold, through the FFL transfer process, the Subject Firearm.  *See* Doc. 1, ¶ 6 (stating Assailant bought Subject Firearm manufactured by Daniel Defense); *id.*, ¶ 224 (stating Daniel Defense sold Subject Firearm to Assailant).  ***Fourth***, Plaintiffs seek actual and exemplary damages from Daniel Defense.  *Id.*, p. 75.  ***Fifth***, Plaintiffs' claims against Daniel Defense result from "the criminal or unlawful use of a qualified product by" a "third party." *Id.*, ¶ 2 (stating Assailant "murdered 19 children and two teachers").

Plaintiffs' action against Daniel Defense is squarely within the PLCAA's definition of a "qualified civil liability action".  Accordingly, the Court should grant Daniel Defense's motion

165441

and dismiss all of Plaintiffs' claims against it.  *See e.g.*, *Prescott*, 410 F. Supp. 3d at 1146 (granting Rule 12(b)(6) motion based on the PLCAA and dismissing, with prejudice, plaintiffs' claims for public nuisance, negligent infliction of emotional distress, negligence per se, and negligent entrustment); *Phillips*, 84 F. Supp. 3d at 1228 (dismissing all of plaintiffs' claim and concluding plaintiffs failed to establish alleged predicate exception or negligent-entrustment exception); *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL 9103469, at *8 (N.D. W. Va. Nov. 5, 2010), *aff'd*, 436 F. App'x 151 (4th Cir. 2011) (granting motion to dismiss after concluding plaintiffs failed to establish a PLCAA exception).

## IV.    Plaintiffs cannot rely on the FTCA as a "predicate exception," to avoid statutory immunity under the PLCAA, for four reasons.

Plaintiffs recognize the applicability of the PLCAA in their complaint.  With respect to Defendant Oasis Outback, LLC, Plaintiffs explicitly invoke the negligent entrustment exception. Doc. 1, ¶¶ 242, 253; 15 U.S.C. § 7903(a)(5)(ii).  With respect to Daniel Defense, Plaintiffs attempt to plead a predicate exception based on the Federal Trade Commission Act (the "FTCA").   Again, the predicate exception applies when a firearm manufacturer or seller "knowingly violates" a state or federal statute "applicable to the sale or marketing" of  the firearm and "the violation was a proximate cause of the harm for which relief is sought . . . ."  15 U.S.C. § 7903(5)(a)(iii).  Plaintiffs repeatedly allege that Daniel Defense "knowingly violated" the FTCA, and that this was a proximate cause of Plaintiffs' injuries.  *See* Doc. 1, ¶ 227 ("Defendant Daniel Defense also violated the Federal Trade Commission Act, 15 U.S.C. § 45(a), by ***knowingly engaging in unfair practices***.") (emphasis added); *id.*, ¶ 230 ("***These knowing violations of the FTC Act were a proximate cause*** of . . . the wrongful death of Eliahna Torres . . . .") (emphasis added).  As a matter of law, Plaintiffs cannot rely on the FTCA as a predicate exception for four reasons.

165441

A. **The FTCA does not qualify as a predicate exception statute under Section 7903(5)(A)(iii) because it is not *specifically* appliable to the sale or marketing of firearms.**

A statute will qualify as a predicate exception if it is "a State or Federal statute ***applicable to the sale or marketing of the product***, and the violation was a proximate cause of the harm for which relief is sought . . . ."   15 U.S.C. § 7903(5)(A)(iii) (emphasis added).   Section 7903(5)(A)(iii) identifies two examples of qualifying predicate statutes: (1) those requiring record keeping of firearms, and (2) selling a qualified product to a person who is prohibited from possessing or receiving a firearm in violation of 18 U.S.C. § 922 (g) or (n).   15 U.S.C. § 7903(5)(A)(iii)(I)-(II).   Federal courts construing the phrase "applicable to the sale or marketing of the product" repeatedly hold that the predicate exception only applies to statutes that ***specifically*** regulate the sale and marketing of firearms and not to statutes of general application.

1. **Federal courts narrowly construe the predicate exception, limiting it to statutes that specifically regulate firearms.**

In *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009), the court considered whether a New York general public nuisance statute was "applicable to the sale and marketing" of firearms and, thus, a predicate statute.   The city argued that a statute is "applicable" simply when it is "capable of being applied."   *Id.* at 400. The Second Circuit rejected this broad interpretation of Section 7903(5)(A)(iii) and conducted a detailed analysis explaining why such general statutes are not "applicable to the sale and marketing" of firearms.

First, the court noted that context is key.   "The meaning of the term 'applicable' must be determined here by reading that term in the context of the surrounding language and of the statute as a whole."   *Id.* at 400 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see Vitol, Inc. v. U.S.*, 30 F.4th 248, 250 (5th Cir. 2022) (stating "[t]ext cannot be divorced from

165441

context, and statutory meaning is not always common meaning. Congress's words must be read as part of a contextual whole."); *United States v. Koutsostamatis*, 956 F.3d 301, 306 (5th Cir. 2020) (same); *La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3045657, at \*7, n.10 (W.D. Tex. Aug. 2, 2022) (same).

Next, the court considered the canons of statutory construction including "*noscitur a sociis*" – "it is known by its associates." *Id.* at 401.[7] More specifically, "the meaning of one term may be determined by reference to the terms it is associated with, and [that] where specific words follow a general word, the specific words restrict application of the general term to things that are similar to those enumerated." *Id.*[8] Applying this canon, the court concluded that "applicable to" means statutes clearly intended to regulate firearms.

> ***The general language contained in section 7903(5)(A)(iii) (providing that predicate statutes are those "applicable to" the sale or marketing of firearms) is followed by the more specific language*** referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. § 7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling firearms directly to prohibited purchasers, 15 U.S.C. § 7903(5)(A)(iii)(II). Statutes applicable to the sale and marketing of firearms are said to include statutes regulating record-keeping and those prohibiting participation in direct illegal sales. ***Thus, the general term—"applicable to"—is to be "construed to embrace only objects similar to those enumerated by" sections 7903(5)(A)(iii)(I) and (II).*** *See Keffeler,* 537 U.S. at 384, 123 S.Ct. 1017. ***We accordingly conclude that construing the term "applicable to" to mean statutes that clearly can be said to regulate the firearms industry more accurately reflects the intent of Congress.***

*Id.* at 402 (emphasis added).

---

[7] Courts presume that "Congress legislates with knowledge of [these] basic rules of statutory construction." *Koutsostamatis*, 956 F.3d at 307 (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991)).

[8] The Fifth Circuit also uses this canon in construing statutes. *See e.g.*, *Easom v. US Well Services, Inc.*, 37 F.4th 238, 243–244 (5th Cir. 2022) ("Applying *noscitur a sociis* to this case, the appearance of 'natural disaster' in a list with 'flood, earthquake, or drought" suggests that Congress intended to limit "'natural disaster' to hydrological, geological, and meteorological events."); *Federal Deposit Ins. Corp. v. Belcher*, 978 F.3d 959, 963–964 (5th Cir. 2020) (applying same canon to determine that FDIC is not "the appropriate" federal regulator in that case).

The court further explained its interpretation was consistent with Congress' finding that firearms are "heavily regulated" by Federal law.  *See* 15 U.S.C. § 7901(a)(4) (listing regulatory statutes), and that statutory exceptions must be narrowly construed so as not to undermine the statute's purpose.

> We think Congress clearly intended to protect from vicarious liability members of the firearms industry who engage in the "lawful design, manufacture, marketing, distribution, importation, or sale" of firearms. Preceding subsection (a)(5), Congress stated that it had found that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Control Act." 15 U.S.C. § 7901(a)(4). ***We think the juxtaposition of these two subsections demonstrates that Congress meant that "lawful design, manufacture, marketing, distribution, importation, or sale" of firearms means such activities having been done in compliance with statutes like those described in subsection (a)(4).***
>
> This conclusion is supported by the "interpretive principle that statutory exceptions are to be construed 'narrowly in order to preserve the primary operation of the [general rule].'" ***In the "broader context of the statute as a whole," . . . resort to the dictionary definition of "applicable"—i.e. capable of being applied—leads to a far too-broad reading of the predicate exception. Such a result would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets.***

*Id.* at 402-403 (citations omitted) (emphasis added); *see Easom*, 37 F.4th at 244 (stating principle of narrow construction of exceptions justified not expanding definition beyond what was justified by the act's statutory language, context, and purpose).[9]  Simply put, statutes "applicable

---

[9] Further, the Fifth Circuit has repeatedly held that when a federal statute broadly prohibits certain actions, any statutory exceptions must be narrowly construed.  *See Gibbs v. Lufkin Indus., Inc.*, 487 F. App'x 916, 919 (5th Cir. 2012) (explaining that because Anti-Injunction Act is "an absolute prohibition" against enjoining state court proceedings, its exceptions "are narrow and are not [to] be enlarged by loose statutory construction").  *Gibbs v. Lufkin Indus., Inc.*, 487 F. App'x 916, 919 (5th Cir. 2012); *Mitchell v. Holder*, 261 F. App'x 728, 729 (5th Cir. 2008) (same).  Here, the PLCAA provides a broad prohibition –a "qualified civil liability action ***may not be brought*** in any Federal or State Court."  15 U.S.C. § 7902(a) (emphasis added).  Thus, the statutory exceptions to this broad prohibition must be narrowly construed.  *Gibbs*, 487 F. App'x at 919.

13

165441

to the sale or marketing" of firearms are those that specifically regulate this activity, like those listed in Section 7901(a)(4) and 7903(5)(A)(iii).  Considering the context of the statute, and the applicable canons of statutory construction, the court held the predicate exception did not encompass New York's general criminal nuisance statute.  *City of New York*, 524 F.3d at 404.

The Ninth Circuit reached a similar conclusion in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009).  In that case, the plaintiffs argued that a California general negligence statute was applicable to the sale and marketing of firearms, invoking the predicate exception.  *Id.* at 1133. Rejecting the plaintiff's broad interpretation of the phrase "applicable to," the Ninth Circuit, like the Second Circuit, concluded that the exception applies to statutes like those listed in Section 7901(a)(4) – *i.e.*, statutes specifically regulating firearms.

> [C]ongressional findings speak to the scope of the predicate exception. Against the backdrop of Congress' findings on the unjustified "expansion of the common law," *id.,* Congress also found that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws," *id.* § 7901(a)(4).  ***We find it more likely that Congress had in mind only these types of statutes—statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction.***

*Id.* at 1136 (emphasis added); *see Prescott*, 410 F. Supp. 3d at 1137 (same).

*Prescott* is also instructive.  In that case, the plaintiff argued that a federal statute that criminalizes making a "materially false, fictitious, or fraudulent statement or representation" "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" (18 U.S.C. § 1001(a)(2)) qualified as a predicate exception. *Id.* at 1135.  Relying on *Ileto*, the district court held that Section 1001's broad prohibition on false statements was not limited to the sale and marketing of firearms and, thus, was not a predicate statute.

14

The legal backdrop explained in *Ileto* steers the Court to find that 18 U.S.C. § 1001(a)(2) cannot serve as a predicate statute for purposes of the PLCAA. First, § 1001(a)(2) ***is not specific to*** regulating "manufacturing, importing, selling, marketing, and using firearms or ... the firearms industry." ***It, instead, is a broad statute prohibiting false statements "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" even when the underlying statement is not required to be made or kept under another statute or regulation.***

Although the PLCAA provides an example of a predicate statute involving false statements (15 U.S.C. § 7903(5)(A)(iii)), that example is substantially different from 18 U.S.C. § 1001(a)(2). The PLCAA's false statement example applies when a manufacturer or seller "knowingly made any false entry in, or failed to make appropriate entry in, any record *required to be kept* under Federal or State law *with respect to* the qualified product ...." 15 U.S.C. § 7903(5)(A)(iii)(I) (emphasis added). ***Section 1001(a)(2), by contrast, prohibits falsification irrespective of statutory record-keeping requirements and irrespective of qualified products under the PLCAA. Section 1001(a)(2), consequently, is not a predicate statute.***

*Id.* at 1137 (citations omitted) (emphasis added).[10]

> **2.     The FTCA is a general statute not specifically "applicable to the sale or marketing" of firearms.   Consequently, it cannot serve as a predicate exception.**

Statutes "applicable to the sale or marketing" of firearms are determined in the context of the PLCAA. *City of New York*, 52 F.3d at 400. In this context, the only statutes that qualify as predicate statutes are like those listed in the PLCAA –statutes that ***specifically regulate*** firearms. *Id.* at 402; *Ileto*, 565 F.3d at 1136; *Prescott*, 410 F. Supp. 3d at 1137. The FTCA is clearly not such a statute.

---

[10] In contrast, courts will conclude that a statute is a predicate statute when it explicitly regulates firearms. *See National Shooting Sports Found., Inc. v. James*, No. 121CV1348MADCFH, 2022 WL 1659192, at *4 (N.D.N.Y. May 25, 2022) (holding state statute was a predicate statute because "[n]o reasonable interpretation of 'appliable to' can exclude a statute which imposes liability exclusively on gun manufacturers for the manner in which guns are manufactured, marketed, and sold").

165441

Section 5(A) of the FTCA applies to the advertising and marketing of virtually every good and service is phrased in extremely broad terms, stating: "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive act or practices in or affecting commerce, are hereby declared illegal."  15 U.S.C. § 45(a)(1).[11]  The statute applies generally to products or services.  *Id.*  *See Federal Trade Comm'n v. Colgate-Palmolive Co.*, 380 U.S. 374, 384–385 (1965) (noting breadth of Section 5(a)); *Jaymar-Ruby, Inc. v. Federal Trade Comm'n*, 651 F.2d 506, 507 (7th Cir. 1981) (stating Section 5(a) is a broad declaration); *Federal Trade Comm'n v. IFC Credit Corp.*, 543 F .Supp. 2d 925, 934 (N.D. Ill. 2008) (noting Section 5(a)'s broad terms).  Put differently, the FTCA applies "irrespective of qualified products under the PLCAA." *Prescott*, 410 F. Supp. 3d at 1137.  Further, the FTCA makes no reference to firearms.  15 U.S.C. § 45(a)(1).  The FTCA is a statute regulating conduct generally like those held not to be predicate statutes in *City of New York*, *Ileto*, and *Prescott*.

This Court must narrowly construe any exceptions to the PLCAA's  broad prohibition on actions against firearms manufacturers and sellers.  *City of New York*, 524 F.3d at 403; *Gibbs*, 487 F. App'x at 919.  Permitting a statute that generally regulates commerce to serve as a predicate exception violates this basic rule of statutory construction and thwarts Congress' intent to limit the predicate exception to only those statutes that specifically regulate firearms.  Only statutes like those listed in Section 7903(5)(A)(iii) and 7901(a)(4) –that particularly regulate the manufacture and sale of firearms– qualify as predicate statutes.  Because the FTCA does not specifically regulate firearms, Plaintiffs' reliance on the FTCA to invoke the predicate exception fails as a matter of law.

---

[11] While codified in 15 U.S.C. § 45(a)(1), in the jurisprudence, this statute is often referred to as "Section 5(a)."  *See In re Rust-Oleum Restore Mktg., Sales Practices & Products Liab. Litig.*, 155 F. Supp. 3d 772, 811, n. 24 (N.D. Ill. 2016) ("15 U.S.C. § 45(a)(1) is also Federal Trade Commission Act § 5(a).").

**B.     This Court has no jurisdiction to consider whether the FTCA was violated because that is a matter within the Federal Trade Commission's exclusive jurisdiction.**

Assuming, *arguendo*, that the FTCA qualifies as a predicate exception, Plaintiffs' reliance on the statute is still misplaced.  As a matter of law, Plaintiffs have no cause of action under the FTCA and, thus, lack standing to enforce it.  The Federal Trade Commission has exclusive jurisdiction to determine violations of the Act.  This Court, consequently, lacks jurisdiction as to whether the FTCA was violated.  Plaintiffs cannot rely on a "predicate statute" that this Court lacks jurisdiction to consider.

**1.     Plaintiffs do not have a cause of action under the FTCA and, thus, lack standing to enforce the statute.**

The Fifth Circuit has repeatedly stated that "[t]he Federal Trade Commission Act (FTC Act) *does not provide for private causes of action*."  *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016) (quoting *Fulton v. Hecht,* 580 F.2d 1243, 1248 n.2 (5th Cir. 1978)) (emphasis added); *Norris v. Fairbanks Capital Corp.*, 178 F. App'x 401, 403 (5th Cir. 2006); *see Arruda v. Curves Int'l, Inc.*, No. 6:20-CV-00092-ADA, 2020 WL 4289380, at *4 (W.D. Tex. July 27, 2020), *aff'd*, 861 F. App'x 831 (5th Cir. 2021) (same); *Arquero v. McGinnis Tessitore Wutscher LLP*, No. A-12-CV-432 LY, 2013 WL 12393919, at *2 (W.D. Tex. Mar. 8, 2013), *report and recommendation adopted*, No. A-12-CV-432-LY, 2013 WL 12393964 (W.D. Tex. Apr. 9, 2013) (same).  Because Plaintiffs have no private right of action under the FTCA, they necessarily lack standing to assert a violation of the statute.  *See Li Xi v. Apple Inc.*, 603 F. Supp. 2d 464, 470 (E.D.N.Y. 2009) ("Plaintiffs purport to bring this claim under § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair methods of competition in commerce. Apple argues, and this Court agrees, that *this provision may be enforced only by the Federal Trade Commission and not by private action*; competitors and

17

165441

consumers do not have standing to enforce this provision.") (emphasis added); *In re Pilgrim's Pride Corp.*, No. 08-45664 DML, 2011 WL 3799835, at *5 (Bankr. N.D. Tex. Aug. 26, 2011) (same).[12]

Rather, only the Federal Trade Commission has standing to enforce the FTCA.

        **2.     This Court lacks jurisdiction to consider violations of the FTCA because such matters are within the exclusive jurisdiction of the Federal Trade Commission.**

Rather than creating a private cause of action, the FTCA expressly empowers the Federal Trade Commission to prevent people and businesses from using "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2). If the Commission believes the act has been violated, then it (and it alone) can institute an administrative proceeding and issue a cease-and-desist order. 15 U.S.C. § 45(b). Any such order is subject to appellate review. 15 U.S.C. § 45(c). Further, only the Commission can commence actions for ***knowing*** violations of Section 5(a) in federal district courts and seek civil penalties. 15 U.S.C. § 45(m). Remedial power under the FTCA vests solely in the Commission. *Johnson v. Verrengia*, No. A-17-CA-00295-SS, 2017 WL 8181535, at *1 (W.D. Tex. June 19, 2017); *Carley v. Tomball Indep. Sch. Dist.*, No. CV H-18-2521, 2018 WL 6172529, at *4 (S.D. Tex. Nov. 26, 2018); *see United States v. Philip Morris Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003) (stating "[t]he FTC Act is enforced exclusively by the FTC"). Thus, "the FTC has exclusive jurisdiction under the FTCA. . . ." *Id.*; *see Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 459 (N.D. Cal. 2019) (citing same); *United States v. Arif*, No. 15-CR-57-LM, 2016 WL 5854217, at *3 (D.N.H. Oct. 6, 2016), *aff'd*, 897 F.3d 1 (1st Cir. 2018) (same); *Sullivan v. Philip Morris USA Inc.*, No. 03-796, 2005 WL 2123702, at *8 (W.D. La. Aug. 31, 2005) (same). Consequently, this Court lacks jurisdiction to

---

[12] Again, the PLCAA also does not provide a private cause of action. *See* 15 U.S.C. § 7903(5)(C) (stating no provision in the PLCAA "shall be construed to create a public or private cause of action or remedy"); *Academy*, 625 S.W.3d at 30 (acknowledging same).

165441

consider Plaintiffs' assertions under the FTCA as United States Magistrate Judge Mark Lane has explained.

> As there is no private right of action under the FTC Act, ***this court lacks jurisdiction to address Plaintiff's assertions thereunder***. *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (no federal subject matter jurisdiction where federal statute did not create private cause of action).

*Arquero v. McGinnis Tessitore Wutscher LLP*, No. A-12-CV-432 LY, 2013 WL 12393919, at *2 (W.D. Tex. Mar. 8, 2013), *report and recommendation adopted*, No. A-12-CV-432-LY, 2013 WL 12393964 (W.D. Tex. Apr. 9, 2013) (emphasis added).

The predicate exception applies only for a "knowing" violation of a statute applicable to the sale and marketing of firearms. 15 U.S.C. § 7903(5)(A)(iii). Plaintiffs' attempt to rely on the FTCA fails for lack of jurisdiction. Only the Federal Trade Commission has jurisdiction to determine whether the provisions of the FTCA have been violated, and only it can bring an action for a knowing violation of the statute. 15 U.S.C. § 45(m). Because this Court lacks jurisdiction to consider any assertion that Daniel Defense knowingly violated the FTCA, it cannot serve as the basis for a predicate exception.

### C. Plaintiffs fail to plead required elements for an "unfair" act or practice under the FTCA, and one element they can never plead.

The FTCA prohibits "unfair or deceptive acts or practices . . . ." 15 U.S.C. § 45(a). "Unfair" acts and practices are governed by a different standard than "deceptive" acts and practices. *Federal Trade Comm'n v. Nudge, LLC*, No. 2:19-CV-867-DBB-DAO, 2022 WL 2132695, at *12 (D. Utah June 14, 2022). Plaintiffs allege only "unfair" acts and practices. *See* Doc. 1, ¶ 100 ("Daniel Defense's marketing tactics are unfair and violated the [FTCA]."); *id.*, ¶ 227 ("Daniel Defense "also violated the [FTCA] by knowingly engaging in unfair trade practices."). More specifically, Plaintiffs allege Daniel Defense engaged in unfair acts and practices by marketing its products to young consumers and supposedly suggesting its products

19

can be used against civilians.  Doc. 1, ¶¶ 57-100; *see id.*, ¶ 92 (stating Daniel Defense markets firearms to "young male consumers" "by suggesting that its rifles can be used for offensive combat-style operations against non-combatants"); *id.*, ¶ 98 (stating "Daniel Defense's unfair and irresponsible marketing tactics . . . influenced [the Assailant] to carry out a horrific massacre"); *id.*, ¶ 228 (stating "Daniel Defense's marketing practices were unfair because they encouraged illegal misuse of their AR-15 style rifles").  But Plaintiffs fail to allege an actual FTCA violation, precluding it as a basis for a predicate exception.

### 1. There are three elements for an "unfair" act or practice under the FTCA.

"Unfair" acts or practices are prohibited under 15 U.S.C. § 45(a).  However, the Federal Trade Commission cannot declare a particular practice or act "unfair" unless it "is likely to cause substantial injury to consumers which ***is not reasonably avoidable by consumers themselves*** and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n) (emphasis added).  Thus, courts recognize three elements for an "unfair" practice or act.

> To be "unfair," a practice must be one that "[1] causes or is likely to cause substantial injury to consumers [2] ***which is not reasonably avoidable by consumers themselves*** and [3] not outweighed by countervailing benefits to consumers or to competition."

*Federal Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009) (emphasis added); *see Nudge, LLC*, 2022 WL 2132695, at \*12, n.159 (same); *Federal Trade Comm'n v. Vylah Tec LLC*, No. 217CV228FTM99MRM, 2018 WL 3656474, at \*7 (M.D. Fla. Aug. 2, 2018) (same); *Federal Trade Comm'n v. D-Link Sys., Inc.*, No. 3:17-CV-00039-JD, 2017 WL 4150873, at \*2 (N.D. Cal. Sept. 19, 2017) (same); *Federal Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 10654030, at \*6 (W.D. Wash. July 22, 2016) (same).  Plaintiffs' allegation that Daniel Defense committed "unfair" trade practices or acts fails for two reasons:  (1) they fail

to plead an essential element of an unfair act or practice –that the harm was not "reasonably avoidable" by the consumer himself, and (2) they can never plead this element.

> **2.      Plaintiffs fail to plead the second element of an "unfair" act or practice (and inadequately plead the other two elements).**

Plaintiffs do not adequately plead any of the three elements of an unfair act or practice. As for the first element, Plaintiffs allege Daniel Defense's marketing was unfair because it "encouraged the illegal misuse" of its products that "caused or was likely to cause substantial injury to consumers and *foreseeable victims of gun violence by increasing the risk that disaffected adolescent and young men predisposed towards committing acts of mass violence will carry out those acts.*"   Doc. 1, ¶ 228 (emphasis added).   The first element requires a substantial likelihood of injury *to the consumer*, not to victims of consumers who purchase marketed products to commit intentional crimes.   15 U.S.C. § 45(n); *Accusearch Inc.*, 570 F.3d at 1193.   Plaintiffs attempt to plead the required injury as the harm suffered by the victims of the consumer's crime, *i.e.*, the harm for which Plaintiffs seek damages.   Doc. 1, ¶ 228.   But nothing in Section 45(n), or the entire FTCA, suggests it is intended to protect victims of consumers who deliberately use purchased products to commit criminal acts.[13]

Next, and critically, *Plaintiffs completely ignore the second element and make no effort to plead the substantial injury the consumers suffered was "not reasonably avoidable by consumers themselves.*"   15 U.S.C. § 45(n).   Plaintiffs fail to allege actual facts (or even conclusory allegations) that consumers could not reasonably avoid injury from the alleged unfair marketing practice at issue.   Nor can Plaintiffs ever allege this element as discussed in the next section.

---

[13] While Plaintiffs recite the element "substantial injury to consumers," Plaintiffs do not allege facts of any actual injury experienced by consumers as opposed to criminal victims of consumers.  Doc. 1, ¶ 228; *see Iqbal*, 556 U.S. at 678 (stating  "formulaic recitation of the elements of a cause of action will not do").

165441

Finally, as to the third element, Plaintiffs only plead, in conclusory form, that the supposed harm from Daniel Defense's marketing practices is not outweighed by countervailing benefits to consumers or to competition.  Doc. 1, ¶ 229.

Dismissal under Rule 12(b)(6) is appropriate when a claimant fails to plead facts on each element of a claim.[14]  The same is true when a claimant fails to sufficiently plead the elements of an exception to immunity.  *See Hughes v. Oklahoma*, No. CIV-21-1094-F, 2022 WL 3970650, at *8 (W.D. Okla. Aug. 31, 2022) (dismissing Section 1983 claim because plaintiff "failed to plead facts sufficient to establish the second . . . and third . . . elements of the special relationship exception" to immunity); *Akers v. Quality Carriers, Inc.*, No. 2:21-CV-00660, 2022 WL 363597, at *3 (S.D.W. Va. Feb. 7, 2022) (dismissing plaintiff's claim because he "fail[ed] to state a claim for either exception to employer immunity"); *Mel v. Sherwood Sch. Dist.*, No. 11-0987-AA, 2011 WL 13057295, at *7 (D. Or. Dec. 14, 2011) (dismissing Section 1983 claim because plaintiff failed to plead requisite element of special relationship exception to immunity).[15]

Plaintiffs fail to plead the second element of an unfair act or practice and inadequately plead the first and third elements of such an act or practice.  Accordingly, Plaintiffs have failed to adequately plead an "unfair" act or practice and, thus, cannot rely on the FTCA as a predicate exception.  *Hughes*, 2022 WL 3970650, at *8; *Akers*, 2022 WL 363597, at *3.

---

[14] *See Garcia-Lopez v. Waste Mgmt. of Tex., Inc.*, No. 22-20112, 2022 WL 17547458, at *2 (5th Cir. Dec. 9, 2022) (affirming dismissal when plaintiff "fail[ed] to plead any of the three statutorily required elements to support his claim"); *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (affirming dismissal of *Monell* claim because plaintiff failed to adequately plead one of three elements); *Strickland v. Bank of New York Mellon*, 838 F. App'x 815, 820 (5th Cir. 2020) (affirming dismissal of claims when plaintiffs failed "to plead any facts in support of their remaining claims, and simply reference[d] the causes of action by reciting the elements without analysis to legal authority"); *Carlos Antonio Raymond v. J.P. Morgan Chase Bank*, No. SA19CA596OLGHJB, 2020 WL 10731764, at *6 (W.D. Tex. July 6, 2020), *report and recommendation adopted*, 2020 WL 10731936 (W.D. Tex. Oct. 6, 2020) (dismissing defamation claim when plaintiff failed to adequately plead second element of claim).

[15] Conversely, courts will deny a motion to dismiss a claim for unfair practices when all three elements are sufficiently pleaded.  *Federal Trade Comm'n v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 622 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3rd Cir. 2015).

3.     Plaintiffs can never plead the second element of an "unfair" act or practice in this case.

Plaintiffs will never be able to plead required elements of their alleged unfair practices violation.  Again, the first element considers unfair practices that cause or are likely to cause substantial injury *to consumers*.  15 U.S.C. § 45(n).  Plaintiffs are not consumers of the product at issue; they are victims of a consumer who chose to use a marketed product to commit intentional criminal acts.  In this instance, the Assailant was the consumer, but Plaintiffs do not have standing to allege any injuries that he supposedly suffered.

As for the second element, Plaintiffs are unable to plead that the injury was "not reasonably avoidable" by the consumer himself.  15 U.S.C. § 45(n).  The second element considers whether the consumer could have reasonably avoided the alleged harm.  *Id.*  The relevant harm is harm sustained by the consumer.  Here, the Assailant (the consumer) easily could have avoided any harm to himself because he was not forced to purchase the Subject Firearm; he did so freely (and legally).  *See* Doc. 1, ¶ 101 (admitting Assailant purchased Subject Firearm after turning 18 years old).  And as for the harm suffered by the Assailant/consumer's victims –the incorrect harm standard that Plaintiffs allege (Doc. 1, ¶ 228)– the Assailant certainly could have avoided any harm to Plaintiffs by choosing not to commit his intentional criminal acts.  Legally purchasing a firearm (or any product) to use to commit murder, as Plaintiffs allege, is not reasonable under any circumstances.  Thus, even if the FTCA was intended to prevent injuries to victims of consumers for their intentional criminal acts as Plaintiffs suggest (Doc. 1, ¶ 228), Plaintiffs are unable to legitimately allege that the consumer (*i.e.*, the Assailant) could not have reasonably avoided this harm.

Finally, Daniel Defense's marketing of its products is beneficial to its customers.  15 U.S.C. § 45(n).  Daniel Defense's marketing advises potential customers, who are legally entitled

165441

to purchase firearms, of its available products.  This is consistent with the congressional findings in support of the PLCAA, including the right of people to keep and bear arms under the Second Amendment. 15 U.S.C. § 7901(a)(1)-(2).  Further, marketing of firearms is consistent with the purposes of the PLCAA including preserving citizens' access to a supply of firearms for all lawful purposes, guaranteeing citizens' rights, privileges, and immunities under the Fourteenth Amendment, and protecting the First Amendment rights of firearm manufacturers and sellers to speak freely, among other purposes.  15 U.S.C. § 7901(b)(2), (3), and (5).

Because Plaintiffs do not (and cannot) plead the elements of an unfair act or practice, they are precluded from relying on such an act or practice as the basis for a predicate exception.

**D.      Plaintiffs do not allege facts that any supposed unfair act or practice proximately caused their injuries.**

Plaintiffs are required not only to adequately plead the elements of an unfair act or practice.  To qualify as a predicate exception, Plaintiffs must also plead sufficient facts that Daniel Defense's alleged violation of the FTCA "was a proximate cause of the harm for which relief is sought. . . ."  15 U.S.C. § 7903(5)(a)(iii).  Plaintiffs plead proximate cause in conclusory fashion stating:

> These knowing violations of the FTC Act were a proximate cause of [the Assailant's] acquisition and decision to use the Daniel Defense DDM4 V7 rifle and the wrongful death of Eliahna Torres, as well as her substantial and unnecessary physical pain, mental anguish, and emotional suffering, including pre-death terror.

Doc. 1, ¶ 230.  But Plaintiffs *do not plead any facts* that Daniel Defense's alleged unfair marketing practices were a proximate cause of Plaintiffs' injuries.  First, Plaintiffs allege no facts that the Assailant saw any of the advertisements or social media posts Plaintiffs identify in their Complaint.  Second, Plaintiffs allege no facts that the Assailant relied on any deceptive or unfair marketing in deciding to buy the Subject Firearm.  ***Third, and most importantly, Plaintiffs do***

*not allege any facts that the Assailant committed his criminal acts relying on or motivated by any of Daniel Defense's marketing.*   And Plaintiffs concede they have no actual facts in this regard.  *See* Doc. 1, ¶ 231 (stating Assailant's use of Subject Firearm to carry out his crimes "was, upon information and belief, influenced by Daniel Defense's marketing"); *id.*, ¶ 93 (stating that "on information and belief, exposure to Daniel Defense's marketing" influenced Assailant).

Plaintiffs would have the Court speculate that, because Daniel Defense publicly markets its products, the Assailant necessarily saw this marketing, and it motivated him to both purchase the Subject Firearm and to use it to commit his horrific crimes.  But speculation does not satisfy Rule 12(b)(6).

District courts repeatedly grant motions to dismiss when plaintiffs fail to adequately plead facts to establish proximate causation.  *Haqq v. Walmart Dep't Store*, No. EP-19-CV-00200-DCG, 2019 WL 4876958, at *2 (W.D. Tex. Oct. 3, 2019); *Wright v. Bexar Cnty. Sheriff's Office*, No. SA-18-CV-1022-XR, 2018 WL 6251389, at *4 (W.D. Tex. Nov. 29, 2018); *see Abdeljalil v. City of Fort Worth*, 189 F.3d 466 (5th Cir. 1999) (affirming dismissal because plaintiff failed to allege legally sufficient facts of proximate causation); *Ashe v. Corley*, 992 F.2d 540, 545 (5th Cir. 1993) (same).  The need to sufficiently plead facts of proximate causation is also required when the claimant alleges it was the victim of a crime because of the defendant's acts or omissions.  *See Cook v. T-Mobile USA, Inc.*, No. 3:14-CV-2907-P, 2015 WL 11120973, at *2–3 (N.D. Tex. June 2, 2015) (granting motion to dismiss and finding plaintiffs failed to allege sufficient facts that alleged defects in phone manufactured by defendant proximately caused murder of plaintiffs' decedent); *Cook v. City of Dallas*, No. 3:12-CV-3788-P, 2014 WL 10728794, at *4 (N.D. Tex. June 25, 2014) (dismissing claim for failing to allege sufficient facts

of proximate cause to waive qualified immunity because "Cook's death was the result of an attack by a third party").

Plaintiffs do not allege any facts, let alone sufficient facts, that any supposed unfair marketing practice proximately caused their injuries. Thus, even assuming Plaintiffs adequately pleaded the elements of an unfair act or practice under the FTCA (they did not), their claimed predicate exception still fails as a matter of law because they did not plead any facts that any such act or practice proximately caused Plaintiffs' injuries as required by the PLCAA.

Plaintiffs cannot rely on the FTCA as a predicate exception. The FTCA does not specifically regulate firearms; this Court has no jurisdiction to consider whether the statute was violated; and, regardless, Plaintiffs cannot (and do not) plead essential elements of such a violation. Accordingly, as a matter of law, Plaintiffs' reliance on the FTCA as a predicate exception to the PLCAA fails.

## V.    The Court should deny Plaintiffs leave to amend their claims because any amendment would be futile.

In response to a Rule 12(b)(6) motion, a district court has the discretion to grant the claimant leave to amend their complaint. But the court also has discretion to deny leave if the amendment would be futile. *Bowling v. Dahlheimer*, No. 20-40642, 2022 WL 670150, at *2 (5th Cir. Mar. 7, 2022); *Callais Capital Mgmt., L.L.C. v. Wilhite*, No. 21-30222, 2022 WL 445160, at *1 (5th Cir. Feb. 14, 2022). An amendment would be futile if it would fail to state a claim on which relief could be granted. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–873 (5th Cir. 2000); *see American Civil Rights Union v. Martinez-Rivera*, 166 F. Supp.3d 779, 807 (W.D. Tex. 2015) (citing *Stripling* and denying leave to amend).

Any amendment by Plaintiffs would be futile because they cannot establish an exception to the PLCAA's immunity from suit. None of the other exceptions are applicable here. 15

26

U.S.C. § 7903(5)(A)(i)-(ii), (iv)-(vi).[16]  Accordingly, the Court should dismiss Plaintiffs' claims

against Daniel Defense with prejudice and deny them leave to amend those claims.

## CONCLUSION

WHEREFORE, Defendant Daniel Defense, LLC respectfully requests the Court dismiss

all of Plaintiffs' claims against Daniel Defense, LLC with prejudice and deny Plaintiffs leave to

amend those claims.  Daniel Defense, LLC further requests any additional relief to which it is

entitled.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail:  dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com

Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

**COUNSEL FOR DEFENDANT,
DANIEL DEFENSE, LLC F/K/A
DANIEL DEFENSE, INC.**

---

[16] For example, Plaintiffs plead the negligent entrustment exception (15 U.S.C. § 7903(a)(5)(ii)) with respect to their claims against Defendant Oasis Outback, LLC.  Doc. 1, ¶¶ 242, 253.  But because the PLCAA does not create a cause of action for negligent entrustment, state law will determine whether the exception applies.  *See Academy*, 625 S.W.3d at 30 (stating "the PLCAA also provides that "no provision of this [statute] shall be construed to create a public or private cause of action." Accordingly, courts generally apply state law on negligent-entrustment claims in evaluating whether the exception applies."); *Brady v. Walmart Inc.*, No. 8:21-CV-1412-AAQ, 2022 WL 2987078, at *10 (D. Md. July 28, 2022) (same, citing cases).  Plaintiffs admit the Assailant purchased the Subject Firearm.  Doc. 1, ¶ 101. In *Academy*, the Texas Supreme Court held there is no cause of action for negligent entrustment based on the sale of chattel, thus precluding the plaintiffs' reliance on the negligent entrustment exception.  *See* 625 S.W.3d at 31 ("[W]e agree with Academy that no viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel. ***In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims.***") (emphasis added).  Thus, Plaintiffs cannot rely on the negligent entrustment exception to avoid PLCAA immunity.

165441

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February 2023, I served the following counsel of record through electronic service as authorized by the Federal Rules of Civil Procedure:

Blas H. Delgado
LAW OFFICES OF BLAS DELGADO, P.C.
2806 Fredericksburg Road, Suite 116
San Antonio, Texas 78201

David Lopez
LM LAW GROUP, PLLC
2806 Fredericksburg Road, Suite 116
San Antonio, Texas 78201

Eric Tirschwell
Molly Thomas-Jensen
Ryan Gerber
Laura Kelley
EVERYTOWN LAW
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017

*/s/ David M. Prichard*
David M. Prichard

165441

# APPENDIX 1

| United States Code Annotated |
| Title 15. Commerce and Trade |
| Chapter 105. Protection of Lawful Commerce in Arms |

15 U.S.C.A. § 7901

## § 7901. Findings; purposes

Effective: October 26, 2005

Currentness

**(a) Findings**

Congress finds the following:

**(1)** The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

**(2)** The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

**(3)** Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

**(4)** The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

**(5)** Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

**(6)** The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the

legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

**(7)** The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution.

**(8)** The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

**(b) Purposes**

The purposes of this chapter are as follows:

**(1)** To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

**(2)** To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting.

**(3)** To guarantee a citizen's rights, privileges, and immunities, as applied to the States, under the Fourteenth Amendment to the United States Constitution, pursuant to section 5 of that Amendment.

**(4)** To prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce.

**(5)** To protect the right, under the First Amendment to the Constitution, of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

**(6)** To preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

**(7)** To exercise congressional power under article IV, section 1 (the Full Faith and Credit Clause) of the United States Constitution.

## CREDIT(S)

(Pub.L. 109-92, § 2, Oct. 26, 2005, 119 Stat. 2095.)

Notes of Decisions (4)

15 U.S.C.A. § 7901, 15 USCA § 7901
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 105. Protection of Lawful Commerce in Arms

15 U.S.C.A. § 7902

# § 7902. Prohibition on bringing of qualified civil liability actions in Federal or State court

Effective: October 26, 2005

Currentness

**(a) In general**

A qualified civil liability action may not be brought in any Federal or State court.

**(b) Dismissal of pending actions**

A qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending.

**CREDIT(S)**

(Pub.L. 109-92, § 3, Oct. 26, 2005, 119 Stat. 2096.)

Notes of Decisions (19)

15 U.S.C.A. § 7902, 15 USCA § 7902
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

End of Document                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 15. Commerce and Trade
      Chapter 105. Protection of Lawful Commerce in Arms

15 U.S.C.A. § 7903

# § 7903. Definitions

Effective: October 26, 2005

Currentness

In this chapter:

### (1) Engaged in the business

The term "engaged in the business" has the meaning given that term in section 921(a)(21) of Title 18, and, as applied to a seller of ammunition, means a person who devotes time, attention, and labor to the sale of ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of ammunition.

### (2) Manufacturer

The term "manufacturer" means, with respect to a qualified product, a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of Title 18.

### (3) Person

The term "person" means any individual, corporation, company, association, firm, partnership, society, joint stock company, or any other entity, including any governmental entity.

### (4) Qualified product

The term "qualified product" means a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce.

**(5) Qualified civil liability action**

**(A) In general**

The term "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include--

**(i)** an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

**(ii)** an action brought against a seller for negligent entrustment or negligence per se;

**(iii)** an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--

**(I)** any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

**(II)** any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

**(iv)** an action for breach of contract or warranty in connection with the purchase of the product;

**(v)** an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

**(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

**(B) Negligent entrustment**

As used in subparagraph (A)(ii), the term "negligent entrustment" means the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

**(C) Rule of construction**

The exceptions enumerated under clauses (i) through (v) of subparagraph (A) shall be construed so as not to be in conflict, and no provision of this chapter shall be construed to create a public or private cause of action or remedy.

**(D) Minor child exception**

Nothing in this chapter shall be construed to limit the right of a person under 17 years of age to recover damages authorized under Federal or State law in a civil action that meets 1 of the requirements under clauses (i) through (v) of subparagraph (A).

**(6) Seller**

The term "seller" means, with respect to a qualified product--

**(A)** an importer (as defined in section 921(a)(9) of Title 18) who is engaged in the business as such an importer in interstate or foreign commerce and who is licensed to engage in business as such an importer under chapter 44 of Title 18;

**(B)** a dealer (as defined in section 921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18; or

**(C)** a person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of Title 18) in interstate or foreign commerce at the wholesale or retail level.

**(7) State**

The term "State" includes each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands, and any other territory or possession of the United States, and any political subdivision of any such place.

**(8) Trade association**

The term "trade association" means--

**(A)** any corporation, unincorporated association, federation, business league, professional or business organization not organized or operated for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual;

**(B)** that is an organization described in section 501(c)(6) of Title 26 and exempt from tax under section 501(a) of such title; and

**(C)** 2 or more members of which are manufacturers or sellers of a qualified product.

**(9) Unlawful misuse**

The term "unlawful misuse" means conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product.

**CREDIT(S)**

(Pub.L. 109-92, § 4, Oct. 26, 2005, 119 Stat. 2097.)

Notes of Decisions (16)

15 U.S.C.A. § 7903, 15 USCA § 7903
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

**End of Document**  <span style="float:right">© 2023 Thomson Reuters. No claim to original U.S. Government Works.</span>