# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SANDRA C. TORRES, Individually and as Mother and Representative of the Estate of Decedent, E.T. and as Next Friend of E.S.T., Minor Child; ELI TORRES, JR.; and JUSTICE TORRES, | § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CASE NO. 2:22-cv-00059-AM-VRJ |
| DANIEL DEFENSE, LLC, ET AL., | § § § | |
| *Defendants.* | § | |

## DANIEL DEFENSE, LLC'S
## AMENDED RULE 12(b)(6) MOTION TO DISMISS

TO UNITED STATES MAGISTRATE JUDGE VICTOR R. GARCIA:

Now comes Defendant Daniel Defense, LLC f/k/a Daniel Defense, Inc. ("Daniel Defense") and files this Amended Rule 12(b)(6) Motion to Dismiss. The Court should dismiss all of Plaintiffs' claims against Daniel Defense as congressionally mandated by the Protection of Lawful Commerce in Arms Act (15 U.S.C. § 7901 *et seq.*) (the "PLCAA").

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

I.      Plaintiffs sued Daniel Defense for negligence arising out of the Uvalde school shooting. .......................................................................................................... 3

II.     Daniel Defense filed a Rule 12(b)(6) motion, and in response Plaintiffs sought to both dismiss their claim without prejudice to refiling in the Austin Division and pleaded a new exception to the PLCAA ...................................................................... 3

ARGUMENTS AND AUTHORITIES ....................................................................... 3

I.      The standards for dismissal under Rule 12(b)(6) are well established. .............................. 3

II.     The PLCAA broadly prohibits bringing actions against firearms manufacturers and sellers arising out of the criminal misuse of firearms by third parties. .............................. 5

        A.      Congress provided extensive findings in support of its legislation and clearly laid out its purposes ..................................................................................... 5

        B.      The PLCAA prohibits bringing "qualified civil liability actions." ........................ 6

III.    Plaintiffs' action against Daniel Defense is "a qualified civil liability action" and should be dismissed. ............................................................................................... 9

IV.     Plaintiffs cannot rely on the FTCA to support the "predicate exception," to avoid statutory immunity under the PLCAA, for four reasons. ...................................... 10

        A.      The FTCA does not qualify as a predicate statute under Section 7903(5)(A)(iii) because it is not *specifically* applicable to the sale or marketing of firearms. ................................................................................. 11

                1.      Federal courts narrowly construe the predicate exception, limiting it to statutes that specifically regulate firearms. ......................................... 11

                2.      The FTCA is a general statute not specifically "applicable to the sale or marketing" of firearms. Consequently, it cannot support application of the predicate exception. ............................................. 15

        B.      This Court has no jurisdiction to consider whether the FTCA was violated because that is a matter within the Federal Trade Commission's exclusive jurisdiction. ................................................................................................. 16

                1.      Plaintiffs do not have a cause of action under the FTCA and, thus, lack standing to enforce the statute. ................................................ 16

2.  This Court lacks jurisdiction to consider violations of the FTCA because such matters are within the exclusive jurisdiction of the Federal Trade Commission. ...................................................................... 17

C.  Plaintiffs fail to plead required elements for an "unfair" act or practice under the FTCA, and one element they can never plead ................................................. 18

1.  There are three elements for an "unfair" act or practice under the FTCA ..................................................................................................... 19

a.  Plaintiffs now allege they are "consumers" for purposes of Section 45(n) of the FTCA ........................................................... 20

b.  For purposes of determining whether an unfair act or practice occurred here, the Assailant is the "consumer" not Plaintiffs ....... 22

2.  Plaintiffs fail to plead the second element of an "unfair" act or practice (and inadequately plead the other two elements). ....................... 24

3.  Plaintiffs can never plead the second element of an "unfair" act or practice in this case. ................................................................................. 26

D.  Plaintiffs do not allege any facts that any supposed unfair act or practice proximately caused their injuries. .......................................................................... 28

V.  Plaintiffs fail to plead and can never plead a viable negligence per se claim based on the FTCA, thus precluding the claim's use as a PLCAA-exception ................................. 30

A.  Plaintiffs fail to adequately plead a negligence per se claim based on the FTCA  ...................................................................................................................... 30

B.  Plaintiffs' negligence per se claim based on the FTCA fails as a matter of law ... 31

1.  The FTCA is not a penal statute and, therefore, Plaintiffs cannot use it as the basis for their negligence per se claim ............................................. 32

2.  Plaintiffs cannot satisfy the two threshold requirements for a negligence per se claim .......................................................................... 34

3.  As a matter of law, the FTCA cannot serve as the basis for Plaintiffs' negligence per se claim because it would thwart Congress' intent .......... 36

4.  Plaintiffs lack an analogous common law duty necessary for their negligence per se claim .......................................................................... 40

C.  Plaintiffs fail to plead facts establishing proximate causation ............................. 42

VI.    The Court should deny Plaintiffs leave to amend their claims because any further
       amendment would be futile. ............................................................................... 43

CONCLUSION ............................................................................................................. 44

CERTIFICATE OF SERVICE....................................................................................... 45

165542

**INTRODUCTION**

On May 24, 2022, an Assailant[1] attacked Robb Elementary School killing 19 students and two teachers and injuring 18 others (the "Shooting").  Plaintiffs in this lawsuit include the mother and siblings of one of the deceased students.  Plaintiffs sue Daniel Defense as the manufacturer and seller of the firearm used in the Shooting (the "Subject Firearm").  The Assailant's victims and their families, including Plaintiffs, deserve the compassion of their community, the people of Texas, and our Nation.  The law, however, prohibits Plaintiffs from bringing their claims against the innocent manufacturer of a lawful product, Daniel Defense, that properly transferred, under federal and state law, the Subject Firearm to a Texas federal firearms licensee ("FFL"), who then lawfully transferred the firearm to the Assailant.  It is the criminal who committed the crime, not Daniel Defense.

The Court should dismiss all of Plaintiffs' claims against Daniel Defense because the PLCAA, ***crafted and enacted for extremely important legal and societal reasons,*** requires holding Daniel Defense immune from this suit. *See* Section III, *infra*.  With the PLCAA, Congress prohibited ***bringing*** actions against firearms manufacturers and sellers for harm caused by the criminal conduct of individuals like the Assailant.  The PLCAA is not just a defense to liability; it mandates ***immunity from suit.***  *See In re Academy, Ltd.*, 625 S.W.3d 19, 34 (Tex. 2021) (citing federal cases) ("*Academy*").

Plaintiffs attempt to plead the so-called "predicate exception" to the PLCAA.  This exception permits a claim to proceed despite the PLCAA's protections if the defendant knowingly violated a state or federal statute "applicable to the sale or marketing" of firearms.  Plaintiffs allege the Federal Trade Commission Act (15 U.S.C. § 45 *et seq.*) (the "FTCA") is such a predicate statute and that Daniel Defense violated it by committing "unfair" acts and practices in marketing its products.  Plaintiffs' reliance on the FTCA fails, as a matter of law, for four reasons.

---

[1] Daniel Defense refers to Salvador Ramos as the "Assailant" to minimize reference to this criminal and deny him the notoriety he sought.

165542

First, the FTCA is not a predicate statute at all because it does not specifically regulate firearms, as federal precedent requires for a statute to qualify as a predicate.  *See* Section IV(A), *infra*.  Second, even if the FTCA was a predicate statute, the Court lacks jurisdiction to consider it here.  Rather, the Federal Trade Commission has exclusive jurisdiction over the statute and whether it has been violated.  *See* Section IV(B), *infra*.  Third, even if: (1) the FTCA qualified as a predicate exception, and (2) the Court had jurisdiction to consider Plaintiffs' FTCA argument, it still fails because Plaintiffs do not plead the elements of a violation of the act and, in fact, can never plead required elements for such a violation.  *See* Section IV(C), *infra*.  Plaintiffs attempt to cure this defect in their Amended Complaint by contending they are "consumers" under the FTCA, but that argument is meritless.  Finally, Plaintiffs fail to allege any facts that Daniel Defense's supposed violations of the FTCA proximately caused their injuries.  *See* Section IV(D), *infra*.

With their Amended Complaint, Plaintiffs attempt to plead another PLCAA exception by alleging negligence per se.  But this claim is subject to dismissal as a matter of law for multiple reasons.  Procedurally, Plaintiffs fail to adequately plead a negligence per se claim because they do not allege any Texas courts have held the FTCA can support such a claim.  *See* Section V(A), *infra*.  Substantively, Plaintiffs cannot rely on the FTCA to serve as the basis for a negligence per se claim for four separate reasons.  *See* Section V(B)(1)-(4), *infra*.  Further, even if the FTCA could serve as the basis for a negligence per se claim, Plaintiffs again fail to adequately allege proximate causation.  *See* Section V(C), *infra*.

Daniel Defense is not and cannot be liable for the criminal acts of the Assailant.  All of Plaintiffs' claims against Daniel Defense are precluded by the PLCAA, and Daniel Defense is immune from suit.  Accordingly, the Court should dismiss all of Plaintiffs' claims against Daniel Defense with prejudice.

2

**BACKGROUND**

**I.      Plaintiffs sued Daniel Defense for negligence arising out of the Uvalde school shooting.**

Plaintiffs filed their Original Complaint on November 28, 2022.  Doc. 1.  In addition to suing Daniel Defense, Plaintiffs also sued multiple governmental entities, government officers, and others.  *Id.*  With respect to Daniel Defense, Plaintiffs asserted only a single cause of action for negligence.  *Id.*, ¶¶ 220-233 (First Cause of Action).  Plaintiffs requested actual and exemplary damages.  *See id.*, p. 75 (Prayer for Relief).  Plaintiffs sought damages of $100 billion.

**II.     Daniel Defense filed a Rule 12(b)(6) motion, and in response Plaintiffs sought to both dismiss their claim without prejudice to refiling in the Austin Division and pleaded a new exception to the PLCAA.**

Daniel Defense filed its Rule 12(b)(6) Motion to Dismiss on February 17, 2023.  Doc. 25.  Specifically, Daniel Defense moved for dismissal based on the statutory immunity provided by the PLCAA.  *Id.*, p. 9-10.  Daniel Defense demonstrated that the FTCA could not serve as a predicate exception to the PLCAA.  *Id.*, p. 10-26.

In response to Daniel Defense's motion to dismiss, Plaintiffs filed both their First Amended Complaint (Doc. 26) and their Motion for Voluntary Dismissal under Rule 41(a)(2) (Doc. 27) on February 27, 2023.[2]  Plaintiffs alleged a new exception to immunity under the PLCAA – the negligence *per se* exception.  *See* Plaintiffs' Amended Complaint (Doc. 26), ¶¶ 243-250 (Second Cause of Action"); 15 U.S.C. § 7903(5)(A)(ii) (negligence *per se* exception).

**ARGUMENTS AND AUTHORITIES**

**I.      The standards for dismissal under Rule 12(b)(6) are well established.**

The standards governing motions to dismiss under Rule 12(b)(6) are well known and, recently, this Court summarized them.

---

[2] Plaintiffs withdrew their Motion for Voluntary Dismissal on March  2, 2023.  Doc. 33.

165542

To survive dismissal under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The factual allegations of the complaint must be taken as true, and all reasonable inferences must be drawn in favor of a plaintiff's claims. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Galindo v. City of Del Rio*, No. DR-20-CV-20-AM/CW, 2021 WL 2763033, at *2 (W.D. Tex. Mar. 26, 2021); *see Fernandez-Lopez v. Hernandez*, No. DR:19-CV-46-AM-CW, 2020 WL 9396523, at *10 (W.D. Tex. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020) (citing standards).

While the Court must accept all of Plaintiffs' factual allegations as true for purposes of Rule 12(b)(6), that "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist. of Jefferson Cnty., Tex.*, 49 F.4th 420, 425 (5th Cir. 2022) (citing *Iqbal* and stating "we do not presume that a complaint's legal conclusions are true, no matter how well they are pleaded"); *Mandawala v. Northeast Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (same).

Applying these standards, the Court should dismiss all of Plaintiffs' claims against Daniel Defense.

165542

II.     **The PLCAA broadly prohibits bringing actions against firearms manufacturers and sellers arising out of the criminal misuse of firearms by third parties.**

    A.     **Congress provided extensive findings in support of its legislation and clearly laid out its broad purposes.**

Congress enacted the PLCAA on October 26, 2005.  Congress enumerated several findings in support of its legislation recognizing a variety of concerns –constitutional, legal, and commercial– with respect to actions against firearms manufacturers and sellers arising from the criminal conduct of others.  15 U.S.C. § 7901(a).[3]  Those findings are:

- The Second Amendment preserves the right of the people to keep and bear arms, including of individuals not in the military.

- Lawsuits have been commenced against manufacturers, distributors, and dealers of firearms, which operate as designed and intended, for harm caused by misuse by third parties, including criminals.

- Businesses engaged in lawful interstate and foreign commerce regarding firearms "***are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended.***"

- Imposing liability on an entire industry for harm solely caused by others, including criminal actors, is an abuse of the legal system, erodes confidence in the Nation's laws, threatens to diminish constitutional rights and civil liberties, destabilizes industries lawfully competing in our free enterprise system, and is an unreasonable burden on interstate and foreign commerce.

- The liability actions commenced or contemplated by litigants against the firearm industry are based on theories without foundation in the common law and jurisprudence of the United States and sustaining such actions "would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislators of the several states" and would constitute a deprivation of rights guaranteed by the Fourteenth Amendment.

- The liability actions commenced or contemplated by litigants against the firearm industry "attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees"

---

[3] Daniel Defense includes a copy of the PLCAA as Appendix 1, and citations to the statute in this motion are hyperlinked to the appendix for the Court's convenience.

165542

> threatening the Separation of Powers doctrine and weakening principles of federalism, State sovereignty and comity between the States.

15 U.S.C. § 7901(a) (emphasis added).

Congress next set out seven broad purposes for the PLCAA, including:

(1) ***Prohibiting "causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."***

(2) ***Preserving citizens' access to firearms and ammunition "for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting."***

(3) Guaranteeing citizens' rights, privileges, and immunities under the Fourteenth and Fifth Amendments to the Constitution.

(4) ***Preventing "the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce."***

(5) Protecting the First Amendment rights of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

(6) Preserving and protecting the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

(7) Exercising congressional power under the Full Faith and Credit Clause of the Constitution.

15 U.S.C. § 7901(b) (emphasis added).

**B.**     **The PLCAA prohibits bringing "qualified civil liability actions."**

Next, in Section 7902, "Prohibition on bringing of qualified civil liability actions in Federal or State court," Congress prohibited bringing any "qualified civil liability actions" in federal or state court.

165542

**(a) In general**

A ***qualified civil liability action*** may not be brought in any Federal or State court.

**(b) Dismissal of pending actions**

A qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending.

15 U.S.C. § 7902 (bold italics added).

In Section 7903(5)(A), Congress defined a "qualified civil liability action" as well as ***six exceptions*** to such an action.

The term "qualified civil liability action" ***means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party***, but shall not include--

**(i)** an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

**(ii)** an action brought against a seller for negligent entrustment or negligence per se;[4]

**(iii)** an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--[5]

**(I)** any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with

---

[4] There is no exception for ordinary negligence claims.  *Id.*

[5] In the PLCAA caselaw, this exception is referred to as the "predicate exception."

respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

**(II)** any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

**(iv)** an action for breach of contract or warranty in connection with the purchase of the product;

**(v)** an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

**(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

15 U.S.C. § 7903(5)(A) (bold italics added).  Thus, if an action meets the definition of a "qualified civil liability action," it is barred unless an exception is established.[6]

The PLCAA clearly prohibits civil actions against manufacturers and sellers for actual and punitive damages, injunctive or declaratory relief, as well as "other relief."  *Id.*[7]  The statute provides immunity from suit as the Texas Supreme Court explained in *Academy*.

---

[6] Plaintiffs attempt to assert both the predicate exception and the negligence per se exception based on violations of the FTCA.  Doc. 26, ¶¶ 234, 240, 245, 250.  As shown below, both exceptions are inapplicable as a matter of law in this case.

[7] Under the PLCAA, a "manufacturer" means "with respect to a qualified product, a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of Title 18."  15 U.S.C. § 7903(2).  Daniel Defense is a "manufacturer" for purposes of the PLCAA.  Daniel Defense is also a "seller" as defined in 15 U.S.C. § 7903(6) which includes a "dealer" as defined in 18 U.S.C. § 921(a)(11).  The definition of a "dealer" includes "any person engaged in the business of

"By its terms, the Act bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that fall within the Act's exceptions."  ***The PLCAA thus "immunizes a specific type of defendant from a specific type of suit" and "bars the commencement or the prosecution of qualified civil liability actions.***"

*Academy*, 625 S.W.3d at 35 (quoting *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397–398 (2d Cir. 2008)) (emphasis added); *see Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (stating the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims").

Importantly, no provision in the PLCAA "shall be construed to create a public or private cause of action or remedy."   15 U.S.C. § 7903(5)(C); *see Academy*, 625 S.W.3d at 30 (acknowledging the PLCAA does not create a public or private cause of action); *see also Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) (same).

**III.    Plaintiffs' action against Daniel Defense is "a qualified civil liability action" and should be dismissed.**

Plaintiffs' action against Daniel Defense is within the broad scope of the PLCAA.  Again, a "qualified civil liability action" has five separate requirements, including:

(i)      "a civil action or proceeding or an administrative proceeding",

(ii)     "brought by any person",

(iii)    "against a manufacturer or seller of a qualified product, or a trade association",

(iv)     "for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief", and

---

selling firearms at wholesale or retail . . . ." *Id.*  Daniel Defense sells the firearms it manufactures including the Subject Firearm.  A "qualified product" "means a firearm as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18, including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).  The Subject Firearm is a "qualified product."

(v)     "resulting from the criminal or unlawful misuse of a qualified product by the person or third party".

15 U.S.C. § 7903(5); *Academy*, 625 S.W.3d at 26.

Plaintiffs' Amended Complaint satisfies all five elements of a "qualified civil liability action." **First**, the complaint is indisputably a "civil action or proceeding" because it is a lawsuit filed in this Court. **Second**, the action is brought by multiple people –Plaintiffs. **Third**, the complaint is brought against the manufacturer and seller of a qualified product. It is undisputed that Daniel Defense manufactured and sold, through the FFL transfer process, the Subject Firearm. *See* Doc. 26, ¶ 7 (stating Assailant bought Subject Firearm manufactured by Daniel Defense); *id.*, ¶ 231 (stating Daniel Defense sold Subject Firearm to Assailant). **Fourth**, Plaintiffs seek actual and exemplary damages from Daniel Defense. *Id.*, p. 80-81. **Fifth**, Plaintiffs' claims against Daniel Defense result from "the criminal or unlawful use of a qualified product by" a "third party." *Id.*, ¶ 2 (stating Assailant "murdered 19 children and two teachers").

Plaintiffs' action against Daniel Defense is squarely within the PLCAA's definition of a "qualified civil liability action." Accordingly, the Court should grant Daniel Defense's motion and dismiss all of Plaintiffs' claims against it. *See e.g.*, 84 F. Supp. 3d at 1228 (dismissing all of plaintiffs' claims and concluding plaintiffs failed to establish alleged predicate exception or negligent-entrustment exception); *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL 9103469, at *8 (N.D. W. Va. Nov. 5, 2010), *aff'd*, 436 F. App'x 151 (4th Cir. 2011) (granting motion to dismiss after concluding plaintiffs failed to establish a PLCAA exception).

**IV.   Plaintiffs cannot rely on the FTCA to support the "predicate exception," to avoid statutory immunity under the PLCAA, for four reasons.**

Plaintiffs recognize the applicability of the PLCAA in their complaint. With respect to Defendant Oasis Outback, LLC, Plaintiffs explicitly invoke the negligent entrustment exception. Doc. 26, ¶¶ 259, 270; 15 U.S.C. § 7903(a)(5)(ii). With respect to Daniel Defense, Plaintiffs attempt

10

165542

to plead a predicate exception based on the Federal Trade Commission Act (the "FTCA"). Again, the predicate exception applies when a firearm manufacturer or seller "knowingly violates" a state or federal statute "applicable to the sale or marketing" of the firearm and "the violation was a proximate cause of the harm for which relief is sought . . . ." 15 U.S.C. § 7903(5)(a)(iii). Plaintiffs repeatedly allege that Daniel Defense "knowingly violated" the FTCA, and that this was a proximate cause of Plaintiffs' injuries. *See* Doc. 26, ¶ 234 ("Defendant Daniel Defense also violated the Federal Trade Commission Act, 15 U.S.C. § 45(a), by ***knowingly engaging in unfair practices*.") (emphasis added); *id.*, ¶ 240 ("***These knowing violations of the FTC Act were a proximate cause*** of . . . the wrongful death of E.T. . . .") (emphasis added). As a matter of law, Plaintiffs cannot rely on the FTCA as a predicate exception for four reasons.

### A.   The FTCA does not qualify as a predicate statute under Section 7903(5)(A)(iii) because it is not *specifically* applicable to the sale or marketing of firearms.

A statute will qualify as a predicate exception if it is "a State or Federal statute ***applicable to the sale or marketing of the product***, and the violation was a proximate cause of the harm for which relief is sought . . . ." 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). Section 7903(5)(A)(iii) identifies two examples of qualifying predicate statutes: (1) those requiring record keeping of firearms, and (2) selling a qualified product to a person who is prohibited from possessing or receiving a firearm in violation of 18 U.S.C. § 922 (g) or (n). 15 U.S.C. § 7903(5)(A)(iii)(I)-(II). Federal courts construing the phrase "applicable to the sale or marketing of the product" repeatedly hold that the predicate exception only applies to statutes that *specifically* regulate the sale and marketing of firearms and not to statutes of general application.

### 1.   Federal courts narrowly construe the predicate exception, limiting it to statutes that specifically regulate firearms.

In *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009), the court considered whether a New York general public nuisance statute was

11

165542

"applicable to the sale and marketing" of firearms and, thus, a predicate statute. The city argued that a statute is "applicable" simply when it is "capable of being applied." *Id.* at 400. The Second Circuit rejected this broad interpretation of Section 7903(5)(A)(iii) and conducted a detailed analysis explaining why such general statutes are not "applicable to the sale and marketing" of firearms.

First, the court noted that context is key. "The meaning of the term 'applicable' must be determined here by reading that term in the context of the surrounding language and of the statute as a whole." *Id.* at 400 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see Vitol, Inc. v. U.S.*, 30 F.4th 248, 250 (5th Cir. 2022) (stating "[t]ext cannot be divorced from context, and statutory meaning is not always common meaning. Congress's words must be read as part of a contextual whole."); *United States v. Koutsostamatis*, 956 F.3d 301, 306 (5th Cir. 2020) (same); *La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3045657, at *7, n.10 (W.D. Tex. Aug. 2, 2022) (same).

Next, the court considered the canons of statutory construction including "*noscitur a sociis*" – "it is known by its associates." *Id.* at 401.[8] More specifically, "the meaning of one term may be determined by reference to the terms it is associated with, and [that] where specific words follow a general word, the specific words restrict application of the general term to things that are similar to those enumerated." *Id.*[9] Applying this canon, the court concluded that "applicable to" means statutes clearly intended to regulate firearms.

> ***The general language contained in section 7903(5)(A)(iii)
> (providing that predicate statutes are those "applicable to" the sale or***

---

[8] Courts presume that "Congress legislates with knowledge of [these] basic rules of statutory construction." *Koutsostamatis*, 956 F.3d at 307 (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991)).

[9] The Fifth Circuit also uses this canon in construing statutes. *See e.g.*, *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 243–244 (5th Cir. 2022) ("Applying *noscitur a sociis* to this case, the appearance of 'natural disaster' in a list with 'flood, earthquake, or drought' suggests that Congress intended to limit "'natural disaster' to hydrological, geological, and meteorological events."); *Federal Deposit Ins. Corp. v. Belcher*, 978 F.3d 959, 963–964 (5th Cir. 2020) (applying same canon to determine that FDIC is not "the appropriate" federal regulator in that case).

*marketing of firearms) is followed by the more specific language* referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. § 7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling firearms directly to prohibited purchasers, 15 U.S.C. § 7903(5)(A)(iii)(II). Statutes applicable to the sale and marketing of firearms are said to include statutes regulating record-keeping and those prohibiting participation in direct illegal sales. *Thus, the general term—"applicable to"—is to be "construed to embrace only objects similar to those enumerated by" sections 7903(5)(A)(iii)(I) and (II). See Keffeler,* 537 U.S. at 384, 123 S.Ct. 1017. *We accordingly conclude that construing the term "applicable to" to mean statutes that clearly can be said to regulate the firearms industry more accurately reflects the intent of Congress.*

*Id.* at 402 (emphasis added).

The court further explained its interpretation was consistent with Congress' finding that firearms are "heavily regulated" by Federal law, and that statutory exceptions must be narrowly construed so as not to undermine the statute's purpose.

We think Congress clearly intended to protect from vicarious liability members of the firearms industry who engage in the "lawful design, manufacture, marketing, distribution, importation, or sale" of firearms. Preceding subsection (a)(5), Congress stated that it had found that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Control Act." 15 U.S.C. § 7901(a)(4). *We think the juxtaposition of these two subsections demonstrates that Congress meant that "lawful design, manufacture, marketing, distribution, importation, or sale" of firearms means such activities having been done in compliance with statutes like those described in subsection (a)(4).*

This conclusion is supported by the "interpretive principle that statutory exceptions are to be construed 'narrowly in order to preserve the primary operation of the [general rule].'" *In the "broader context of the statute as a whole," . . . resort to the dictionary definition of "applicable"— i.e. capable of being applied—leads to a far too-broad reading of the predicate exception. Such a result would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets.*

*Id.* at 402-403 (citations omitted) (emphasis added); *see Easom*, 37 F.4th at 244 (stating principle of narrow construction of exceptions justified not expanding definition beyond what was justified by

the act's statutory language, context, and purpose).[10]  Simply put, statutes "applicable to the sale or marketing" of firearms are those that specifically regulate this activity, like those listed in Section 7901(a)(4) and 7903(5)(A)(iii).  Considering the context of the statute, and the applicable canons of statutory construction, the court held the predicate exception did not encompass New York's general criminal nuisance statute.  *City of New York*, 524 F.3d at 404.

The Ninth Circuit reached a similar conclusion in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009).  In that case, the plaintiffs argued that a California general negligence statute was applicable to the sale and marketing of firearms, invoking the predicate exception.  *Id.* at 1133. Rejecting the plaintiff's broad interpretation of the phrase "applicable to," the Ninth Circuit, like the Second Circuit, concluded that the exception applies to statutes like those listed in Section 7901(a)(4) – *i.e.*, statutes specifically regulating firearms.

> [C]ongressional findings speak to the scope of the predicate exception. Against the backdrop of Congress' findings on the unjustified "expansion of the common law," *id.,* Congress also found that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws," *id.* § 7901(a)(4).  *We find it more likely that Congress had in mind only these types of statutes—statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry— rather than general tort theories that happened to have been codified by a given jurisdiction.*

*Id.* at 1136 (emphasis added).[11]

---

[10] Further, the Fifth Circuit has repeatedly held that when a federal statute broadly prohibits certain actions, any statutory exceptions must be narrowly construed.  *See Gibbs v. Lufkin Indus., Inc.*, 487 F. App'x 916, 919 (5th Cir. 2012) (explaining that because Anti-Injunction Act is "an absolute prohibition" against enjoining state court proceedings, its exceptions "are narrow and are not [to] be enlarged by loose statutory construction").  *Gibbs v. Lufkin Indus., Inc.*, 487 F. App'x 916, 919 (5th Cir. 2012); *Mitchell v. Holder*, 261 F. App'x 728, 729 (5th Cir. 2008) (same).  Here, the PLCAA provides a broad prohibition –a "qualified civil liability action *may not be brought* in any Federal or State Court."  15 U.S.C. § 7902(a) (emphasis added).  Thus, the statutory exceptions to this prohibition must be narrowly construed.  *Gibbs*, 487 F. App'x at 919.

[11] In contrast, courts will conclude that a statute is a predicate statute when it explicitly regulates firearms.  *See National Shooting Sports Found., Inc. v. James*, No. 121CV1348MADCFH, 2022 WL 1659192, at *4 (N.D.N.Y. May 25, 2022) (holding state statute was a predicate statute because "[n]o reasonable interpretation of 'applicable to' can exclude a statute which imposes liability exclusively on gun manufacturers for the manner in which guns are manufactured, marketed, and sold").

14

165542

### 2. The FTCA is a general statute not specifically "applicable to the sale or marketing" of firearms.  Consequently, it cannot support application of the predicate exception.

Statutes "applicable to the sale or marketing" of firearms are determined in the context of the PLCAA.  *City of New York*, 52 F.3d at 400.  In this context, the only statutes that qualify as predicate statutes are like those listed in the PLCAA –statutes that ***specifically regulate*** firearms.  *Id.* at 402; *Ileto*, 565 F.3d at 1136.  The FTCA is clearly not such a statute.

Section 5(A) of the FTCA applies to the advertising and marketing of virtually every good and service and is phrased in extremely broad terms, stating: "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive act or practices in or affecting commerce, are hereby declared illegal."  15 U.S.C. § 45(a)(1).[12]  The statute applies generally to products or services.  *Id. See Federal Trade Comm'n v. Colgate-Palmolive Co.*, 380 U.S. 374, 384–385 (1965) (noting breadth of Section 5(a)); *Jaymar-Ruby, Inc. v. Federal Trade Comm'n*, 651 F.2d 506, 507 (7th Cir. 1981) (stating Section 5(a) is a broad declaration); *Federal Trade Comm'n v. IFC Credit Corp.*, 543 F .Supp. 2d 925, 934 (N.D. Ill. 2008) (noting Section 5(a)'s broad terms).  Further, the FTCA makes no reference to firearms.  15 U.S.C. § 45(a)(1).  The FTCA is a statute regulating conduct generally like those held not to be predicate statutes in *City of New York* and *Ileto*.

This Court must narrowly construe any exceptions to the PLCAA's broad prohibition on actions against firearms manufacturers and sellers.  *City of New York*, 524 F.3d at 403; *Gibbs*, 487 F. App'x at 919.  Permitting a statute that generally regulates commerce to serve as a predicate exception violates this basic rule of statutory construction and thwarts Congress' intent to limit the predicate exception to only those statutes that specifically regulate firearms.  Only statutes like

---

[12] While codified in 15 U.S.C. § 45(a)(1), in the jurisprudence, this statute is often referred to as "Section 5(a)."  *See In re Rust-Oleum Restore Mktg., Sales Practices & Products Liab. Litig.*, 155 F. Supp. 3d 772, 811, n. 24 (N.D. Ill. 2016) ("15 U.S.C. § 45(a)(1) is also Federal Trade Commission Act § 5(a).").

those listed in Section 7903(5)(A)(iii) and 7901(a)(4) –that particularly regulate the manufacture and sale of firearms– qualify as predicate statutes.  Because the FTCA does not specifically regulate firearms, Plaintiffs' reliance on the FTCA to invoke the predicate exception fails as a matter of law.[13]

**B.      This Court has no jurisdiction to consider whether the FTCA was violated because that is a matter within the Federal Trade Commission's exclusive jurisdiction.**

Assuming, *arguendo*, that the FTCA qualifies as a predicate exception, Plaintiffs' reliance on the statute is still misplaced.  As a matter of law, Plaintiffs have no cause of action under the FTCA and, thus, lack standing to enforce it.  The Federal Trade Commission has exclusive jurisdiction to determine violations of the Act.  This Court, consequently, lacks jurisdiction as to whether the FTCA was violated.  Plaintiffs cannot rely on a "predicate statute" that this Court lacks jurisdiction to consider.

**1.      Plaintiffs do not have a cause of action under the FTCA and, thus, lack standing to enforce the statute.**

The Fifth Circuit has repeatedly stated that "[t]he Federal Trade Commission Act (FTC Act) ***does not provide for private causes of action***."  *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016) (quoting *Fulton v. Hecht,* 580 F.2d 1243, 1248 n.2 (5th Cir. 1978)) (emphasis added); *Norris v. Fairbanks Capital Corp.*, 178 F. App'x 401, 403 (5th Cir. 2006); *see Arruda v. Curves Int'l, Inc.*, No. 6:20-CV-00092-ADA, 2020 WL 4289380, at *4 (W.D. Tex. July 27, 2020), *aff'd*, 861 F. App'x 831 (5th Cir. 2021) (same); *Arquero v. McGinnis Tessitore Wutscher*

---

[13] In their response, Plaintiffs will likely cite to *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019) to argue the FTCA qualifies as a predicate statute.  Importantly, the Supreme Court of Connecticut did not decide whether the FTCA qualified as a predicate exception.  Rather, it held that the Connecticut Unfair Trade Practices Act ("CUTPA") qualified as a predicate statute. *Id.*  Unlike the FTCA, which does not create a private right of action, as shown in the next section, the CUTPA explicitly creates a private cause of action.  *See* CONN. GEN. STAT. § 42-110g (allowing private cause of action for statutory violation).  *Soto* is inapplicable to this case for other reasons that Daniel Defense will discuss in its reply brief.

*LLP*, No. A-12-CV-432 LY, 2013 WL 12393919, at *2 (W.D. Tex. Mar. 8, 2013), *report and recommendation adopted*, No. A-12-CV-432-LY, 2013 WL 12393964 (W.D. Tex. Apr. 9, 2013) (same).  Because Plaintiffs have no private right of action under the FTCA, they necessarily lack standing to assert a violation of the statute.  *See Li Xi v. Apple Inc.*, 603 F. Supp. 2d 464, 470 (E.D.N.Y. 2009) ("Plaintiffs purport to bring this claim under § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair methods of competition in commerce. Apple argues, and this Court agrees, that ***this provision may be enforced only by the Federal Trade Commission and not by private action***; competitors and consumers do not have standing to enforce this provision.") (emphasis added); *In re Pilgrim's Pride Corp.*, No. 08-45664 DML, 2011 WL 3799835, at *5 (Bankr. N.D. Tex. Aug. 26, 2011) (same).[14]

Rather, only the Federal Trade Commission has standing to enforce the FTCA.

> **2.      This Court lacks jurisdiction to consider violations of the FTCA because such matters are within the exclusive jurisdiction of the Federal Trade Commission.**

Rather than creating a private cause of action, the FTCA expressly empowers the Federal Trade Commission to prevent people and businesses from using "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(2).  If the Commission believes the act has been violated, then it (and it alone) can institute an administrative proceeding and issue a cease-and-desist order.  15 U.S.C. § 45(b).  Any such order is subject to appellate review.  15 U.S.C. § 45(c). Further, only the Commission can commence actions for ***knowing*** violations of Section 5(a) in federal district courts and seek civil penalties.  15 U.S.C. § 45(m).  Remedial power under the FTCA vests solely in the Commission.  *Johnson v. Verrengia*, No. A-17-CA-00295-SS, 2017 WL 8181535, at *1 (W.D. Tex. June 19, 2017); *Carley v. Tomball Indep. Sch. Dist.*, No. CV H-18-2521,

---

[14] Again, the PLCAA also does not provide a private cause of action.  *See* 15 U.S.C. § 7903(5)(C) (stating no provision in the PLCAA "shall be construed to create a public or private cause of action or remedy"); *Academy*, 625 S.W.3d at 30 (acknowledging same).

2018 WL 6172529, at *4 (S.D. Tex. Nov. 26, 2018); *see United States v. Philip Morris Inc.*, 263 F.

Supp. 2d 72, 78 (D.D.C. 2003) (stating "[t]he FTC Act is enforced exclusively by the FTC").  Thus,

"the FTC has exclusive jurisdiction under the FTCA. . . ."  *Id.*; *see Gardner v. Starkist Co.*, 418 F.

Supp. 3d 443, 459 (N.D. Cal. 2019) (citing same); *United States v. Arif*, No. 15-CR-57-LM, 2016

WL 5854217, at *3 (D.N.H. Oct. 6, 2016), *aff'd*, 897 F.3d 1 (1st Cir. 2018) (same); *Sullivan v.

Philip Morris USA Inc.*, No. 03-796, 2005 WL 2123702, at *8 (W.D. La. Aug. 31, 2005) (same).

Consequently, this Court lacks jurisdiction to consider Plaintiffs' assertions under the FTCA as

United States Magistrate Judge Mark Lane has explained.

> As there is no private right of action under the FTC Act, **this court lacks
> jurisdiction to address Plaintiff's assertions thereunder**. *See Acara v. Banks*,
> 470 F.3d 569, 572 (5th Cir. 2006) (no federal subject matter jurisdiction
> where federal statute did not create private cause of action).

*Arquero v. McGinnis Tessitore Wutscher LLP*, No. A-12-CV-432 LY, 2013 WL 12393919, at *2

(W.D. Tex. Mar. 8, 2013), *report and recommendation adopted*, No. A-12-CV-432-LY, 2013 WL

12393964 (W.D. Tex. Apr. 9, 2013) (emphasis added).

The predicate exception applies only for a "knowing" violation of a statute applicable to the

sale and marketing of firearms.  15 U.S.C. § 7903(5)(A)(iii).  Plaintiffs' attempt to rely on the

FTCA fails for lack of jurisdiction.  Only the Federal Trade Commission has jurisdiction to

determine whether the provisions of the FTCA have been violated, and only it can bring an action

for a knowing violation of the statute.  15 U.S.C. § 45(m).  Because this Court lacks jurisdiction to

consider any assertion that Daniel Defense knowingly violated the FTCA, it cannot serve as the

basis for a predicate exception.

**C.      Plaintiffs fail to plead required elements for an "unfair" act or practice under
the FTCA, and one element they can never plead.**

The FTCA prohibits "unfair or deceptive acts or practices . . . ."  15 U.S.C. § 45(a).

"Unfair" acts and practices are governed by a different standard than "deceptive" acts and practices.

*Federal Trade Comm'n v. Nudge, LLC*, No. 2:19-CV-867-DBB-DAO, 2022 WL 2132695, at *12 (D. Utah June 14, 2022).  Plaintiffs allege only "unfair" acts and practices.  *See* Doc. 26, ¶ 100 ("Daniel Defense's marketing tactics are unfair and violated the [FTCA]."); *id.*, ¶ 234 ("Daniel Defense "also violated the [FTCA] by knowingly engaging in unfair trade practices.").   More specifically, Plaintiffs allege Daniel Defense engaged in unfair acts and practices by marketing its products to young consumers and supposedly suggesting its products should be used against civilians.  Doc. 26, ¶¶ 55-100; *see id.*, ¶ 99 (stating Daniel Defense markets firearms to "young male consumers" "by suggesting that its rifles can be used for offensive combat-style operations against non-combatants"); *id.*, ¶ 97 (stating "Daniel Defense's unfair and irresponsible marketing tactics . . . influenced [the Assailant] to carry out a horrific massacre"); *id.*, ¶ 235 (stating "Daniel Defense's marketing practices were unfair because they encouraged illegal misuse of their AR-15 style rifles").  But Plaintiffs fail to allege an actual FTCA violation, precluding it as a basis for a predicate exception.

> **1.      There are three elements for an "unfair" act or practice under the FTCA.**

"Unfair" acts or practices are prohibited under 15 U.S.C. § 45(a).  However, the Federal Trade Commission cannot declare a particular practice or act "unfair" unless it "is likely to cause substantial injury to consumers which ***is not reasonably avoidable by consumers themselves*** and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n) (emphasis added).  Thus, courts recognize three elements for an "unfair" practice or act.

> To be "unfair," a practice must be one that "[1] causes or is likely to cause substantial injury to consumers [2] which is not reasonably avoidable by consumers themselves and [3] not outweighed by countervailing benefits to consumers or to competition."

*Federal Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009) (emphasis added); *see Nudge, LLC*, 2022 WL 2132695, at *12, n.159 (same); *Federal Trade Comm'n v. Vylah*

165542

*Tec LLC*, No. 217CV228FTM99MRM, 2018 WL 3656474, at *7 (M.D. Fla. Aug. 2, 2018) (same); *Federal Trade Comm'n v. D-Link Sys., Inc.*, No. 3:17-CV-00039-JD, 2017 WL 4150873, at *2 (N.D. Cal. Sept. 19, 2017) (same); *Federal Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 10654030, at *6 (W.D. Wash. July 22, 2016) (same).  As shown below, Plaintiffs' allegation that Daniel Defense committed "unfair" trade practices or acts fails for two reasons:  (1) they fail to plead an essential element of an unfair act or practice –that the harm was not "reasonably avoidable" by the consumer himself, and (2) they can never plead this element.

But before Daniel Defense sets out these reasons, it must first address Plaintiffs' new allegation in their Amended Complaint that they are "consumers" under Section 45(n).  With respect to marketing acts practices they allege to be unfair, Plaintiffs are not "consumers" as a matter of law.  Accordingly, Plaintiffs cannot plead a violation of Section 45(n) based on the allegation that they are "consumers."

> a.    **Plaintiffs now allege they are "consumers" for purposes of Section 45(n) of the FTCA.**

In their Original Complaint, Plaintiffs repeatedly alleged Daniel Defense's prospective customers and the Assailant were "consumers."  Doc. 1, ¶¶ 49-84 (repeatedly referring to Daniel Defense's marketing efforts directed at "young," "civilian" consumers, including the Assailant).  Plaintiffs continue these allegations in their Amended Complaint.  Doc. 26, ¶¶ 44-83, 91-100.[15]

---

[15] *See e.g., id.*, ¶ 44 (stating Daniel Defense "profited from the unfair marketing of its AR-15 rifles . . . that encouraged civilian **consumers** to illegally misuse their products"); *id.*, ¶ 46 ("Daniel Defense's marketing includes militaristic and combat imagery as well as content specifically aimed at young **consumers**"); *id.*, ¶ 53 ("Daniel Defense regularly promotes its weapons and accessories through appeals to civilian **consumers**"); *id.*, ¶ 63 ("Daniel Defense's marketing impermissibly and unfairly suggests that **consumers** should use Daniel Defense rifles to reenact combat"); *id.*, ¶ 67 ("Daniel Defense directs much of its marketing –including marketing that suggests that **consumers** should illegally use its products to carry out combat operations– at teens and young men"); *id.*, ¶ 91 ("Daniel Defense markets its AR-15-style rifles to young male **consumers**") (emphasis added); *see also id.*, ¶ 63 (stating Assailant was "highly susceptible" to Daniel Defense's "suggestive marketing"); *id.*, ¶ 66 (stating that Daniel Defense's marketing sends messages "to young consumers (like [the Assailant]) . . . that Daniel Defense's products can be used to reenact *Call of Duty* fantasies"); ¶ 77 (stating Daniel Defense's marketing strategy appeals "to young, video-game-playing men and boys, like [the Assailant]"); *id.*, ¶ 91 (stating Daniel Defense's "advertisements were tailor-made for someone like [the Assailant]"); *id.*, ¶ 97 ("Daniel Defense's unfair and irresponsible marketing tactics put their assault rifle in [the Assailant's] mind").

165542

In its original Rule 12(b)(6) motion, Daniel Defense showed that even if: (1) the FTCA generally qualified as a predicate statute, and (2) the Court has jurisdiction to consider whether the FTCA was violated, Plaintiffs still could not rely on the statute as a predicate exception because they failed to plead required elements of an unfair act or practice.  *See* Doc. 25, p. 19-24.  In the context of an unfair act or practice under Section 45(n), the consumer is a participant in a transaction (or their beneficiary) who is subjected to the allegedly unfair act or practice.  In this case, the "consumers" would be customers of Daniel Defense's products who were supposedly subjected to its allegedly unfair marketing practices, including the Assailant.  *Id.*

In response to Daniel Defense's original motion, Plaintiffs allege in their Amended Complaint they are also "consumers" under Section 45(n).  But Plaintiffs do not state they are consumers of products Daniel Defense supposedly marketed unfairly.  Rather, they allege they are "consumers" of ***other products and services*** that were neither: (1) made or sold by Daniel Defense, nor (2) alleged to be unfairly marketed.  Specifically, in their negligence claim, Plaintiffs attempt to plead the elements of Section 45(n) in conclusory fashion by alleging themselves as the statutory consumer:

> ***Sandra and E.T. were consumers*** who could not reasonably avoid the injuries caused by these marketing practices.  ***They purchased school supplies, clothing, sneakers, and backpacks***, among other things as part of the educational process, but they could not reasonably avoid the harms caused by Daniel Defense's marketing.  E.T. and her family had no way to avoid the risk that someone would do to them exactly what Daniel Defense's marketing encouraged: carry out a combat operation against civilians.

Doc. 26, ¶ 236 (emphasis added); *see id.*, ¶ 98 (same); *see also id.*, ¶ 237 (stating Plaintiffs "were also consumers of health care services").  In short, Plaintiffs deliberately disconnect the products they consume from the products they alleged to have been unfairly marketed, in an effort to plead a claim under Section 45(n).  That is not how the statute works.

      **b.**       **For purposes of determining whether an unfair act or practice occurred here, the Assailant is the "consumer" not Plaintiffs.**

Plaintiffs' assertion that they are consumers of other products and services does not state a claim for relief against Daniel Defense under Section 45(n). "Consumer" status under the statute is directly tied to the transaction that is the subject of the alleged unfair acts and practices. "Consumer" status does not exist independently from the transaction at issue as Plaintiffs now allege. For each statutory element, the "consumer" exists in relation to the transaction or bargain that is subject of alleged unfair acts or practice. Put differently, under Section 45(n) the product that was allegedly consumed must be the same as the product alleged to have been unfairly marketed.

The first element of an unfair practices claim is the practice must be one that causes "substantial injury to consumers." 15 U.S.C. § 45(n); *Accusearch Inc.*, 570 F.3d at 1193. In considering this element, courts identify the consumer *in relation to the transaction not independent of the transaction*. *See Federal Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (stating that substantial harm is established when consumers "were injured by a practice *for which they did not bargain*") (emphasis added); *Federal Trade Comm'n v. Johnson*, 96 F. Supp. 3d 1110, 1151 (D. Nev. 2015) (same); *Federal Trade Comm'n v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000) (same); *see also Federal Trade Comm'n v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1003–04 (N.D. Cal. 2010), *aff'd*, 475 Fed. Appx. 106 (9th Cir. 2012) (stating liability under the Act may be found "if a business facilitated or provided substantial assistance to a deceptive scheme resulting in substantial injury *to customers*.") (emphasis added). The Federal Trade Commission similarly identifies the "consumer" in relation to the transaction in which unfair acts or practices were supposedly used. *See* FTC Unfairness Policy Statement, Letter from the FTC to Hon. Wendell Ford and Hon. John Danforth, Senate Comm. On Commerce, Sci., and Transp. (Dec. 17, 1980) ("In most cases a substantial injury involves a monetary harm, as when

sellers *coerce consumers into purchasing unwanted goods or services* or when *consumers buy defective goods or services* on credit but are unable to assert against the creditor claims or defenses arising from the transaction.") (emphasis added) ("FTC Policy Statement").[16]  Under Section 45(n), "consumer" status does not exist independently from the transaction; the two are connected.  Here, Plaintiffs are not "consumers" because they had no role in the transaction.  Plaintiffs did not bargain with Daniel Defense; they were not Daniel Defense's customer; and they did not purchase its products.  Rather, Plaintiffs were post-transaction victims of the Assailant's intentional, criminal acts.

The second element of an unfair act or practice is that the injury to the consumer was not reasonably avoidable by the consumer himself.  15 U.S.C. § 45(n).  "Consumer" is again tied to the transaction because courts focus on whether the consumer had information to make a free and informed choice about the transaction, providing them the ability to avoid the unfair act or practice. *Neovi, Inc.*, 604 F.3d at 1158 ("In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice."); *Johnson*, 96 F. Supp. 3d at 1158 (same, quoting *Neovi*); *Federal Trade Comm'n v. Amazon.com, Inc.*, 71 F. Supp. 3d 1158, 1166 (W.D. Wash. 2014) (same); *see also Federal Trade Comm'n v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000) (stating that with respect to second element "the focus is on 'whether consumers had a free and informed choice that would have enabled them to avoid the unfair practice'").[17]  Plaintiffs were not participants in the transaction for the Subject

---

[16] The FTC Policy Statement is available on the Commission's website: https://www.ftc.gov/legal-library/browse/ftc-policy-statement-unfairness.

[17] The Federal Trade Commission also recognizes that the consumer is participating in the transaction because when considering if the consumer could reasonably avoid the injury, the focus is on whether the individual was in a position to make an informed decision about the transaction.  *See* FTC Policy Statement ("it has long been recognized that certain types of sales techniques may prevent *consumers from effectively making their decisions*, and that corrective action may then become necessary") (emphasis added).

165542

Firearm; they were victims of the criminal Assailant.   Accordingly, Plaintiffs cannot allege themselves to be "consumers" under the statute.

The final element under Section 45(n) considers whether injury was outweighed by countervailing benefits to "consumers or to competition."   15 U.S.C. § 45(n).   Again, the "consumer" is identified in relation to the transaction involving the alleged unfair act or practice not separately from it.   *See J.K. Publications, Inc.*, 99 F. Supp. 2d at 1201 (stating this element is satisfied "when a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition").

Plaintiffs' assertion that they are "consumers" under Section 45(n) fails as a matter of law. The courts and the Federal Trade Commission are clear.   A "consumer" is a participant (or beneficiary of a participant) in a transaction subjected to the alleged unfair marketing.   A "consumer" is not a person who consumes any product or service at all as Plaintiffs now allege.   If "consumer" status was afforded based on the consumption of ***any*** product or service, rather than consumption of the product or service alleged to be unfairly marketed, as Plaintiffs now maintain, then the term "consumer" in Section 45 simply means "anybody."

Plaintiffs cannot plead a violation of Section 45(n), by alleging themselves as "consumers," to assert a viable predicate exception based on the FTCA.   Moreover, as shown in the next section, Plaintiffs fail to plead (and can never plead) a viable exception even if they alleged the Assailant was the consumer.

> **2.    Plaintiffs fail to plead the second element of an "unfair" act or practice (and inadequately plead the other two elements).**

Utilizing the correct standard for "consumer," Plaintiffs do not adequately plead any of the three elements of an unfair act or practice.   As for the first element, Plaintiffs allege Daniel Defense's marketing was unfair because it "encouraged the illegal misuse" of its products that

"caused or was likely to cause substantial injury to consumers and ***foreseeable victims of gun*** ***violence by increasing the risk that disaffected adolescent and young men predisposed towards*** ***committing acts of mass violence will carry out those acts.***"   Doc. 26, ¶ 235 (emphasis added).

The first element requires a substantial likelihood of injury ***to the consumer***, not to victims of consumers who purchase marketed products to commit intentional crimes.   15 U.S.C. § 45(n); *Accusearch Inc.*, 570 F.3d at 1193.   Plaintiffs attempt to plead the required injury as the harm suffered by the victims of the consumer's crime, *i.e.*, the harm for which Plaintiffs seek damages. Doc. 26, ¶ 235.   But nothing in Section 45(n), or the entire FTCA, suggests it is intended to protect victims of consumers who deliberately use purchased products to commit criminal acts.[18]

Next, and critically, ***Plaintiffs completely ignore the second element and make no effort to*** ***plead the substantial injury the consumers suffered was "not reasonably avoidable by consumers*** ***themselves.***"   15 U.S.C. § 45(n).   Plaintiffs fail to allege actual facts (or even conclusory allegations) that consumers could not reasonably avoid injury from the alleged unfair marketing practice at issue.   Nor can Plaintiffs ever allege this element as discussed in the next section.

Finally, as to the third element, Plaintiffs only plead, in conclusory form, that the supposed harm from Daniel Defense's marketing practices is not outweighed by countervailing benefits to consumers or to competition.   Doc. 26, ¶ 239.

Dismissal under Rule 12(b)(6) is appropriate when a claimant fails to plead facts on each element of a claim.[19]   The same is true when a claimant fails to sufficiently plead the elements of an

---

[18] While Plaintiffs recite the element "substantial injury to consumers," Plaintiffs do not allege facts of any actual injury experienced by consumers as opposed to victims of criminal acts of consumers.   Doc. 26, ¶ 235; *see Iqbal*, 556 U.S. at 678 (stating "formulaic recitation of the elements of a cause of action will not do").

[19] *See Garcia-Lopez v. Waste Mgmt. of Tex., Inc.*, No. 22-20112, 2022 WL 17547458, at *2 (5th Cir. Dec. 9, 2022) (affirming dismissal when plaintiff "fail[ed] to plead any of the three statutorily required elements to support his claim"); *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (affirming dismissal of *Monell* claim because plaintiff failed to adequately plead one of three elements); *Strickland v. Bank of New York Mellon*, 838 F. App'x 815, 820 (5th Cir. 2020) (affirming dismissal of claims when plaintiffs failed "to plead any facts in support of their remaining claims, and simply reference[d] the causes of action by reciting the elements without analysis to legal authority"); *Carlos*

165542

exception to immunity.  *See Hughes v. Oklahoma*, No. CIV-21-1094-F, 2022 WL 3970650, at *8 (W.D. Okla. Aug. 31, 2022) (dismissing Section 1983 claim because plaintiff "failed to plead facts sufficient to establish the second . . . and third . . . elements of the special relationship exception" to immunity); *Akers v. Quality Carriers, Inc.*, No. 2:21-CV-00660, 2022 WL 363597, at *3 (S.D.W. Va. Feb. 7, 2022) (dismissing plaintiff's claim because he "fail[ed] to state a claim for either exception to employer immunity"); *Mel v. Sherwood Sch. Dist.*, No. 11-0987-AA, 2011 WL 13057295, at *7 (D. Or. Dec. 14, 2011) (dismissing Section 1983 claim because plaintiff failed to plead requisite element of special relationship exception to immunity).[20]

Plaintiffs fail to plead the second element of an unfair act or practice and inadequately plead the first and third elements of such an act or practice.  Accordingly, Plaintiffs have failed to adequately plead an "unfair" act or practice and, thus, cannot rely on the FTCA as a predicate exception.  *Hughes*, 2022 WL 3970650, at *8; *Akers*, 2022 WL 363597, at *3.

### 3. Plaintiffs can never plead the second element of an "unfair" act or practice in this case.

Plaintiffs will never be able to plead required elements of their alleged unfair practices violation.  Again, the first element considers unfair practices that cause or are likely to cause substantial injury *to consumers*.  15 U.S.C. § 45(n).  Plaintiffs are not consumers of the product at issue; they are victims of a consumer who chose to use a marketed product to commit intentional criminal acts.  In this instance, the Assailant was the consumer, but Plaintiffs do not have standing to allege any injuries that he supposedly suffered.

---

*Antonio Raymond v. J.P. Morgan Chase Bank*, No. SA19CA596OLGHJB, 2020 WL 10731764, at *6 (W.D. Tex. July 6, 2020), *report and recommendation adopted*, 2020 WL 10731936 (W.D. Tex. Oct. 6, 2020) (dismissing defamation claim when plaintiff failed to adequately plead second element of claim).

[20] Conversely, courts will deny a motion to dismiss a claim for unfair practices when all three elements are sufficiently pleaded.  *Federal Trade Comm'n v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 622 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3rd Cir. 2015).

As for the second element, Plaintiffs are unable to plead that the injury was "not reasonably avoidable" by the consumer himself.  15 U.S.C. § 45(n).  The second element considers whether the consumer could have reasonably avoided the alleged harm.  *Id.*  The relevant harm is harm sustained by the consumer.  Here, the Assailant (the consumer) easily could have avoided any harm to himself because he was not forced to purchase the Subject Firearm; he did so freely (and legally). *See* Doc. 26, ¶ 101 (admitting Assailant purchased Subject Firearm after turning 18 years old).  And as for the harm suffered by the Assailant/consumer's victims –the incorrect harm standard that Plaintiffs allege (Doc. 26, ¶ 235)– the Assailant certainly could have avoided any harm to Plaintiffs by choosing not to commit his intentional criminal acts.  Legally purchasing a firearm (or any product) to use to commit murder, as Plaintiffs allege, is not reasonable under any circumstances. Thus, even if the FTCA was intended to prevent injuries to victims of consumers for their intentional criminal acts as Plaintiffs suggest (Doc. 26, ¶ 235), Plaintiffs are unable to legitimately allege that the consumer (*i.e.*, the Assailant) could not have reasonably avoided this harm.

Finally, Daniel Defense's marketing of its products is beneficial to its customers.  15 U.S.C. § 45(n).  Daniel Defense's marketing advises potential customers, who are legally entitled to purchase firearms, of its available products.  This is consistent with the congressional findings in support of the PLCAA, including the right of people to keep and bear arms under the Second Amendment. 15 U.S.C. § 7901(a)(1)-(2).  Further, marketing of firearms is consistent with the purposes of the PLCAA including preserving citizens' access to a supply of firearms for all lawful purposes, guaranteeing citizens' rights, privileges, and immunities under the Fourteenth Amendment, and protecting the First Amendment rights of firearm manufacturers and sellers to speak freely, among other purposes.  15 U.S.C. § 7901(b)(2), (3), and (5).

Because Plaintiffs do not (and cannot) plead the elements of an unfair act or practice, they are precluded from relying on such an act or practice as the basis for a predicate exception.

**D.      Plaintiffs do not allege facts that any supposed unfair act or practice proximately caused their injuries.**

Even if Plaintiffs adequately plead the elements of an unfair act or practice, it would not be enough.  To qualify as a predicate exception, Plaintiffs must also plead sufficient facts that Daniel Defense's alleged violation of the FTCA "was a proximate cause of the harm for which relief is sought. . . ."  15 U.S.C. § 7903(5)(a)(iii).  Plaintiffs plead proximate cause in conclusory fashion stating:

> These knowing violations of the FTC Act were a proximate cause of [the Assailant's] purchase and decision to use the Daniel Defense DDM4 V7 rifle and the wrongful death of E.T., as well as her substantial and unnecessary physical pain, mental anguish, and emotional suffering, including pre-death terror.

Doc. 26, ¶ 240.  But Plaintiffs **do not plead any facts** that Daniel Defense's alleged unfair marketing practices were a proximate cause of Plaintiffs' injuries.  First, Plaintiffs allege no facts that the Assailant saw any of the advertisements or social media posts Plaintiffs identify in their Complaint.  Second, Plaintiffs allege no facts that the Assailant relied on any deceptive or unfair marketing in deciding to buy the Subject Firearm.  ***Third, and most importantly, Plaintiffs do not allege any facts that the Assailant committed his criminal acts relying on or motivated by any of Daniel Defense's marketing.***  And Plaintiffs concede they have no actual facts in this regard.  *See* Doc. 26, ¶ 239 (stating Assailant's use of Subject Firearm to carry out his crimes "was, upon information and belief, influenced by Daniel Defense's marketing"); *id.*, ¶ 92 (stating that "on information and belief, exposure to Daniel Defense's marketing" influenced Assailant).

Plaintiffs would have the Court speculate that, because Daniel Defense publicly markets its products, the Assailant necessarily saw this marketing, and it motivated him to both purchase the Subject Firearm and to use it to commit his horrific crimes.  But speculation does not satisfy Rule 12(b)(6).

165542

District courts repeatedly grant motions to dismiss when plaintiffs fail to adequately plead facts to establish proximate causation. *Haqq v. Walmart Dep't Store*, No. EP-19-CV-00200-DCG, 2019 WL 4876958, at *2 (W.D. Tex. Oct. 3, 2019); *Wright v. Bexar Cnty. Sheriff's Office*, No. SA-18-CV-1022-XR, 2018 WL 6251389, at *4 (W.D. Tex. Nov. 29, 2018); *see Abdeljalil v. City of Fort Worth*, 189 F.3d 466 (5th Cir. 1999) (affirming dismissal because plaintiff failed to allege legally sufficient facts of proximate causation); *Ashe v. Corley*, 992 F.2d 540, 545 (5th Cir. 1993) (same). The need to sufficiently plead facts of proximate causation is also required when the claimant alleges it was the victim of a crime because of the defendant's acts or omissions. *See Cook v. T-Mobile USA, Inc.*, No. 3:14-CV-2907-P, 2015 WL 11120973, at *2–3 (N.D. Tex. June 2, 2015) (granting motion to dismiss and finding plaintiffs failed to allege sufficient facts that alleged defects in phone manufactured by defendant proximately caused murder of plaintiffs' decedent); *Cook v. City of Dallas*, No. 3:12-CV-3788-P, 2014 WL 10728794, at *4 (N.D. Tex. June 25, 2014) (dismissing claim for failing to allege sufficient facts of proximate cause to waive qualified immunity because "Cook's death was the result of an attack by a third party").

Plaintiffs do not allege any facts, let alone sufficient facts, that any supposed unfair marketing practice proximately caused their injuries. Thus, even assuming Plaintiffs adequately pleaded the elements of an unfair act or practice under the FTCA (they did not), their claimed predicate exception still fails as a matter of law because they did not plead any facts that any such act or practice proximately caused Plaintiffs' injuries as required by the PLCAA.

Plaintiffs cannot rely on the FTCA as a predicate exception. The FTCA does not specifically regulate firearms; this Court has no jurisdiction to consider whether the statute was violated; and, regardless, Plaintiffs cannot (and do not) plead essential elements of such a violation. Accordingly, as a matter of law, Plaintiffs' reliance on the FTCA as a predicate exception to the PLCAA fails.

V.    **Plaintiffs fail to plead and can never plead a viable negligence per se claim based on the FTCA, thus precluding the claim's use as a PLCAA-exception.**

With their Amended Complaint, Plaintiffs add a cause of action against Daniel Defense for negligence per se based on Section 45(n) of the FTCA in an attempt to invoke the PLCAA's negligence per se exception.  *See* Doc. 26, ¶¶ 243-250 (Second Cause of Action).  This new claim does not invoke an exception to Daniel Defense's immunity under the PLCAA.  Procedurally, Plaintiffs fail to adequately plead the claim because they do not cite any authority holding the FTCA can serve as a basis for negligence per se claim under Texas law.  Substantively, Plaintiffs' claim fails as a matter of law for four separate reasons.

A.    **Plaintiffs fail to adequately plead a negligence per se claim based on the FTCA.**

In order to sufficiently plead a negligence per se claim, a plaintiff must not only allege the violation of a specific statute but must also allege that courts have found a violation of the statute to be negligence per se.  The failure to allege the latter will result in dismissal.  For example:

> *Negligence per se applies when the courts have determined that the violation of a particular statute is negligence as a matter of law*.  In these situations, the standard of care is defined by the statute itself rather than by the reasonably prudent person standard that applies in general negligence actions.
>
> Here, the Allisons assert that the defendants are liable for negligence per se.  However, *the pleading does not factually allege the violation of a specific statute, much less state how courts have determined that statute to establish negligence per se. Therefore, the factual allegations are insufficient to survive a motion to dismiss.*

*Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *13–14 (E.D. Tex. Oct. 2, 2012) (citations omitted) (emphasis added); *see Burgess v. Bank of Am., N.A.*, No. 5:14-CV-00495-DAE, 2014 WL 5461803, at *12 (W.D. Tex. Oct. 27, 2014) (dismissing negligence per se claim, denying leave to amend, and stating "Plaintiff has failed to cite any authority that a mere violation of that statute constitutes negligence per se. . . .  Accordingly, Plaintiff has failed to

state a cause of action for negligence per se . . . ."); *Bryant v. CIT Group/Consumer Fin.*, No. CV H-16-1840, 2018 WL 1740075, at *7 (S.D. Tex. Apr. 11, 2018) (dismissing negligence per se claim when plaintiff cited no authority for proposition that violation of Texas Penal Code section constitutes negligence per se se); *see also Menlo Inv. Group, LLC v. Fought*, No. 3:12-CV-4182-K BF, 2015 WL 547343, at *5 (N.D. Tex. Feb. 5, 2015) ("Plaintiffs, however, fail to cite any authority that a violation of Chapter 51–or any specific provision thereof-constitutes negligence per se. Accordingly, Plaintiffs have failed to state a claim for negligence per se.").

In their negligence per se claim, Plaintiffs allege the violation of a specific statute –15 U.S.C. § 45(n).

> By marketing the illegal misuse of its products, Daniel Defense violates the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1).   An unfair act or practice "causes or is likely to cause substantial injury to consumers which is not reasonably avoided by consumers themselves and not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

Doc. 26, ¶ 245.  But Plaintiffs do not allege that any Texas court has found a violation of Section 45(n), or the FTCA generally, is negligence per se.  *Id.*[21]  Thus, Plaintiffs failed to sufficiently plead a claim for negligence per se, and the Court should dismiss that claim.  *Bryant*, 2018 WL 1740075, at *7; *Burgess*, 2014 WL 5461803, at *12; *Allison*, 2012 WL 4633177, at *13–14.

Moreover, even if Plaintiffs had adequately pleaded a negligence per se claim, that claim substantively fails as a matter of law for four reasons.

**B.      Plaintiffs' negligence per se claim based on the FTCA fails as a matter of law.**

While the PLCAA provides an exception to immunity for negligence per se claims against sellers, it does not create a cause of action.  15 U.S.C. § 7903(5)(C); *Academy*, 625 S.W.3d at 30. Thus, whether a plaintiff can establish a negligence per se claim as an exception to PLCAA immunity is determined by state law concerning negligence per se.  *Estados Unidos Mexicanos v.*

---

[21] As discussed in the next section, Texas state law regarding negligence per se applies here.

165542

*Smith & Wesson Brands, Inc.*, No. CV 21-11269-FDS, 2022 WL 4597526, at *17 (D. Mass. Sept. 30, 2022).  Under Texas law, Plaintiffs cannot base a negligence per se claim on the FTCA.

      **1.**       **The FTCA is not a penal statute and, therefore, Plaintiffs cannot use it as the basis for their negligence per se claim.**

The Texas Supreme Court has repeatedly stated that negligence per se is based on the violation of a penal statute not a civil statute.   "Negligence per se is a common-law doctrine that allows a court to ***rely on a penal statute*** to define a reasonably prudent person's standard of care." *Reeder v. Daniel*, 61 S.W.3d 359, 361–362 (Tex. 2001) (emphasis added); *see Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) ("Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct ***created by a penal statute*** rather than on the reasonably prudent person test used in pure negligence claims.") (emphasis added).   The Fifth Circuit and Texas federal district courts apply this same standard to negligence per se claims.[22]   "A 'penal statute' is one that defines a criminal offense and specifies a corresponding fine, penalty, or punishment."  *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509 (Tex. App.—Fort Worth 2001, pet. denied); *see Good River Farms, LP v. Martin Marietta Materials, Inc.*, No. 1:17-CV-1117-RP, 2020 WL 13610354, at *4 (W.D. Tex. Nov. 30, 2020) (same); *My Clear View Windshield Repair, Inc. v. GEICO Advantage Ins. Co.*, No. 4:16-CV-02840, 2017 WL 2591339, at *4 (S.D. Tex. Feb. 14, 2017) (same); *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *6 (S.D. Tex. July 13, 2016) (same); *Watkins v. Cornell Companies, Inc.*, No. 3:11-CV-

---

[22] *E.g.*, *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018); *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 529 (5th Cir. 2018); *Ordonez v. Ausby*, No. EP-21-CV-00077-DCG, 2023 WL 310442, at *5–6 (W.D. Tex. Jan. 18, 2023); *Trinh v. Hunter*, No. SA-20-CV-00725-JKP, 2022 WL 6813293, at *5 (W.D. Tex. Oct. 11, 2022); *Holder v. Brannan*, No. SA-21-CV-01029-JKP, 2022 WL 4001973, at *2 (W.D. Tex. Aug. 31, 2022); *Rivera v. Thanh Chi Nguyen*, No. PE:18-CV-41-DC-DF, 2019 WL 4999055, at *4 (W.D. Tex. July 22, 2019), *report and recommendation adopted*, 2019 WL 5026928 (W.D. Tex. Aug. 6, 2019); *Urias v. Grounds*, No. 5:11CV142, 2011 WL 6318550, at *3 (E.D. Tex. Dec. 15, 2011); *Main v. Eichorn*, No. W-10-CA-00158, 2011 WL 13127650, at *6 (W.D. Tex. Mar. 3, 2011); *Korotney v. Sears Roebuck & Co.*, 580 F. Supp. 2d 523, 527 (E.D. Tex. 2008).

260-M-BN, 2013 WL 1914713, at *3 (N.D. Tex. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1926375 (N.D. Tex. May 8, 2013) (same).

Given the Texas Supreme Court precedent, federal district courts have repeatedly rejected negligence per se claims that are based on non-penal, civil statutes.  For example, in *Del Castillo*, the court dismissed the plaintiffs' negligence per se claim arising out of a fatal refinery explosion because it was not based on any penal statute.

> The negligence per se pleadings also suffer from an even more basic deficiency.  Under Texas law, ***only the violation of "a penal statute"*** can give rise to negligence per se.  A "penal statute is one that defines a criminal offense and specifies a corresponding fine, penalty or punishment."  ***Of the various administrative rules, regulations, industry standards, and the one federal civil statute that are listed in the Complaint, "none...are penal in nature, and therefore none can serve as the basis of a negligence per se claim***."

2016 WL 3745953, at *6 (citations omitted); *see id.* at *16 (stating that pleading that does not allege violation of penal statute "fails to make out a claim for negligence per se); *see also My Clear View Windshield Repair, Inc.*, 2017 WL 2591339, at *5 (holding plaintiffs' negligence per se claim failed under Rule 12(b)(6) because Insurance Code provisions the plaintiffs relied upon were not penal statutes).

Similarly, in *Watkins*, the district court granted summary judgment on a negligence per se claim because the underlying statute provided only civil rather than criminal penalties.

> All of the Texas Administrative Code sections on which Plaintiffs rely are within chapter 448 of title 25.  ***The penalties for enforcement of chapter 448 are civil remedies, ranging from license revocation or suspension to administrative penalties.  As such, none of the sections in chapter 448 are penal in nature, and therefore none can serve as the basis of a negligence per se claim.***

*Watkins*, 2013 WL 1914713, at *4 (citation omitted); *see Good River Farms, LP*, 2020 WL 13610354, at *4 (granting summary judgment on negligence per se claim stating, under Texas law "only a violation of a penal statute can give rise to negligence per se" and that "[b]ecause the

provisions of the TWC on which Good River relies for its negligence per se claims **do not contain criminal penalti**es, it is not 'penal in nature, and therefore [cannot] serve as the bases for a negligence per se claim") (emphasis added); *Trimble v. Millwood Hosp.*, 420 F. Supp. 3d 550, 557 (N.D. Tex. 2016) (granting summary judgment on negligence per se claim stating "Section 164.009 of the Texas Health & Safety Code and chapter 404 of the T.A.C. cannot provide a basis for negligence per se because they are not penal statutes"); *see also Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509-10 (Tex. App.—Fort Worth 2001, pet. denied) (affirming trial court's striking of negligence per se claims based on violations of Texas Administrative Code provision that provided civil penalties, including fines, concluding that those were not criminal penalties).

The FTCA is not a penal statute. It expressly provides "civil penalties" and authorizes the Federal Trade Commission to bring "civil actions" "to recover a civil penalty . . . ." *See* 15 U.S.C. § 45(l)-(m) (referring to "civil penalty" eight times). The Texas Supreme Court requires a negligence per se claim to be based on a penal statute. *Reeder*, 61 S.W.3d at 361–362; *Smith*, 940 S.W.2d at 607. Because the FTCA is a civil statute providing civil remedies, it is not a penal statute and cannot serve as the basis for a negligence per se claim. Accordingly, the Court should dismiss Plaintiffs' negligence per se claim against Daniel Defense. *Del Castillo*, 2016 WL 3745953, at *6; *My Clear View Windshield Repair, Inc.*, 2017 WL 2591339, at *5.

### 2. Plaintiffs cannot satisfy the two threshold requirements for a negligence per se claim.

Assuming, *arguendo*, that the FTCA was a penal statute, Plaintiffs still cannot base a negligence per se claim on a violation of the FTCA. The Texas Supreme Court states that "[t]he threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *see Reeder*, 61 S.W.3d at 366 (same); *Martinez v. Walgreen Co.*, 935 F.3d 396, 403-404 (5th Cir. 2019) (same); *Holcombe v.*

165542

*U.S.*, 388 F. Supp. 3d 777, 800 (W.D. Tex. 2019) (same).  Plaintiffs cannot satisfy either of these requirements.

First, Plaintiffs do not belong in the class the FTCA was intended to protect.  As discussed in detail in Section IV(C)(1)(a)-(b), *supra*, Section 45(n) prohibits unfair acts and practices that cause substantial injury to consumers.  "Consumer" status under the statute is directly tied to the transaction that is the subject of the alleged unfair acts and practices.  *Id.*  Plaintiffs are not "consumers" under Section 45(n) because they had no involvement in the transaction for the Subject Firearm.  Plaintiffs are post-transaction victims of a criminal consumer; not consumers themselves.  *Id.*  Thus, Plaintiffs are not part of the class that the statute was intended to protect.

Second, Plaintiffs' injuries are not the type the FTCA was intended to prevent.  The FTCA was not intended to prevent murder or attempted murder; that is the purpose of penal statutes.  The FTCA is intended to protect consumers and competition.  15 U.S.C. § 45(a)(1).  Plaintiffs are the victims of a murderer.  If the FTCA was intended to prevent this type of injury, Congress would have: (1) said so, and (2) provided criminal penalties for a violation of the statute.  But Congress only provided for limited civil penalties for violations of the FTCA.  15 U.S.C. § 45(l)-(m).

The Fifth Circuit has refused to find negligence per se when the plaintiffs' harm was not within the type of harm the statute was intended to protect against.  In *Martinez v. Walgreen Co.*, the plaintiffs sued a pharmacy after it supplied the wrong medication to a customer who then operated a motor vehicle and collided with other vehicles.  935 F.3d 396, 398 (5th Cir. 2019).  Among their claims, the plaintiffs alleged the pharmacy was negligent per se because it violated various laws regulating pharmacies.  The Fifth Circuit affirmed the pharmacy's summary judgment on the negligence per se claim, holding the plaintiff could not satisfy the "type of harm" requirement.

> The plaintiffs argue that as members of the public, they are therefore within the class of persons that the legislature aimed to protect by prohibiting the distribution of a prescription drug to someone without a prescription for that drug. Nothing suggests, however, that this statutory prohibition intended to prevent the *type of harm* that the plaintiffs experienced—rather than preventing harm to the members of the public who ingest potentially dangerous prescription drugs and suffer harm as a result. We therefore cannot infer from Walgreens's alleged violation of its statutory obligations that its tort duty of care extends to the third-party plaintiffs in this case.

*Id.* at 404 (emphasis in original).

The type of harm for which Plaintiffs sue arises from **subsequent, intentional, criminal conduct** of a consumer. Nothing in the FTCA suggests that it is intended to prevent people who legally purchase products (firearms, motor vehicles, kitchen knives, *etc.*) from then using those products to commit murder or attempted murder against third-parties. Accordingly, Plaintiffs cannot satisfy either of the threshold requirements for their negligence per se claim.

### 3. As a matter of law, the FTCA cannot serve as the basis for Plaintiffs' negligence per se claim because it would thwart Congress' intent.

Plaintiffs cannot satisfy the two threshold requirements for negligence per se. But even if they could, that "does not end [the court's] inquiry." *Perry*, 973 S.W.2d at 305. If the threshold requirements are satisfied, "[t]he court must still determine whether it is appropriate to impose tort liability for violations of the statute." *Id.* "In determining whether a penal statute provides the basis for a civil cause of action, [courts] must consider whether recognizing such an accompanying civil action would be inconsistent with legislative intent." *Reeder*, 61 S.W.3d at 362 (citing *Smith*, 940 S.W.2d at 607); *see Walters v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:21-CV-981-L, 2022 WL 902735, at *5 (N.D. Tex. Mar. 28, 2022) (same); *Armstrong v. Sw. Airlines Co.*, No. 3:20-CV-3610-BT, 2021 WL 4391247, at *3 (N.D. Tex. Sept. 24, 2021) (same). Put simply:

> . . . Texas courts "will not disturb the Legislature's regulatory scheme by judicially recognizing a cause of action" not contemplated in the statute. *Id.* at 364; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) ("*If the statute does not itself so provide, a private cause of action will not be created through judicial mandate.*").

36

*Id.* (quoting *Reeder*) (emphasis added); *see Stokes v. Sw. Airlines*, 887 F.3d 199, 201 (5th Cir. 2018) (citing *Ziglar*).

The Texas Supreme Court and Texas federal courts have repeatedly refused to recognize a negligence per se claim when imposing liability would contradict legislative intent by creating a cause of action neither the Legislature nor Congress chose to enact.

In *Smith*, a passenger who was injured in an automobile accident alleged the defendants were negligent per se because they provided alcohol to a 19-year-old driver at a party in violation of the Texas Alcoholic Beverage Code. 940 S.W.2d at 604. The trial court granted the defendants summary judgment on this claim, but the court of appeals reversed. *Id.* The Texas Supreme Court reversed and rendered concluding the cited statutory provision could not serve as the basis for a negligence per se claim. The statute included both criminal and civil provisions. However, because the Legislature provided that the civil remedies were "exclusive" and in lieu of any common law rights, the Court held that the statute could not provide a basis for a negligence per se claim.

> We also find significant the Legislature's expressed intention to preclude Chapter 106 from serving as a basis for negligence per se. Section 2.03 clearly states that Chapter 2 "provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older." That section further mandates that liability under Chapter 2 "is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages." Thus, under Chapter 2, civil liability for alcohol providers, as defined in section 2.01, is in lieu of any negligence per se cause of action, even when the provider serves alcohol to a person aged eighteen to twenty.

*Id.* at 608 (citations omitted).

Four years later in *Reeder*, the Texas Supreme Court considered whether this statutory scheme created a negligence per se claim for providing alcohol to minors. 61 S.W.3d at 361. *Id.* Once again, the Texas Supreme Court refused to find a claim for negligence per se because it would contravene the Legislature's intent.

37

In sum, the Legislature has actively regulated alcoholic beverage consumption, separated the Texas Alcoholic Beverage Code into criminal and civil sections, and declined to include social hosts in the Dram Shop Act's civil liability scheme. Accordingly, *we will not disturb the Legislature's regulatory scheme by judicially recognizing a cause of action against social hosts who "make alcohol available" to guests under age eighteen.*

*Id.* at 364 (emphasis added).

Federal courts have applied these holdings and refused to recognize negligence per se claims based on statutes that do not provide a private right of action because it would violate legislative intent. In *Armstrong*, the plaintiff alleged a negligence per se claim based on a violation of the Air Carrier Access Act (the "ACAA"). 2021 WL 4391247, at *1. Citing *Smith* and *Reeder*, the district court stated that "when a legislative body declines to provide for an individual private right of action in a statute and instead provides a comprehensive regulatory scheme with limited private remedies, that statute will not be an appropriate basis for a negligence per se claim." *Id.* at *3. The court noted the ACAA provides no private right of action, and the Fifth Circuit had held that no private right of action exists to enforce the statute. *Id.* at *2. Consequently, the court dismissed the negligence per se claim because recognizing such a claim would be inconsistent with legislative intent.

. . . [T]he Court finds that the ACAA is not a proper basis for a negligence per se claim under Texas law. Like the statutes at issue in *Baker*, *Bell*, and *Martino*, **the ACAA contains no private right of action**. And, like the statutes at issue in *Smith*, *Reeder*, and *Baker*, **the ACAA forms a comprehensive regulatory scheme, enforced by a governmental agency, that explicitly limits the actions of private litigants to a few exclusive remedies.** Accordingly, like the statutes considered in those cases, the ACAA evinces a Congressional intent to disallow private rights of action not included in the statute—including negligence per se. **Thus, allowing a negligence per se claim based on the ACAA would violate the Texas law requirement that a negligence per se claim respect the legislative intent of the underlying statute. If the Court were to allow Armstrong to bring a negligence per se claim based on the ACAA, it would "disturb the Legislature's regulatory scheme by judicially recognizing a [private] cause of action" not contemplated in the statute.** Because the ACAA cannot serve

as the basis for a negligence per se claim, Armstrong's negligence per se claim is dismissed with prejudice.

*Id.* at *4 (citations omitted) (emphasis added).

The district court reached the same conclusion in *Walters* in which the plaintiff alleged violations of HIPAA and TMRPA as the basis for a negligence per se claim.  *Walters*, 2022 WL 902735, at *5.  The district court noted that neither statute created a private cause of action.  *Id.*  As in *Armstrong*, the court dismissed the negligence per se claim because it was inconsistent with legislative intent.

> *Based on the foregoing, the court finds that HIPAA and TMRPA are not proper bases for a negligence per se claim under Texas law because both statutes do not contain a private right of action, and to hold otherwise would run afoul of legislative intent*.  Because HIPAA and TMRPA cannot serve as the basis for a negligence per se claim, Mr. Walters's negligence per se claim is dismissed with prejudice.

*Id.* at *6 (emphasis added).

Finally, while not a Texas case, *Toretto v. Donnelley Fin. Sols., Inc.* is instructive.  There, the plaintiffs sued the defendants following a data breach of the defendants' email servers.  583 F. Supp. 3d 570, 581 (S.D.N.Y. 2022).  Among the claims was one for negligence per se based on violations of the FTCA.  *Id.*  at 597-598.  New York state law is similar to Texas law with respect to negligence per se in that it requires courts to consider: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme."  *Id.* at 598.  Because the FTCA does not provide a private cause of action, the court dismissed the plaintiffs' negligence per se claim.

> Plaintiffs fail to plead a negligence per se claim.  Plaintiffs base their claim against Mediant on Section 5 of the FTCA.  However, as Plaintiffs admit, Section 5 does not provide for a private right of action.  "[I]nstead, the FTCA confers exclusive enforcement authority on the Federal Trade Commission."  "Thus, allowing [a] negligence per se claim to proceed based on a violation of the FTCA would be inconsistent with the legislative scheme."

165542

> Accordingly, the Court dismisses Plaintiffs' negligence *per se* claim against
> Mediant.

*Id.* at 598-599 (citations omitted).

Plaintiffs want to judicially create a cause of action Congress refused to enact.  The FTCA "does not provide for private causes of action."  *Yumilicious Franchise, L.L.C.*, 819 F.3d at 177; *see* Section IV(B)(1), *supra* (citing additional cases).  The FTCA provides a comprehensive regulatory scheme enforced by a government agency.  15 U.S.C. § 45; *Armstrong*, 2021 WL 4391247, at *4.  Stated differently, the FTCA "evinces a Congressional intent to disallow private rights of action . . . ."  *Id.*  Permitting a negligence per se claim based on the FTCA would thwart Congress' intent by creating a private cause of action for violations of the FTCA that Congress chose not to provide.  *Id.*; *Walters*, 2022 WL 902735, at *6.  It would be a legal absurdity to permit a common law cause of action for negligence per se based on a statute for which Congress specifically decided not to provide a private right of action. The Court, therefore, should dismiss Plaintiffs' negligence per se claim against Daniel Defense with prejudice.  *Armstrong*, 2021 WL 4391247, at *4; *Walters*, 2022 WL 902735, at *6.  Consequently, Plaintiffs cannot rely on the negligence per se exception to circumvent Daniel Defense's immunity under the PLCAA.

### 4.    Plaintiffs lack an analogous common law duty necessary for their negligence per se claim.

Plaintiffs' negligence per se claim substantively fails for yet another reason.  Negligence per se does not create a duty; rather it uses a penal statute to establish a standard of care.  *See Perry*, 973 S.W.2d at 307; *Holcombe*, 388 F. Supp. 3d at 801-802.  Thus, assuming the two threshold requirements are satisfied, courts will still refuse to find negligence per se if there is no corresponding common law duty, and the statute would provide the source of the duty.  *Perry*, 973 S.W2d at 307; *Holcombe*, 388 F. Supp. 3d at 801.

In this instance, there is no corresponding common law duty to support Plaintiffs' negligence per se claim. "[T]here is generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress." *Perry*, 973 S.W.2d at 306;[23] *see Butcher v. Scott*, 906 S.W.2d 14, 15 (Tex. 1995) (same); *Madison v. Williamson*, 241 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (same). Accordingly, in cases in which the plaintiff sues for harm committed by the criminal acts of a third person, courts have rejected claims for negligence per se.

In *Perry*, the plaintiffs sued friends of day care center providers for failing to report child abuse they supposedly witnessed. 973 S.W.2d at 302. The issue before the Texas Supreme Court was whether plaintiffs could base a negligence per se claim on the violation of a Family Code provision making it a misdemeanor to knowingly fail to report abuse. *Id.* The court explained that it "will not apply the doctrine of negligence per se if the ***criminal statute*** does not provide an appropriate basis for civil liability." *Id.* at 304 (emphasis added). While the court found that the two threshold requirements were satisfied (class of persons and type of injury), it held the criminal statute was not a basis for a negligence per se claim. *Id.* at 309. Among the reasons for its conclusion was the fact that there was no corresponding common law duty to protect others from the criminal acts of third parties. *Id.* at 306.

United States District Judge Xavier Rodriguez reached the same conclusion in *Holcombe* in which the plaintiffs sued the government following the Sutherland Springs shooting. 388 F. Supp. 3d at 784-785. Among their claims, Plaintiffs alleged negligence per se based on the government violating reporting requirements in the Brady Act. *Id.* at 800. Relying on *Perry*, Judge Rodriguez dismissed the negligence per se claim, concluding there was a lack of a corresponding common law duty to protect the plaintiffs from the criminal acts of a third party.

---

[23] There is an exception where a person controls a premises and is aware of the risk of criminal harm to invitees. *Id.* That exception is inapplicable here.

> Here, there is no general Texas common-law duty that corresponds with the Brady Act's reporting requirements, as there is "generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress." *see Perry*, 973 S.W.2d at 306 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). ***This lack of common-law duty is fatal to Plaintiffs' negligence per se claims under Texas law and in the [Federal Tort Claims Act] context.*** The Court must be mindful of its role in a case like this.

*Id.* at 802 (emphasis added); *see id.* (stating "because Plaintiffs have pointed to no 'analogous circumstances' under which Texas law imposes the necessary duty to support the negligence per se claims . . . the Government's motion is granted as to the negligence per se claims").

Plaintiffs' negligence per se claim fails for the same reason. There is no common law duty to protect others from criminal acts of third parties like those the Assailant perpetrated. Thus, for their negligence per se claim Plaintiffs must rely on the FTCA not only for the standard of care but as the source of the legal duty. This is impermissible as *Perry* and *Holcombe* demonstrate. Courts will not allow plaintiffs to use penal statutes to create a common law duty that does not exist. *See Holcombe*, 88 F. Supp. 3d at 802 ("the Court applies Texas law as it exists, but it will not import innovative theories of recovery or otherwise expand Texas tort law"). Accordingly, Plaintiffs' negligence per se claim fails as a matter of law, and the Court should dismiss it with prejudice. *Id.*

### C. Plaintiffs fail to plead facts establishing proximate causation.

Finally, even if Plaintiffs could meet all of the requirements for a negligence per se claim discussed above (they cannot), it would still fail because Plaintiffs do not adequately plead proximate causation as shown in Section IV(D). *See Trinh*, 2022 WL 6813293, at *5 ("To prevail on a cause of action for negligence per se, a party must also establish the violative conduct was the proximate cause of that party's injuries."). Plaintiffs plead proximate cause in conclusory terms. Doc. 26, ¶ 247.

Plaintiffs cannot establish the PLCAA's predicate exception, and their attempt to now assert the negligence per se exception fails for numerous reasons. Daniel Defense is immune from suit under the PLCAA and, consequently, the Court should dismiss all of Plaintiffs' claims against Daniel Defense.

## VI.   The Court should deny Plaintiffs leave to amend their claims because any further amendment would be futile.

In response to a Rule 12(b)(6) motion, a district court has the discretion to grant the claimant leave to amend their complaint. But the court also has discretion to deny leave if the amendment would be futile. *Bowling v. Dahlheimer*, No. 20-40642, 2022 WL 670150, at *2 (5th Cir. Mar. 7, 2022); *Callais Capital Mgmt., L.L.C. v. Wilhite*, No. 21-30222, 2022 WL 445160, at *1 (5th Cir. Feb. 14, 2022). An amendment would be futile if it would fail to state a claim on which relief could be granted. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–873 (5th Cir. 2000); *see American Civil Rights Union v. Martinez-Rivera*, 166 F. Supp.3d 779, 807 (W.D. Tex. 2015) (citing *Stripling* and denying leave to amend).

Any further amendment by Plaintiffs would be futile because they cannot establish an exception to the PLCAA's immunity from suit. *See Jones v. Performance Serv. Integrity*, 492 F. Supp. 2d 590, 599 (N.D. Tex. 2007) (denying leave to amend again when plaintiff had stated her best case "after two bites at the apple"). None of the other exceptions are applicable here. 15 U.S.C. § 7903(5)(A)(i)-(ii), (iv)-(vi).[24] Accordingly, the Court should dismiss Plaintiffs' claims against Daniel Defense with prejudice and deny them leave to amend those claims.

---

[24] For example, Plaintiffs plead the negligent entrustment exception (15 U.S.C. § 7903(5)(A)(ii)) with respect to their claims against Defendant Oasis Outback, LLC. Doc. 26, ¶¶ 259, 270. But because the PLCAA does not create a cause of action for negligent entrustment, state law will determine whether the exception applies. *See Academy*, 625 S.W.3d at 30 (stating "the PLCAA also provides that "no provision of this [statute] shall be construed to create a public or private cause of action." Accordingly, courts generally apply state law on negligent-entrustment claims in evaluating whether the exception applies."); *Brady v. Walmart Inc.*, No. 8:21-CV-1412-AAQ, 2022 WL 2987078, at *10 (D. Md. July 28, 2022) (same, citing cases). Plaintiffs admit the Assailant purchased the Subject Firearm. Doc. 27, ¶ 101. In *Academy*, the Texas Supreme Court held there is no cause of action for negligent entrustment based on the sale of chattel, thus precluding the plaintiffs' reliance on the negligent entrustment exception. *See* 625 S.W.3d at 31 ("[W]e

## CONCLUSION

WHEREFORE, Defendant Daniel Defense, LLC respectfully requests the Court dismiss all of Plaintiffs' claims against Daniel Defense, LLC with prejudice and deny Plaintiffs leave to amend those claims.  Daniel Defense, LLC further requests any additional relief to which it is entitled.

Respectfully submitted,

/s/ David M. Prichard
David M. Prichard
State Bar No. 16317900
E-mail:  dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail:  dmontpas@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

**COUNSEL FOR DEFENDANT,
DANIEL DEFENSE, LLC F/K/A
DANIEL DEFENSE, INC.**

---

agree with Academy that no viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel.  ***In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims.***") (emphasis added).  Thus, Plaintiffs cannot rely on the negligent entrustment exception to avoid PLCAA immunity.

165542

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March 2023, I served the following counsel of record through electronic service as authorized by the Federal Rules of Civil Procedure:

Blas H. Delgado
LAW OFFICES OF BLAS DELGADO, P.C.
2806 Fredericksburg Road, Suite 116
San Antonio, Texas 78201

David Lopez
LM LAW GROUP, PLLC
2806 Fredericksburg Road, Suite 116
San Antonio, Texas 78201

Eric Tirschwell
Molly Thomas-Jensen
Ryan Gerber
Laura Kelley
EVERYTOWN LAW
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017

A.M. "Andy" Landry
GRAY REED
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056

*/s/ David M. Prichard*
David M. Prichard

165542

# APPENDIX 1

United States Code Annotated
 Title 15. Commerce and Trade
  Chapter 105. Protection of Lawful Commerce in Arms

15 U.S.C.A. § 7901

## § 7901. Findings; purposes

Effective: October 26, 2005

Currentness

**(a) Findings**

Congress finds the following:

**(1)** The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

**(2)** The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

**(3)** Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

**(4)** The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

**(5)** Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

**(6)** The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the

legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

**(7)** The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution.

**(8)** The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

**(b) Purposes**

The purposes of this chapter are as follows:

**(1)** To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

**(2)** To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting.

**(3)** To guarantee a citizen's rights, privileges, and immunities, as applied to the States, under the Fourteenth Amendment to the United States Constitution, pursuant to section 5 of that Amendment.

**(4)** To prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce.

**(5)** To protect the right, under the First Amendment to the Constitution, of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   2

**(6)** To preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

**(7)** To exercise congressional power under article IV, section 1 (the Full Faith and Credit Clause) of the United States Constitution.

## CREDIT(S)

(Pub.L. 109-92, § 2, Oct. 26, 2005, 119 Stat. 2095.)

Notes of Decisions (4)

15 U.S.C.A. § 7901, 15 USCA § 7901
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

| United States Code Annotated |
| Title 15. Commerce and Trade |
| Chapter 105. Protection of Lawful Commerce in Arms |

15 U.S.C.A. § 7902

## § 7902. Prohibition on bringing of qualified civil liability actions in Federal or State court

Effective: October 26, 2005

Currentness

**(a) In general**

A qualified civil liability action may not be brought in any Federal or State court.

**(b) Dismissal of pending actions**

A qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending.

**CREDIT(S)**

(Pub.L. 109-92, § 3, Oct. 26, 2005, 119 Stat. 2096.)

Notes of Decisions (19)

15 U.S.C.A. § 7902, 15 USCA § 7902
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 15. Commerce and Trade
    Chapter 105. Protection of Lawful Commerce in Arms

15 U.S.C.A. § 7903

§ 7903. Definitions

Effective: October 26, 2005

Currentness

In this chapter:

**(1) Engaged in the business**

The term "engaged in the business" has the meaning given that term in section 921(a)(21) of Title 18, and, as applied to a seller of ammunition, means a person who devotes time, attention, and labor to the sale of ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of ammunition.

**(2) Manufacturer**

The term "manufacturer" means, with respect to a qualified product, a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of Title 18.

**(3) Person**

The term "person" means any individual, corporation, company, association, firm, partnership, society, joint stock company, or any other entity, including any governmental entity.

**(4) Qualified product**

The term "qualified product" means a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce.

**(5) Qualified civil liability action**

**(A) In general**

The term "qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include--

**(i)** an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

**(ii)** an action brought against a seller for negligent entrustment or negligence per se;

**(iii)** an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--

**(I)** any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

**(II)** any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

**(iv)** an action for breach of contract or warranty in connection with the purchase of the product;

**(v)** an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

**(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

**(B) Negligent entrustment**

As used in subparagraph (A)(ii), the term "negligent entrustment" means the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

**(C) Rule of construction**

The exceptions enumerated under clauses (i) through (v) of subparagraph (A) shall be construed so as not to be in conflict, and no provision of this chapter shall be construed to create a public or private cause of action or remedy.

**(D) Minor child exception**

Nothing in this chapter shall be construed to limit the right of a person under 17 years of age to recover damages authorized under Federal or State law in a civil action that meets 1 of the requirements under clauses (i) through (v) of subparagraph (A).

**(6) Seller**

The term "seller" means, with respect to a qualified product--

**(A)** an importer (as defined in section 921(a)(9) of Title 18) who is engaged in the business as such an importer in interstate or foreign commerce and who is licensed to engage in business as such an importer under chapter 44 of Title 18;

**(B)** a dealer (as defined in section 921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18; or

**(C)** a person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of Title 18) in interstate or foreign commerce at the wholesale or retail level.

**(7) State**

The term "State" includes each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands, and any other territory or possession of the United States, and any political subdivision of any such place.

**(8) Trade association**

The term "trade association" means--

**(A)** any corporation, unincorporated association, federation, business league, professional or business organization not organized or operated for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual;

**(B)** that is an organization described in section 501(c)(6) of Title 26 and exempt from tax under section 501(a) of such title; and

**(C)** 2 or more members of which are manufacturers or sellers of a qualified product.

**(9) Unlawful misuse**

The term "unlawful misuse" means conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product.

**CREDIT(S)**

(Pub.L. 109-92, § 4, Oct. 26, 2005, 119 Stat. 2097.)

Notes of Decisions (16)

15 U.S.C.A. § 7903, 15 USCA § 7903
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

**End of Document**                                                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.