IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SANDRA C. TORRES, individually | § | |
| and as Mother and Representative of the Estate | § | |
| of Decedent, E.T., and as next friend of | § | |
| E.S.T., minor child; ELI TORRES, JR.; | § | |
| and JUSTICE TORRES, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 2:22-cv-00059-AM-VRG |
| | § | |
| DANIEL DEFENSE, LLC, et al., | § | |
|     *Defendants*. | § | |

## UVALDE COUNTY'S MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME Uvalde County and its officials as sued in their official capacity: (1) Uvalde County Sherriff Ruben Nolasco in his official capacity, and Uvalde County Constables (2) Emmanuel Zamora and (3) Johnny Fields in their official capacities (collectively "Uvalde County"). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Uvalde County now files this Motion to Dismiss all the claims against it and would respectfully show the Court as follows:

## I.   <u>SUMMARY OF THE ARGUMENT</u>

1.     Plaintiffs' lawsuit accuses Uvalde County of adopting a policy of barricading young children and their teachers "inside a classroom with a [killer]." Plaintiffs claim this was a "state-created danger" that Sherriff Nolasco adopted as an official policy under the "single decision" exception.[1] The state-created danger doctrine does not exist in the Fifth Circuit.[2] Plaintiffs also accuse the County of adopting a policy—again under the "single decision" exception—of taking "custody" of these innocent school children so that they were not "free to leave" the clutches of a murderous psychopath. The County understands that these accusations stem from a place of deep hurt due to this senseless tragedy. Yet these rash allegations do not assert a legally viable basis for municipal liability against Uvalde County under *Monell* and its progeny. Furthermore, Plaintiffs also fail to assert facts sufficient to plausibly plead the single decision exception.

2.     At bottom, Plaintiffs' actual complaint against the County derives from their belief that law enforcement officers violated young E.T.'s constitutional rights because they did not act quickly enough to save her from the murderous private violence of 18-year-old Salvador Ramos. Yet the United States Supreme Court has long been held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[3] For this reason, all of Plaintiffs' claims that the County can liable—because it allegedly failed to train or supervise its officers according to an active-shooter protocol to "immediately distract, isolate, and neutralize the active shooter"—must be dismissed because there is no underlying constitutional violation, and Plaintiffs fail to state plausible claims.[4]

---

[1] Pls.' 1st Amd. Compl., ¶ 297 (single decision),¶ 300 (claiming conclusory that Nolasco adopted this policy), Dkt. # 26
[2] *Fisher v. Moore*, 62 F.4th 912 (5th Cir. 2023).
[3] *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).
[4] Pls.' Orig. Compl., pg. 59, ¶ 188, Dkt. # 26.

## II.   <u>LEGAL STANDARDS</u>

3.      To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[5] Well pleaded facts should be taken in the light most favorable to the non-moving party.[6] However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation."[7]

4.      It was well established by the Supreme Court in *Monell* that a municipal entity such as a County or City cannot be liable under "§1983 on the theory of respondeat superior."[8]  Instead, a municipality is liable only for acts directly attributable to it "through some official action or imprimatur"[9] "Thus, to appropriately plead municipal liability under *Monell* and its progeny, a plaintiff must sufficiently allege (1) "that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality"; (2) that the allegedly unconstitutional action constitutes a 'custom or policy' and (3) that there was a violation of constitutional rights whose moving force is the policy or custom."[10]

## III.   <u>ARGUMENTS & AUTHORITIES</u>

5.      The Robb Elementary shooting was a tragedy, but it is not a tragedy that is actionable against Uvalde County. Within Plaintiffs' eighty-two page First Amended Complaint, the County has been able to identify three "policies" that Plaintiffs seem to claim the County enacted

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[6] *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020).
[7] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[8] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 (1978).
[9] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).
[10] *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 (5th Cir. 2021).

that were the "moving force" of the alleged constitutional violations.[11] All of these claims must fail.

6.        However, as a matter of initial housekeeping, Plaintiffs have sued Uvalde County Sherriff Ruben Nolasco in his official capacity, and Uvalde County Constables Emmanuel Zamora and Johnny Fields in their official capacities. "Suits against state officials in their official capacity are essentially treated as suits against the governmental entity for *Monell* claims."[12] "[A]s the Supreme Court has stated, 'there is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly…'".[13]The Fifth Circuit thus treats official capacity claims as *Monell* claims against the municipal governmental entity.[14] Accordingly, this Motion to Dismiss will treat all the official capacity claims against the individual officers merely as claims against Uvalde County under *Monell*.

   **A. The Plaintiffs' allegation that Uvalde County is liable for adopting a policy of endangering children by barricading them inside a classroom with a killer must be dismissed as it fails all three *Monell* elements. (State-Created Danger Policy).**

7.        Plaintiffs claim that Uvalde County adopted a policy—under the single decision exception—of barricading young children inside a classroom with a killer—thereby allegedly

---

[11] Plaintiffs bring causes of action **Four, Five, Six,** and **Seven** against the municipal defendants under a theory of *Monell* liability. Due to the significant factual overlap amongst these claims, there appear to only be three identifiably separate policies asserted against Uvalde County.
[12] *Williamson v. Garber*, No. CV 19-01212, 2020 WL 1243517, at *1 (W.D. La. Mar. 13, 2020).
[13] *Hanna v. Dist. Attorney of Guadalupe Cnty., Tex.*, No. 5:18-CV-01317-JKP, 2020 WL 7353376, at *4 (W.D. Tex. Dec. 15, 2020).
[14] *Rombach v. Culpepper*, No.20-30554, 2021 WL 2944809, at *11 (5th Cir. July 13, 2021) (noting that the "official capacity claims" were "i.e., the *Monell* claim against the City").

---

manufacturing a state-created danger.[15] This purported claim fails all three prongs of the *Monell* analysis and should be dismissed.

> **a. Plaintiffs failed to sufficiently plead that Sherriff Nolasco took an act as an official policy maker on behalf of Uvalde County**.

8.      First, as an initial matter, the Plaintiffs do not sufficiently plead and identify any affirmative "decision" by Sherriff Nolasco made as an official policymaker of Uvalde County that instituted a policy to "barricade" the children inside a classroom with the killer. Plaintiffs instead merely insinuate that Sherriff Nolasco affirmatively made such a decision—yet Plaintiffs' complaint is utterly silent on any moment where Nolasco affirmatively took such an action as opposed to deferring to other municipal agencies on the scene at Robb Elementary.[16] In fact, Plaintiffs admit in paragraph 161 that Sherriff Nolasco told his deputies that he needed to speak with who was "in charge"—necessarily revealing Nolasco at the time never thought he was in charge of the Robb Elementary school crisis. This failure to plead any non-conclusory affirmative act by of deliberate conduct, on behalf of the County, is fatal to Plaintiffs' claim.[17]

9.      The first element of *Monell* liability requires "proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." [18] Policymaker status is determined by more than "[t]he mere existence of oversight [authority]"; instead "the oversight [authority] must pertain to the area of the authority in question."[19] A *Monell* Complaint that is "too short on specifics" can be dismissed for failure to

---

[15] Pls.' 1st Amd. Compl., pgs. 74 – 75 (Sixth Cause of Action), 75 – 77 (Seventh Cause of Action), 78 – 80 (Eighth Cause of Action)  Dkt. # 26.
[16] Pls.' 1st Am. Compl., pgs. 59 – 60, ¶ 190, Dkt. # 26.
[17] *Crull v. City of New Braunfels, Tex.*, 267 Fed. Appx. 338, 342 (5th Cir. 2008).
[18] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010).
[19] *Id*. at 168.

"state a claim."[20] Accordingly, since Plaintiffs have failed to plausibly plead any non-conclusory affirmative act by Sheriff Nolasco—as opposed to merely deferring to other Municipalities at the scene—this claim requires dismissal.

> **b. Plaintiffs cannot plead that the allegedly unconstitutional action of endangering children by barricading them in with a killer constitutes a 'custom or policy' because they cannot satisfy the single decision exception.**

10.    Assuming *arguendo* that Plaintiffs **had** plead sufficient facts to meet the requirements of the first element of *Monell* liability, Plaintiffs have not and cannot sufficiently plead that the County adopted as a policy the act of law-enforcement barricading "students and teachers inside a classroom with a killer" during an active-shooter scenario.[21] The obvious reason Plaintiffs cannot do this is that it is utterly untrue, and no non-frivolous assertion could ever be made by the Plaintiffs that the County ever had such an official written policy or widespread custom.

11.    Generally, the Fifth Circuit has identified "two forms that 'official policy' may take. First, a plaintiff may point to a policy statement formally announced by an official policymaker.[22] Alternatively, "the plaintiff may demonstrate a 'persistent widespread practice of…officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents

---

[20] *Duke v. Dallas Cnty.*, No. 3:20-CV-0117-G-BH, 2021 WL 3204565, at *2 (N.D. Tex. July 29, 2021) (noting that another District judge dismissed a "municipal liability claim where the plaintiff failed to identify a specific policymaker and finding allegation that the "City of Arlington" as a policymaker with knowledge of the failure to discipline at issue in that case was too conclusory to support relief.").

[21] Pls.' 1st Am. Compl., pg. 78, ¶ 301, Dkt. # 26.

[22] *Zarnow*, 614 F.3d at 168 (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984 (en banc)).

---

municipal policy'."[23] Since neither applies here, the Plaintiffs acknowledge in their Complaint that they are relying instead on the third and rarest method—the "single decision" exception.[24]

12.    As a matter of law, "the single decision exception is extremely narrow and only applies in rare circumstances."[25] In 2022 in *Liggins*, the Fifth Circuit reminded District Courts that this exception cannot be applied unless "the constitutional harm in question must've been the plainly obvious consequence of the actor's single decision. In practice, that means the decision must've been made despite a ***very high degree of predictability*** concerning the consequences of the challenged decision."[26] The Fifth Circuit has described this standard as "stringent" numerous times, and that it also requires "***unmistakable culpability*** and ***clearly connected causation***" of the alleged policymaker to the Constitutional violation.[27] Applying the test as the Fifth Circuit did in *Liggins* is dispositive against Plaintiffs' claims here.

### i. There was no "high predictability" of a Constitutional violation.

13.    It was not "highly predictable" to any Uvalde County official that a Constitutional violation would result from ***any*** Municipal defendants' decision to treat Salvador Ramos as a murderous individual who had barricaded ***himself***[28] into a classroom with young hostages. This predictability prong cannot be met because no Constitutional violation ***at all*** resulted from this action, and certainly not one that was "highly predictable" to the County—as there is ***no*** state-

---

[23] *Id.*

[24] Pls.' 1st Amd. Orig. Compl., ¶ 297, ¶ 309, Dkt. # 26 (Plaintiffs admitting that they are relying on the Single Decision exception).

[25] *Liggins v. Duncanville, Tex.,* 52 F.4th 954, 955 (5th Cir. 2022).

[26] *Id.* (emphasis added) (cleaned up).

[27] *Id.* (emphasis added) (cleaned up).

[28] Plaintiffs' claim that the officers barricaded the children—as opposed to the Shooter barricading himself—fails *infra* because no plausible pleading of the facts support that law enforcement were preventing the children from leaving Robb Elementary.

created danger theory in the Fifth Circuit that can support a Due Process Clause constitutional violation.

14.     As the Fifth Circuit stated last month, "[t]his circuit has never adopted a state-created danger exception to the sweeping "no duty to protect rule. And a *never*-established right cannot be a *clearly* established one."[29] Plaintiffs can thus never meet the single decision exception's predictability prong in this case for this alleged policy—because it is reliant on a never-before-recognized Constitutional violation in the Fifth Circuit.

15.     Putting that crucial failing aside, Plaintiffs have not established the "highly predictable" prong in any way within their pleadings—as they never plead that Uvalde County had ever dealt with a school shooting before.[30] As the Fifth Circuit teaches, while a "pattern of misconduct is not required to prove predictability, we have stressed that a single incident is usually insufficient to demonstrate deliberate indifference."[31] Instead, the Fifth Circuit has noted that repetition of the pattern of misconduct "may be the only thing that puts a policymaker on sufficient notice that a constitutional violation may spring from their single decision."[32] Here, as in *Liggins*, Plaintiffs have failed to provide any "evidence of a pattern or any other kind of notice." Instead they offer "bald factual assertions coupled with informational literature" which is not enough to support their single decision exception under the highly predictable prong, even under Rule 12(b)(6).[33]

>    ii.   **There was no "requisite degree of culpability" of a Constitutional violation.**

---

[29] *Fisher v. Moore*, 62 F.4th 912 (5th Cir. 2023).
[30] Pls.' 1st Amd. Orig. Compl., ¶ 141 (This is the closest Plaintiffs come to alleging prior incidents, but they fail to plead any involved an active school shooter).
[31] *Liggins*, 52 F.4th at 956 (citing *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 372 (5th Cir. 2005).
[32] *Liggins*, 52 F.4th at 956.
[33] *Id*.

16.     Plaintiffs have also not plead sufficient facts to plausibly assert that any official of Uvalde County had the "requisite degree of culpability"—namely that any County official completely disregarded young E.T.'s constitutional rights in making any "single decision." As stated *supra*, Plaintiffs have failed to plead as a matter of law any constitutional violation recognized in the Fifth Circuit for the alleged "state-created danger" of treating Salvador Ramos as a barricaded shooter.[34]

17.     Accordingly, Plaintiffs' have failed to plead the second element of *Monell* liability—that there was any unconstitutional action by Uvalde County that constituted a "custom or policy"—because Plaintiffs have not and cannot satisfy the single decision exception that they rely on.

> **c.   Plaintiffs have not and cannot plead that there was an underlying violation of constitutional rights whose moving force was an alleged policy or custom of endangering children by barricading them inside a classroom with a killer.**

18.     To satisfy the final element of *Monell* liability, Plaintiffs must plead that there was a municipal policy that was "the moving force behind the violation of a constitutional right."[35] Plaintiffs have again failed to plausibly plead both parts of this final element.

> **i.   There is no underlying constitutional violation.**

19.     As stated *supra*, Plaintiffs have already failed the first part of this final *Monell* element—because "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"[36] and the Fifth Circuit has declined to recognize the "state-created danger exception to the sweeping "no duty to protect" rule.[37] Furthermore, as described at length in the individual officers' Motion to Dismiss—filed concurrently with the County's Motion to Dismiss—other federal courts that have analyzed if

---

[34] *Fisher*, 62 F.4th 912 at *1.
[35] *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017).
[36] *DeShaney v. Winnebago Cnty, Dep't of Soc. Services*, 489 U.S. 189, 197 (1989).
[37] *Fisher*, 62 F.4th 912 at *1.

law enforcement officers' failure to engage with a barricaded shooter can amount to a constitutional violation—and those courts have held that they cannot.

20.     As the most notable recent example, in *Vielma*, the Eleventh Circuit held that victims of the infamous Pulse nightclub shooting had not articulated a Due Process Clause constitutional violation committed by responding law enforcement officers from the City of Orlando.[38] This was despite the Plaintiffs pleading that the officers "stayed outside," and later "some time" after the Shooter began firing did various officers finally engaged the Shooter, which ***caused*** the Shooter to "barricade[] himself with several hostages" inside a restroom.[39] Accordingly, there is no underlying Constitutional violation here to give rise to *Monell* liability.

### ii. The alleged policy was not the moving force behind the Plaintiffs' harm.

21.     For a policy to be a "moving force" of an alleged violation, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[40] As the Fifth Circuit explained in *Valle* in 2010, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."[41] "That's a high standard. A showing of simple or even heightened negligence will not suffice."[42]

---

[38] *Vielma v. Gruler*, 808 Fed. Appx. 872, 878 (11th Cir. 2020).
[39] *Vielma v. Gruler*, 347 F. Supp. 3d 1122, 1128 (M.D. Fla. 2018), aff'd, 808 Fed. Appx. 872 (11th Cir. 2020).
[40] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).
[41] *Id*.
[42] *Liggins*, 52 F.4th at 955.

22.     It is beyond question that Salvador Ramos caused the harm that E.T. suffered when he murdered her and many others in acts of utterly senseless violence.[43] Here, Plaintiffs' Amended Complaint merely "painted a picture of poor decisions and bureaucratic dysfunction" in regard to the Municipal defendants' tactics to rescue her and others from Ramos.[44]

23.     As the Fifth Circuit noted in *Webb*, a "common thread running throughout the Supreme Court's and our own caselaw on municipal liability is that such liability is limited to action for which the municipality is ***actually*** responsible."[45] Even when the Fifth Circuit has theoretically contemplated adopting a "state-created" danger theory, the Fifth Circuit has acknowledged in cases like *Doe* that to establish "deliberate indifference" in creating the danger the government must "have used their authority to create an opportunity ***that would not otherwise have existed*** for the third party's crime to occur."[46] Here, Plaintiffs' own Complaint admits that Ramos was inside E.T.'s classroom and shooting before ***any*** law enforcement officer had arrived on scene.[47]

24.     Salvador Ramos was responsible for murdering E.T. and others, and the County and other governmental entities were trying to save her. Plaintiffs can claim that "poor decisions and bureaucratic dysfunction" rendered those rescue attempts bumbling or ineffective—but Plaintiffs do not and cannot plausibly plead that any "single decision" to treat Ramos as a barricaded shooter was deliberately indifferent to a constitutional right and was the "moving force" of the harm E.T. or others suffered when they were shot by Ramos.

---

[43] Pls.' 1st Am. Compl., pg. 2, ¶ 2, Dkt. # 26.
[44] *Liggins*, 52 F.4th at 957 (citing *Webb v. Town of Saint Joseph*, 925 F.3d 209, 220 (5th Cir. 2019).
[45] *Webb*, 925 F.3d at 220.
[46] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (emphasis added).
[47] Pls.' 1st Am. Compl., pg. 45, Dkt. # 26 (admitting that Ramos was inside and shooting before any law enforcement officers arrived.".

25.     For all of these reasons *supra*, Plaintiffs' attempt to impose *Monell* liability on the County of Uvalde for an alleged policy of treating the Shooter as a barricaded shooter—which Plaintiffs claim manufactured a state-created danger—must be dismissed.

**B. The Plaintiffs' allegation that Uvalde County is liable for adopting a policy of seizing children under the Fourth Amendment and thereby creating a special custodial relationship must be dismissed as it fails all three *Monell* elements. (Fourth Amendment and Custodial Relationship Policy).**

26.     Plaintiffs also claim that Uvalde County adopted a policy—under the single decision exception—that unconstitutionally amounted to the "seizing [the children and teachers of Robb Elementary] unreasonably" and "using force to involuntarily confine E.T...." under the Fourth Amendment. [48] Plaintiffs claim that young E.T. was seized and in custody because law enforcement used force and "took steps to establish a perimeter and involuntarily confined her within classroom 111.[49] This purported claim also fails all three prongs of *Monell* liability.

**a. As explained *supra*, Plaintiffs have failed to sufficiently plead the identity of the alleged official policymaker that acted on behalf of Uvalde County.**

27.      For the reasons that the County articulated in **Section (A) subsection (a)** of this Motion to Dismiss, Plaintiffs have not pleaded facts that establish the first prong of *Monell* liability. To wit, Plaintiffs have failed to plead any affirmative act or order that Sherriff Nolasco gave to affirmatively institute a policy of using force to seize and take custody of E.T. and others so that they would be involuntarily confined in classroom 111 with the murderous Ramos.[50] Again, Plaintiffs admit in paragraph 161 that Sherriff Nolasco told his deputies that he needed to speak with who was "in charge"—necessarily revealing Nolasco at the time never thought he was in

---

[48] Pls.' 1st Am. Compl. ¶ 276 Dkt. # 26.
[49] Pls.' 1st Am. Compl. ¶ 285, Dkt. # 26 (Plaintiffs actually articulate their alleged factual basis for this claim in their Sixth Cause of Action, despite explicitly referencing the Fourth Amendment in other causes of action).
[50] Pls.' 1st Am. Compl. ¶¶ 301 and 310 (failing to identify a specific order or any other act by Sherriff Nolasco).

charge of the Robb Elementary school crisis. Accordingly, since Plaintiffs have failed to plausibly plead any non-conclusory affirmative act by Sherriff Nolasco—as opposed to merely deferring to other Municipalities at the scene—this claim also requires dismissal.

> **b. Plaintiffs cannot plead that the allegedly unconstitutional action of "seizing" children and involuntarily confining them with a killer constitutes a 'custom or policy' because they *again* cannot satisfy the 'single decision' exception.**

28.    As stated in **Section (A) subsection (b)**, the single-incident exception is extremely narrow and can only apply when a policymaker's single decision is made despite (i) a very high degree of predictability of a constitutional violation as a consequence of that decision and (ii) that the policymaker possesses unmistakable culpability and clearly connected causation to the alleged Constitutional violation.[51] Again applying *Liggins* is dispositive here.

> **i.   There was no "high predictability" of a Constitutional violation.**

29.    Again, it was not "highly predictable" to any Uvalde County official that a constitutional violation would result from *any* municipal defendants' decision to create a perimeter around Robb Elementary School. As with Plaintiffs' first claim against the County, this predictability prong cannot be met because no constitutional violation arising from a Fourth Amendment seizure resulted from this alleged action *at all*, and certainly not one that was "highly predictable" to the County.

30.    "[A] person is 'seized' for Fourth Amendment purposes 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen [citation omitted]. A seizure occurs "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that they were not free to leave"'."[52] Despite the utterly conclusory statement in paragraph 151—Plaintiffs have utterly failed to plausibly plead *any*

---

[51] *Liggins v. Duncanville, Tex.,* 52 F.4th 954, 955 (5th Cir. 2022).
[52] *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017).

*specific facts* that would allow this Court to intuit *as a matter of law* that the law enforcement officers present at Robb Elementary were using *their* physical force and authority to prevent *E.T.* from leaving Robb Elementary—should she have somehow made good her escape from the murderous Ramos.[53] They further do not plead any facts establishing that **E.T.** reasonably could have believed that she was "not free to leave" *as a result of law-enforcement's authority*—as opposed to Ramos's using force and senseless violence to keep the children hostage. And Plaintiffs *certainly* do not allege any facts that establish that it would be highly predictable to the County's policy maker that the children trapped inside Robb Elementary School would believe that it was *law enforcement's* use of force that meant they were "not free to leave" because they created a perimeter.

31.     Additionally, Plaintiffs cannot claim that it was highly predictable to the County that a constitutional violation would occur because the trapped students were bestowed with a "custodial relationship" with the law enforcement officers once they established a perimeter. First, the Fifth Circuit has never recognized such a theory to create a special relationship. Conversely, the Fifth Circuit has gone so far as to hold numerous times that schools have no constitutional duty to protect students from private actors because they are not in a custodial relationship with their school—despite state law requiring attendance.[54] Plaintiffs claims must fail accordingly.

---

[53] Instead, Plaintiffs merely conclusory plead in ¶ 285 that the Police used their perimeter to "involuntarily" confine E.T. with Ramos without any further explanation or support for such a wild accusation. Do they allege that the officers would have pushed E.T. back into the classroom had she come bursting out of the room to escape from Ramos?

[54] *Do ex rel. Magee v. Covington Cnty. Sch. Dist. ex re. Keys*, 675 F.3d 849, 863 (5th Cir. 2012); *see also Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir. 1997) ("We decline to hold that compulsory attendance laws alone create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors.").

### ii. There is no "requisite degree of culpability" of a Constitutional violation.

32.     Plaintiffs have also not pleaded sufficient facts to plausibly assert that any official of Uvalde County had the "requisite degree of culpability"—namely that any County official completely disregarded young E.T.'s constitutional rights—in making any "single decision" to create a perimeter around Robb Elementary School. As stated, Plaintiffs have not pleaded and cannot plead that any policymaker's alleged decision completely disregarded any risk to E.T.'s Fourth Amendment rights to be free from unlawful seizure or disregarded a constitutional duty under a custodial relationship.

33.     Accordingly, Plaintiffs' have failed to plead the second element of *Monell* liability for this claim.

### c. Plaintiffs have not pleaded and cannot plead that there was an underlying violation of constitutional rights that's moving force was an alleged policy or custom of seizing the children by creating a perimeter around Robb Elementary.

34.     Again, to satisfy the final element of *Monell* liability, Plaintiffs must plead that there was (i) "an underlying constitutional violation" and that a County custom or policy was (ii) the "moving force of that constitutional violation."[55] Plaintiffs have again failed to plausibly plead both parts of this final element for this claim as well.

### i. There is no underlying constitutional violation.

35.     As described at length in the individual officers' Motion to Dismiss—filed concurrently with the County's Motion to Dismiss—other federal courts have analyzed if law enforcement officers create a custodial relationship with school children trapped with a shooter by creating a

---

[55] *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017).

perimeter around the school.[56] Those Courts have held that this act does not create a custodial relationship. As the Eleventh Circuit stated in analyzing the tragic Parkland shooting, the plaintiffs alleged that the police "violated police policy and ordered police to 'stage,' or ***gather outside of the school***, instead of permitting officers to enter the building and pursue [the shooter]."[57]

36.     The Parkland students argued that this act was unconstitutional because the students were in a custodial relationship with the officers and the school. To distinguish contrary caselaw, the Parkland students argued that the presence of law enforcement officers converted "a non-custodial relationship into a custodial one."[58] The Eleventh Circuit disagreed and held "[t]he officers' presence on school grounds, whether by itself or in combination with truancy and compulsory attendance laws, does not restrain students' freedom to act in a way that is comparable to incarceration or institutional confinement. Because the students were not in custody at school, they were not in a custodial relationship with the officials."[59] Accordingly, the officers did not violate the Parkland student's constitutional rights by creating a perimeter around the school instead of immediately rushing in to engage the Parkland shooter. The exact same reasoning applies here, and plaintiffs can accordingly state no underlying constitutional violation to satisfy the third *Monell* element.

37.     Additionally, for the reasons cited *supra*, there can be no underlying constitutional violation for wrongfully "seizing" the children under the Fourth Amendment, as Plaintiffs cannot plead non-conclusory facts establishing that the children reasonably thought they were not free to leave due to force used by law enforcement officers.

---

[56] *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020).
[57] *Id*. at 1327 (emphasis added).
[58] *Id*. at 1330.
[59] *Id*.

**ii. The alleged policy of creating a perimeter was not the moving force behind the Plaintiffs' harm.**

38.     Again, for a policy to be the "moving force" of an alleged constitutional violation, a plaintiff must satisfy the high standard of showing that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow that decision.[60]

39.     As stated *supra*, Salvador Ramos was responsible for murdering E.T. and others. The County and other governmental entities were trying to save her. Plaintiffs can claim that "poor decisions and bureaucratic dysfunction" rendered those rescue attempts bumbling or ineffective—but Plaintiff does not and cannot plausibly plead that any "single decision" to establish a perimeter around Robb Elementary was deliberately indifferent to a constitutional right and was the "moving force" of the harm E.T. or others suffered when they were shot by Ramos.

40.     For all of these reasons, Plaintiffs' attempt to impose *Monell* liability on the County of Uvalde for an alleged policy of establishing a perimeter—thereby allegedly either "seizing" the Plaintiff in violation of the Fourth Amendment or creating a custodial relationship—must be dismissed.

**C. The Plaintiffs' allegation that Uvalde County is liable for failing to train its law enforcement officers on active shooter protocols must be dismissed, because there is no Constitutional right for the State to protect an individual against private violence. (Failure to Train).**

41.     Finally, Plaintiffs bring a "failure to train" claim against Uvalde County, alleging that the County failed to train the "Individual Defendants regarding how to identify and respond to an

---

[60] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

active shooter situation,"[61] and further alleging that the Individual Defendants were not trained to

"stop the killing."[62] Plaintiff claim that as a proximate result of this lack of training, "Plaintiffs

sustained the damages alleged herein."[63] Plaintiffs cannot prevail on their failure to train claim—

because as the Supreme Court of the United States teaches in *DeShaney*, the Constitution "does

not require the State to provide its citizens with particular protective services, [and] it follows

that the State cannot be held liable under the Clause for injuries that could have been averted had

it chosen to provide them."[64]

42.     As the Fifth Circuit taught just a few weeks ago in *Allen v. Hays*, failure-to-train claims

are "notoriously difficult [theories] on which to base a *Monell* claim, as it requires plaintiffs to

prove that the municipality was aware of an impending rights violation but was deliberately

indifferent to it."[65] To succeed, a Plaintiff must "show that in light of the duties assigned to

specific officers or employees the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the policymakers can

reasonably be said to have been deliberately indifferent to the need."[66] Here, the Plaintiffs have

absolutely not pleaded sufficient facts to clear this high bar.

43.     First, Plaintiffs have not pleaded and cannot plead that County municipalities were in any

way required by the State of Texas to undergo school shooter training, or that any of the normal

duties assigned to County law enforcement officers indicated an obvious need for more or

different training in this area. Second, Plaintiffs have not pleaded and cannot plead that Uvalde

---

[61] Pls.' 1st Am. Compl. ¶ 294, Dkt. # 26.
[62] Pls.' 1st Am. Compl. ¶ 188, Dkt. # 26; *see also* ¶ 186 (alleging that Uvalde County only had 20% active shooter training).
[63] Pls.' 1st Am. Compl. ¶ 296, Dkt # 26.
[64] *DeShaney v. Winnebago Cnty, Dep't of Soc. Services*, 489 U.S. 189, 196 – 97 (1989).
[65] *Allen v. Hays*, No. 21-20337, 203 WL 2580785, at *8 (5th Cir. Mar. 21, 2023).
[66] *Id*.

County had ever experienced an event like the Robb Elementary School shooting or had any other reason to believe that a lack of training would lead to an impending rights violation.[67]

44.     This exact issue was litigated in a lawsuit regarding the infamous Columbine High School shooting. In the case of *Castaldo v. Stone*, the Colorado District Court labored to explain to the aggrieved Columbine plaintiffs why all of their constitutional claims for failure to train failed against Jefferson County and its Sheriff's office.[68] The Court wrote:

> A governmental entity or its policymakers may be liable pursuant to § 1983 if there is a failure to adequately train employees and that failure is the cause or the 'moving force' behind the underlying constitutional deprivation. A governmental entity is only liable when it can be fairly said that the [municipality] itself is the wrongdoer….
>
> It is only when the execution of a government's policy or custom inflicts the injury that the governmental entity or its policymakers may be held liable under § 1983. Here, Harris and Klebold [the shooters] were the 'moving force' behind Plaintiffs' injuries. Plaintiffs' allegations that their injuries could have been avoided if there were different policies in place **or adequate training** do not state a viable claim.[69]

45.     Here, Salvador Ramos was the moving force behind the Plaintiffs' injuries. All allegations that these tragic injuries and deaths could have been avoided if there had been adequate "active shooter training" do not state a viable claim.[70]

## IV.     <u>PRAYER</u>

46.     WHEREFORE PREMISES CONSIDERED, Defendants Uvalde County, and all of the Uvalde individuals sued in their official capacity, respectfully request that this Court grant this Motion to Dismiss all of Plaintiffs' claims, and for all other relief to which they may be justly entitled in law or equity.

---

[67] *Id*.; *see also* Pls.' 1st Amd. Orig. Compl., ¶ 141 (This is the closest Plaintiffs come to alleging prior incidents, but they fail to plead any involved an active school shooter).
[68] *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1161 (D. Colo. 2001).
[69] *Id*.
[70] *Id*.

Respectfully submitted,

**LAW OFFICES OF CHARLES S. FRIGERIO**
A Professional Corporation
Riverview Towers
111 Soledad, Suite 465
San Antonio, Texas 78205
(210) 271-7877
(210) 271-0602 Telefax
Email: Firm@FrigerioLawFirm.com

CHARLES S. FRIGERIO
State Bar No. 07477500
**LEAD COUNSEL**

**- AND -**

**WRIGHT & GREENHILL, P.C.**
4700 Mueller Blvd., Suite 200
Austin, Texas  78723
(512) 476-4600
(512) 476-5382 – Fax

By:    /s/ Stephen B. Barron
          Blair J. Leake
          State Bar No. 24081630
          bleake@w-g.com
          Stephen B. Barron
          State Bar No. 24109619
          sbarron@w-g.com

**ATTORNEYS FOR DEFENDANTS**
**UVALDE COUNTY, UVALDE COUNTY**
**SHERIFF RUBEN NOLASCO,**
**UVALDE COUNTY CONSTABLE**
**EMMANUEL ZAMORA, AND UVALDE**
**COUNTY CONSTABLE JOHNNY FIELD**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2023, a true and correct copy of the foregoing document was caused to be served upon all counsel of record via E-File/E-Service/E-Mail, in accordance with the Federal Rules of Civil Procedure.

                     /s/ Stephen B. Barron
                    Stephen B. Barron