IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SANDRA C. TORRES, INDIVIDUALLY | § | |
| AND AS MOTHER AND REPRE- | § | |
| SENTATIVE OF THE ESTATE OF | § | |
| DECEDENT, E.T., | § | |
| AND AS NEXT FRIED OF E.S.T., | § | |
| MINOR CHILD; ELI TORRES, JR., | § | |
| AND JUSTICE TORRES, | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO. 2:22-cv-00059 |
| | § | |
| DANIEL DEFENSE, LLC; *et. al.* | § | |
| Defendants. | § | |

**DEFENDANT UVALDE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT'S
12(b)(1) MOTION TO DISMISS AND 12(b)(6) MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT (Dkt. No. 26)**

TO THE HONORABLE CHIEF JUDGE OF SAID COURT:

NOW COMES Defendant Uvalde Consolidated Independent School District ("UCISD")

and files this 12(b)(1) Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of

Subject-Matter Jurisdiction and 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon

Which Relief Can Be Granted, and shows the Court the following:

## I.  PROCEDURAL BACKGROUND

1.      Plaintiffs Sandra Torres, E.S.T., Eli Torres, Jr., and Justice Torres filed suit following the

school shooting at Robb Elementary School, during which E.T., daughter and sister to the

Plaintiffs, was tragically murdered by Salvador Ramos. Dkt. No. 26 at pp. 2-3. Plaintiffs assert

that E.T.'s constitutional rights were violated, putting forth several theories of liability against

UCISD pursuant to 42 U.S.C. § 1983. *Id.* at pp. 73-81.

## II.  DISMISSAL STANDARDS

2.      Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the court to hear the case. Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is filed, the party seeking to litigate in federal court bears the burden of establishing jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136 (1992); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Federal courts are courts of limited jurisdiction and must, at all times, have "statutory or constitutional power to adjudicate the case." *Clean COALition v. TXU Power,* 536 F.3d 469, 470 (5th Cir. 2008).

3.      In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). However, the plaintiff must do more than recite the formulaic elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). The plaintiff must plead specific facts, not mere conclusory allegations. *Tuchman v. DSC Comm'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994). The court is not bound to accept "as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 678. Dismissal is appropriate if the complaint fails to plead "enough facts to state a clam to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

### IV.  ARGUMENT AND AUTHORITY

**A.  Plaintiffs lack standing to assert individual claims on their own behalf under the U.S. Constitution.**

4.      Plaintiff Sandra Torres "sues individually and as mother and representative of the estate of the decedent, E.T." and asserts she is the "legal heir and property party under Texas law to bring a claim of wrongful death of her daughter, E.T." Dkt. No. 26 at ¶ 17. Plaintiffs Justice Torres, Eli Torres, Jr., and E.S.T. (represented by next friend Sandra Torres) assert that they seek

damages as "heirs and next friends of E.T." both "for the injuries and death of the deceased and their own consequent injuries and damages." Dkt. No. 26 at ¶ 312. However, Plaintiffs lack standing to pursue any individual claims under the facts or legal theories asserted in their pleading, as the First Amended Complaint contains only alleged violations of the constitutional rights of E.T. *See* Dkt. No. 26.

5.      To establish standing under Article III of the United States Constitution with respect to their individual claims, each Plaintiff must demonstrate that he or she has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n. 1.

6.      Here, Plaintiffs do not assert that the actions of the UCISD deprived any of them personally of any protected rights; the allegations in the lawsuit are that E.T.'s constitutional rights were violated by UCISD's response to Salvador Ramos's murderous actions, that E.T.'s constitutional rights were violated by UCISD's allegedly unconstitutional policies and training related to a school shooting incident. Dkt. No. 26 at pp. 73-82.

7.      Federal courts have consistently held that a parent cannot assert claims under Section 1983 on their own behalf based solely on constitutional injuries to their child. Under § 1983, Plaintiff Sandra Torres has standing in her individual capacity if she "clearly allege[s] an injury to [her] own personal constitutional rights." *Hooker v. Dallas Indep. Sch. Dist.*, 3:09-CV-1289-D, 2010 WL 4025877, at *5 (N.D. Tex. Oct. 13, 2010) (quoting *Trujillo v. Bd. of Cnty. Commis. of Santa Fe Cnty.*, 768 F.2d 1186, 1187 (10th Cir. 1985)). "It is well-established that parents lack standing to bring individual claims under § 1983 based solely upon deprivation of a child's

constitutional rights." *Crozier v. Westside Cmty. Sch. Dist.*, No. 8:18CV438, 2018 WL 5298744, at *2 (D. Neb. Oct. 25, 2018) (citations omitted). Because Plaintiffs are not asserting any claims based on violations of their own constitutional rights, as opposed to E.T.'s, they do not have standing to bring claims in their individual capacity, and such claims should be dismissed as a matter of law.

### B.   UCISD retains it governmental immunity from suit as to Plaintiffs' wrongful death and survival claims.

8.      UCISD retains it governmental immunity from suit because the Texas Wrongful Death Act ("Act") does not clearly and unambiguously waive such immunity. Instead, the statute states plainly that it does not apply to "...a county or a common or independent school district." Tex. Civ. Prac. & Rem. Code § 71.001. "Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008). "Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been used unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex. 2004) (emphasis added). It is settled in Texas that for the Legislature to waive sovereign immunity, a statute must contain a clear and unambiguous expression of the Legislature's waiver of immunity. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex. 2003), judgment withdrawn and reissued (May 13, 2003)(citing *Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994)).

9.      The Wrongful Death Act does not contain a clear expression of governmental immunity waiver as to independent school districts like UCISD; instead, it negates such a waiver by its plain text. First, the Act sets forth the circumstances under which a "person" may be sued for an injury that causes an individual's death. *See id.* at § 71.002. The word "person" is specifically

defined by the Act to include "an individual, association of individuals, joint-stock company, or corporation or a trustee or receiver of an individual, association of individuals, joint-stock company, or corporation." *Id.* at § 71.001(2). However, the term "corporation" is then defined to exclude "...a county or a common or independent school district." [*Id.*] § 71.001 (1)[ ]. Thus, the plain wording of the statute makes it clear that an independent school district may not be sued under the Act. *See Cnty. of El Paso v. Dorado*, 33 S.W.3d 44, 46 (Tex. App.—El Paso 2000, no pet.)(holding that counties are excluded from the Act). The Fifth Circuit, construing the pre-codification version of the Act, reached the same conclusion: "Counties are expressly exempted from liability under the Texas Wrongful Death A c t ...." *Lozano v. Smith*, 718 F.2d 756, 768 n.26 (5th Cir. 1983); *see also Cardenas v. Lee Cnty., Tex.,* No. A-12-CA-085-SS, 2013 WL 12092511, at *6–7 (W.D. Tex. June 21, 2013), *aff'd sub nom. Cardenas v. Lee Cnty., Tex*., 569 Fed. Appx. 252 (5th Cir. 2014)(counties excluded by the Act's text).

10.     In addition, "[c]laims arising under both the Wrongful Death Act and the Survival Statute are derivative actions, and condition Plaintiffs' ability to recover upon the decedent's theoretical ability to have brought an action had the decedent lived." *Potharaju v. Jaising Mar., Ltd.,* 193 F. Supp. 2d 913, 917 (E.D. Tex. 2002)(citing *Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, 330 (5th Cir.1994) and *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 348-49 (Tex.1992)). Here, any state cause of action the decedent could have brought against UCISD would have been barred by its sovereign immunity. In Texas, governmental entities are immune from tort causes of action, unless specifically waived under the Texas Tort Claims Act ("TTCA"). *See LeLeaux v. Hamshire - Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex. 1992); TEX. CIV. PRAC. & REM. CODE §101.001, *et seq.* The TTCA does not include a general waiver of immunity, but a limited one, waiving immunity only under specified exceptions. *Dallas County*

*Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex. 1998). A school district's immunity is only waived by the TTCA in cases arising from "the use or operation of a motor vehicle." *See* Tex. Civ. Prac. & Rem. Code §§101.021(1); 101.051 ("Except as to motor vehicles, this chapter does not apply to a school district…"); 101.057 ("This chapter does not apply to a claim….arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities."); *LeLeaux,* 835 S.W.2d at 51. Thus, there is no waiver of immunity for a tort claim unless the plaintiff's injuries were proximately caused by the operation or use of a motor-driven vehicle. *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992). To be clear, "[t]he only permissible state tort claim that citizens can bring against a school district in Texas is a claim for misuse of a motor vehicle." *S.N.B. v. Pearland Indep. Sch. Dist.*, 120 F. Supp. 3d 620, 631 (S.D. Tex. 2014); *see also Hernandez v. Fort Bend ISD,* No. CV H-19-915, 2019 WL 1934674, at *10 (S.D. Tex. May 1, 2019).

11.     Finally, the Act is for the "exclusive benefit" of a surviving "spouse, children, and parents" and thus Sandra Torres as Representative of the Estate of Decedent, E.T., Sandra Torres as Next Friend of E.S.T., Eli Torres, and Justice Torres do not have standing to sue under the Act. Tex. Civ. Prac. & Rem. Code § 71.004.

### C.  Plaintiffs lack capacity to sue on behalf of E.T.

12.     Plaintiff Sandra Torres "sues individually and as mother and representative of the estate of the decedent, E.T." and asserts she is the "legal heir and property party under Texas law to bring a claim of wrongful death of her daughter, E.T." Dkt. No. 26 at ¶ 17. Plaintiffs Justice Torres, Eli Torres, Jr., and E.S.T. (represented by next friend Sandra Torres) assert that they seek

damages as "heirs and next friends of E.T." both "for the injuries and death of the deceased and
their own consequent injuries and damages." Dkt. No. 26 at ¶ 312.

13.     The Federal Rules of Civil Procedure require courts to determine capacity "by the law of
the state where the court is located," and 42 U.S.C. § 1988 and Fifth Circuit precedent also direct
district courts to the law of the forum state to "fill the gaps in administration of civil rights suits,"
to include matters of standing in § 1983 actions.  Fed. R. Civ. P. 17(b)(3); *Pluet v. Frasier,* 355
F.3d 381, 383 (5th Cir. 2004); *see* 42 U.S.C. § 1988(a). Under Texas law, "[a] plaintiff must
have both standing and capacity to bring a lawsuit," but the two are distinct concepts; "[t]he
issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to
have a 'justiciable interest' in its outcome, whereas the issue of capacity 'is conceived of as a
procedural issue dealing with the personal qualifications of a party to litigate.'" *Austin Nursing
Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex. 2005) (quoting 6A Charles Alan Wright, Arthur
R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1559 (2d ed. 1990)).

14.     "[I]t is settled in Texas that [a court-approved] personal representative of the estate of a
decedent is ordinarily the only person entitled to sue for the recovery of property belonging to
the estate," and that "[b]efore the heirs at law can maintain such a suit…, they must allege *and
prove* that there is no administration pending and none necessary." *E.g., Frazier v. Wynn*, 472
S.W.2d 750, 752 (Tex. 1971)(emphasis added). Under Texas law, an estate is not a legal entity
and therefore cannot sue or be sued; suit must be brought by its personal representative. *Embrey
v. Royal Ins. Co. of Am.,* 22 S.W.3d 414, 415 n.2 (Tex. 2000)(citing *Henson v. Estate of
Crow,* 734 S.W.2d 648, 649 (Tex.1987)); *see also Petri v. Kestrel Oil & Gas Properties, L.P.,*
CIV.A. H-09-3994, 2013 WL 265973, at *5 (S.D. Tex. Jan. 17, 2013)(finding that a decedent's
estate "is not a legal entity and may not properly sue or be sued as such.")(citing *Price*

*v. Estate of Anderson,* 522 S.W.2d 690, 691 (Tex.1975). Furthermore, an individual purporting to act as a personal representative must also take steps to become qualified by a Texas court to be deemed a "personal representative" with the capacity to bring suit on behalf of the decedent. TEX. EST. CODE § 305.001, *et seq.* Here, taking Plaintiffs' well-pleaded facts as true, none of the Plaintiffs have taken the steps necessary to become qualified by a Texas court to be declared a "personal representative" with the capacity to bring suit on behalf of E.T. *See* Dkt. No. 26.

15.     Moreover, "[w]hen capacity is contested, Rule 93 requires that a verified plea be filed unless the truth of the matter appears of record." *Id.* (citing Tex. R. Civ. P. 93). "Before the heirs at law can maintain such a suit during the four-year period allowed by law for instituting administration proceedings, they must allege and prove that there is no administration pending and none necessary." *Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex. 1971). Based on *Frazier* and the requirements of TRCP Rule 93, before Plaintiffs can maintain their suit, each must allege and prove that no administration is pending and none is necessary.

### D. Plaintiffs' § 1983 claims against any UCISD employee or official in his official capacity are redundant and should be dismissed as a matter of law.

16.     Plaintiffs have asserted their § 1983 claims for alleged violation of E.T's constitutional rights against former UCISD employee Pete Arredondo[1] in his official and individual capacities. Dkt. No. 26, ¶ 27. Mr. Arredondo is represented separately; however, it is established that suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Monell v. Dep't. of Social Services of the City of New York,* 436 U.S. 658, 690 n. 55. (1978). An official capacity suit is to be treated as a suit against the governmental entity itself. *Kentucky,* 473 U.S. at 170-71;

---

[1] Plaintiffs' First Amended Complaint asserts that the other UCISD employee/officials named as individual defendants—Jesus Suarez and Defendant Doe 1—are sued in their individual capacities only. Dkt. No. 26 at ¶¶ 29, 39.

*U.S. ex rel. Adrian v. Regents of Univ. Of Cal.,* 363 F.3d 398, 402 (5th Cir. 2004). Official capacity claims coterminous with § 1983 claims against a governmental entity are not only redundant, but they also have no independent legal significance. *See Bluitt v. Houston Indep. Sch. Dist.,* 236 F.Supp.2d 703, 727 (S.D.Tex. 2002). Accordingly, the Court should dismiss the §1983 claims against Arredondo in his official capacity because such claims are redundant and of no independent legal significance, as they are the same as the § 1983 claims for alleged violation of E.T.'s constitutional rights that Plaintiffs are pursuing against UCISD. *See* Dkt. No. 26; *see also Jenkins v. Bd. of Educ. of Houston Indep. Sch. Dist.,* 937 F. Supp. 608, 613 (S.D. Tex. 1996).

### E. Plaintiffs cannot show the requisite state action necessary to state a claim under the U.S. Constitution.

17.     To state a § 1983 claim, a plaintiff must show that a person acting under color of state law deprived her of a right guaranteed by the Constitution or federal law. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999); *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013) According to the well-pleaded facts in Plaintiffs' First Amended Complaint, former student Salvador Ramos, a private actor, injured and killed E.T., along with many of her classmates and teachers. While indeed horrific, this situation cannot support a constitutional claim because it lacks the requisite state action. "Although the right to life is obviously an interest of constitutional dimension, its deprivation alone cannot give rise to a claim under section 1983." *Dollar v. Haralson County,* 704 F.2d 1540, 1543 (11th Cir. 1983). "Courts have declined to recognize as a general rule a person's affirmative right to state protection, even when such protection may be necessary to secure life, liberty, or property interests." *Walton v. Alexander,* 20 F.3d 1350, 1354 (5th Cir. 1994).

18.     As a general rule, the state's failure to protect an individual from private violence does not violate the Constitution. *DeShaney v. Winnebago County Dep't. of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There is only one exception to this rule that is recognized by the Fifth Circuit: the "special relationship" test. *Robinson v. Webster Cty., Mississippi,* 825 F. App'x 192, 195 (5th Cir. 2020).

19.     The Fifth Circuit has consistently held that substantive due process is implicated only in "certain limited instances" where "the state's affirmative restraint on an individual's liberty, 'through incarceration, institutionalization, or other similar restraint of personal liberty,' not its failure to act, is the compulsion required to create a 'special relationship' and invoke the protection of the Due Process Clause." *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995) (citing *DeShaney,* 109 S. Ct. at 1000). The Fifth Circuit has specifically held that there is no special relationship between a school district and its students, even where compulsory attendance is required. *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012)(en banc).

20.     Similar cases regarding the response to mass shooter incidents have consistently found that constitutional claims against first responders and their employers are not cognizable, even where they asserted the "custodial" relationship exception to *DeShaney*. *See, e.g. Vielma v. Gruler,* 347 F. Supp. 3d 1122 (M.D. Fla. 2018), aff'd, 808 F. App'x 872 (11th Cir. 2020); *Vielma*, 808 F. App'x 872 (11th Cir. 2020); *L.S. ex rel. Hernandez v. Peterson,* 982 F.3d 1323, 1327 (11th Cir. 2020). Here, Plaintiffs argue that because the first responders formed a perimeter *outside* of the classrooms, when Ramos was already *inside* the classroom, they in effect took the children in the classroom into custody. The flawed logic of this argument is apparent because the fact remains that Ramos was in the classroom too, negating any determination that the children

also present were incarcerated, rather than being held hostage by a murderer. Accepting this argument would also require agreeing with the absurd result of its logical conclusion—that if the children and teachers were incarcerated, if one of them had attempted to escape, the first responders would have taken steps to force them to return to the classroom. No actions taken by the first responders restrained any of the students' freedom to act, and thus the "special" or "custodial" relationship is unavailing.

21.     Plaintiffs also appear to assert a "state-created danger" theory of liability under § 1983. However, the Fifth Circuit has both consistently and recently declined to recognize the "state-created danger" theory of liability. *See, e.g. Fisher v. Moore,* 62 F.4th 912, 913 (5th Cir. 2023)("This circuit has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule."); *Joiner v. United States,* 955 F.3d 399, 407 (5th Cir. 2020); *Doe ex rel. Magee*, 675 F.3d at 864; *Whitley v. Hanna*, 726 F.3d 631, 640 n. 5 (5th Cir. 2013) ("This court has not adopted the state-created-danger theory….and [Plaintiff] wisely has disclaimed reliance on it."). Thus, Plaintiffs cannot establish the requisite state action to support their claims asserted pursuant to § 1983, and they should be dismissed.

### F. Plaintiffs cannot state a claim for unlawful seizure.

22.     Plaintiffs cannot state a claim for unlawful seizure because none of the students or teachers was subjected to any type of physical force, much less excessive force, nor are there any well-pleaded facts that plausibly articulate that any of the teachers or students believed that they were not free to leave because of the first responders outside rather than the murderer within the classroom. *See* Dkt. No. 26. When considering whether a seizure occurred, a court must assess "in view of all of the circumstances surrounding the incident, [whether] a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573

(1988). "Violation of the Fourth Amendment [for an Unlawful Seizure claim] requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo,* 489 U.S. 593, 598 (1989). Here, there are no allegations that any of the students or teachers were arrested, subjected to any physical force, or ordered or told not to leave the classrooms or otherwise impeded from doing so. *See* Dkt. No. 26.

**G. Plaintiffs cannot show school district liability under 42 U.S.C. § 1983.**

23.     A local governmental entity, such as a school district, can only be held liable under Section 1983 for acts for which it is actually responsible. *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). To establish governmental liability under Section 1983, in addition to a cognizable constitutional injury, a plaintiff must also show: (1) a policymaker with final policymaking authority; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Doe ex rel. Magee*, 675 F.3d at 866. Thus, "a governmental entity cannot be held liable solely because it employs a tortfeasor—or, in other words, a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 214 (5th Cir. 1998)(5th Cir. 1998) (citing *Monell,* 436 U.S. at 691).

24.     Even assuming a constitutional violation occurred, Plaintiffs' Section 1983 claims against UCISD fail because they cannot establish that an "official policy or custom" of UCISD "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized

by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy." *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995). Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority. *Id.*

25.     Whether a particular official has "final policy-making authority" is a question of state law. *St. Louis v. Praprotnik,* 485 U.S. 112, 128 (1988). It is settled law that, in Texas, only the board of trustees has final policy-making authority in an independent school district. TEX. EDUC. CODE §11.151; *Jett v. Dallas Indep. School Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993). Superintendents of schools, school administrators, principals, teachers, and school staff, including chiefs of police, do not have final policy-making authority in a school district. *See Jett*, 7 F.3d at 1245; *Teague v. Texas City Indep. Sch. Dist.,* 386 F.Supp.2d 893, 896 (S.D. Tex. 2005), *aff'd* 185 Fed. Appx. 355 (5th Cir. 2006); *Ali v. La Marque ISD Educ. Found., Inc.,* No. CIV.A. G-05-276, 2005 WL 1668146, at *3 (S.D. Tex. July 14, 2005).

26.     Here, Plaintiffs assert, in conclusory fashion, that because Arredondo was the Chief of Police for UCISD, by virtue of that position, he was a final policymaker for the school district. Dkt. No. 26 at pp. 10, 46, 77, 78. However, as a matter of state law, Arredondo is not the final policymaker for UCISD, and therefore he is not responsible for the official policies and procedures of the school district. *See Jett,* 109 S.Ct. 2702, 2724. A school district's board of trustees is the final policymaker. *Id.*; TEX. EDUC. CODE §11.151. By statute, the board of trustees, not the chief of police, "shall determine the law enforcement duties of peace officers, school resource officers, and security personnel." Tex. Educ. Code Ann. § 37.081(d). Similarly, the "board of trustees of the district shall determine the scope of the on-duty and off-duty law

enforcement activities of school district peace officers." *Id.* at (e). Finally, the "chief of police of the school district police department shall be accountable to the superintendent and shall report to the superintendent." *Id.* at (f). Plaintiffs have not alleged any facts showing that UCISD delegated policymaking authority to Arredondo such that he became the final policymaker for the district's law enforcement activities. *See* Dkt. No. 26. Their Section 1983 claims should be dismissed because they cannot establish the policymaker element of their claim against UCISD. *See Ali*, No. CIV.A. G-05-276, 2005 WL 1668146, at *3 (S.D. Tex. July 14, 2005).

27.     UCISD may not be held liable for any "policy" developed by school officials other than its Board of Trustee. *Teague,* 386 F.Supp.2d at 896. Moreover, the only well-pleaded facts as to an official policy assert that UCISD had adopted an active shooter policy, in compliance with Texas state law, but that Arredondo allegedly disregarded the policy in responding to the shooting. Dkt. No. 26, pp. 41, 45, 78. To hold a local government unit liable under Section 1983 for the misconduct of its employees, a plaintiff must initially allege that an official policy or custom "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994). Here, Plaintiffs' well-pleaded factual allegations make clear that they are relying on an *respondeat superior* theory of liability which is not cognizable under Section 1983. To state a claim for which a school district could be held liable § 1983, a plaintiff must point to more than the actions or inactions of an employee; they must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation. *Meadowbriar Home for Children, Inc., v. Gunn*, 81 F.3d 521, 532-33 (5th Cir.1996).

28.     Plaintiffs furthermore cannot show governmental liability based on a widespread custom or practice; isolated events are not sufficient to establish custom. *Ramie v. City of Hedwig Vill.,*

*Tex.,* 765 F.2d 490, 494 (5th Cir. 1985); *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987) *aff'd,* 851 F.2d 359 (5th Cir. 1988). Plaintiffs provide no well-pleaded factual allegations of substantially similar incidents occurring at UCISD to establish the requisite widespread custom or practice necessary to sustain their claims; thus, they should be dismissed, as a matter of law. See Dkt. No. 26.

> **H.      Plaintiffs have failed to state a claim under the § 1983 failure to train/supervise theory of liability.**

29.     Plaintiff similarly cannot show municipal liability under a failure to train/supervise theory of liability. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "A policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427 (1985) (plurality opinion)(internal citations and alterations omitted). An inadequate training program, *after* it is shown to be an official policy or custom of which the policymaking body has knowledge, may only support a § 1983 claim where: (1) the entity's training policy was inadequate, (2) it was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy *directly caused* the constitutional violation.[2] *Kitchen v. Dallas Cty.,* 759 F.3d 468, 484 (5th Cir. 2014); *Malone v. City of Fort Worth, Texas,* 297 F. Supp. 3d

---

[2] "Like the standards applicable to a failure to train, to hold a local government liable for failure to supervise a plaintiff must show '(1) the municipality's supervision was inadequate, (2) the municipality's policymaker was deliberately indifferent in supervising the subordinates, and (3) the inadequate supervision directly caused the plaintiff's injury.'" *Malone,* 297 F. Supp. 3d at 662 (*Clyce v. Hunt Cty.*, 515 Fed.Appx. 319, 323 (5th Cir. 2013))(citations omitted).

645, 655 (N.D. Tex. 2018). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 536 U.S. at 61 (quoting *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). The Supreme Court has made clear that "[a] less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Id.* at 61-62 (internal citations and alterations omitted).

30.     Here, Plaintiffs put forth no allegations that Arredondo, Suarez, or the unidentified Doe 1 were not properly trained. *See* Dkt. No. 26. Instead, the First Amended Complaint asserts that these first responders did not follow the "active shooter trainings and policies." Dkt. No. 26, pp. 45, 76. Plaintiffs makes no claim, nor allege any facts demonstrating that UCISD was deliberately indifferent to deficiencies in its training program, nor can they, as only "when municipal policymakers are on *actual or constructive notice* that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipal entity may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id* (emphasis added). Thus, Plaintiffs' allegations fail to demonstrate any of the elements of their failure to train/supervise theory of liability, and it should be dismissed.

31.     Moreover, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate that a governmental entity knew of deficiencies in their training programs and nonetheless acted with deliberate indifference for purposes of failure to train. *Id* (quoting *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62.  Plaintiffs have not pleaded well-

pleaded facts demonstrating a pattern of similar violations at the hands UCISD employees, instead again incanting legal conclusions of "a pattern and practice" and thus cannot establish that UCISD was on actual or constructive notice of omissions in their training or supervision. *See* Dkt. No. 27. Whether analyzed under *Monell* municipal liability or a failure to train/supervise theory, Plaintiffs' well-pleaded facts fail to show any basis for liability against UCISD.

      **I.**     **Plaintiffs' request for punitive damages should be dismissed.**

32.    Plaintiffs' request for punitive damages (Dkt. No. 26, p. 81) for alleged constitutional violations by UCISD and any of its employees or officials in their official capacities should be dismissed. *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.,* 786 F.3d 400, 412 (5th Cir. 2015)("The Supreme Court has held that a municipality's liability for § 1983 damages does not thereby subject it to punitive damages, from which government entities were historically immune. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 263, 101 S.Ct. 2748, 2758, 69 L.Ed.2d 616 (1981).").

## V.  CONCLUSION AND PRAYER

      WHEREFORE, PREMISES CONSIDERED, for the reasons shown above, Defendant UCISD respectfully moves the Court to grant its 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and furthermore grant it any and all relief to which it has shown itself justly entitled.

      Respectfully submitted,

    By:    *//s// Katie E. Payne*
          Katie E. Payne
          State Bar No. 24071347
          Email:  kpayne@wabsa.com

          D. Craig Wood

State Bar No. 21888700
Email:  cwood@wabsa.com
**LEAD COUNSEL**

**WALSH GALLEGOS
TREVIÑO KYLE & ROBINSON P.C.**
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
Telephone: (210) 979-6633
Facsimile: (210) 979-7024

**ATTORNEYS FOR DEFENDANT
UVALDE   CONSOLIDATED   INDEPENDENT
SCHOOL DISTRICT**


## <u>CERTIFICATE OF SERVICE</u>

      I, the undersigned, hereby certify that on the 13th day of June, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and caused to be served upon all counsel of record via the CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

                    */s/ Katie E. Payne*
                    Katie E. Payne