IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SANDRA C. TORRES, Individually | § | |
| and as Mother and Representative of | § | |
| the Estate of Decedent, E.T. and as | § | |
| Next Friend of E.S.T., Minor Child; | § | |
| ELI TORRES, JR.; and JUSTICE | § | |
| TORRES, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00059-AM-VRG |
| | § | |
| DANIEL DEFENSE, LLC, ET AL., | § | |
| | § | |
| *Defendants.* | § | |

**FILED**

March 27, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
J.A. Ward
DEPUTY

## **DANIEL DEFENSE, LLC'S**
## **REPLY BRIEF IN SUPPORT OF ITS**
## **AMENDED RULE 12(b)(6) MOTION TO DISMISS**

TO CHIEF UNITED STATES DISTRICT JUDGE ALIA MOSES:

Now comes Defendant Daniel Defense, LLC f/k/a Daniel Defense, Inc. ("Daniel Defense")

and files this Reply Brief in Support of its Amended Rule 12(b)(6) Motion to Dismiss.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENTS AND AUTHORITIES ......................................................................... 3

I.    Plaintiffs' reliance on the predicate exception fails ............................................ 3

     A.    The FTCA cannot serve as a predicate statute under the PLCAA ......................... 3

          1.    The Court should decline Plaintiffs' invitation to adopt the flawed majority opinion in *Soto* ............................................................................ 3

               a.    Additional flaws in the *Soto* majority's reasoning support rejecting it ........................................................................................ 5

          2.    Recent authority further confirms courts narrowly construe the predicate exception ................................................................................. 7

     B.    Even if the FTCA qualifies as a predicate exception, Plaintiffs cannot establish a knowing violation as a matter of law ................................................. 8

     C.    Plaintiffs are not "consumers" in this case ........................................................ 10

          1.    Nothing within the FTCA supports an interpretation of "consumer" to include the victims of intentional, physical violence by third parties ....... 11

          2.    Plaintiffs cite no court opinions holding "consumers" include the victims of criminal violence ................................................................... 12

          3.    Plaintiffs cite no FTC enforcement actions finding "consumers" include victims of criminal violence ....................................................... 13

          4.    Plaintiffs fail to adequately plead the elements of an unfair practices act ............................................................................................................. 13

II.    Plaintiffs' reliance on the negligence per se exception fails ........................... 14

     A.    Plaintiffs fail to adequately plead their negligence per se claim because they do not allege any Texas court has held a violation of the FTCA constitutes negligence per se .............................................................................................. 14

     B.    Plaintiffs' negligence per se claim fails as a matter of law ................................. 16

          1.    The Fifth Circuit follows the Texas Supreme Court's standard, limiting negligence per se claims to violations of penal statutes, thus precluding Plaintiffs' reliance on the FTCA .............................................................. 16

2.  Plaintiffs are neither within the class of persons the FTCA was designed to protect, nor is the statute intended to prevent intentional criminal violence against persons unconnected to the transaction at issue. ..................................................................................... 17

3.  Permitting a negligence per se claim based on the FTCA would thwart Congress' intent to not create a private right of action for violations of the statute ..................................................................................... 17

4.  There is no analogous common law duty for Plaintiffs' negligence per se claim, so Plaintiffs effectively (and improperly) ask the Court to recognize a new duty under Texas law ..................................................... 19

III.   Plaintiffs fail to plead sufficient facts establishing proximate causation ......................... 20

IV.   Plaintiffs' counsel has had three opportunities to plead viable claims against Daniel Defense, and further amendments are unwarranted ........................................................ 21

CONCLUSION ......................................................................................................... 21

CERTIFICATE OF SERVICE ...................................................................................... 22

## INTRODUCTION

This action is precisely the type of proceeding Congress intended to immunize members of the firearm industry against in enacting the PLCAA. 15 U.S.C. § 7901(a)(3), (a)(5)-(8), (b)(1), (b)(4)-(5). Plaintiffs concede their claims against Daniel Defense constitute a qualified civil liability action that is subject to dismissal under the PLCAA. Response, p. 7. The issue now is whether the PLCAA's predicate exception or negligence per se exception apply and preserve Plaintiffs' claims. Here, both exceptions are inapplicable as a matter of law, and dismissal is warranted.

***Plaintiffs' predicate exception fails.*** No court has held the Federal Trade Commission Act ("FTCA") qualifies as a predicate exception. Plaintiffs ask this Court to be the first by adopting the deeply flawed analysis of the Connecticut Supreme Court majority in *Soto v. Bushmaster Firearms Int'l, LLC* which held that a Connecticut statute, not the FTCA, qualified as a predicate exception. 202 A.3d 262, 272 (Conn. 2019). That analysis has been extensively criticized for ignoring the rules of statutory construction and engaging in judicial activism. In contrast, the circuit courts have narrowly construed the predicate exception to apply to statutes specifically regulating the sale and marketing of firearms (which the FTCA does not) and recent federal authority confirms this approach.

Even if the FTCA could serve as a predicate statute, Plaintiffs cannot establish the required knowing violation of the statute. The Federal Trade Commission ("FTC") has exclusive jurisdiction to find knowing violations of the FTCA, and no such finding has been made (or even alleged) in this case.

Plaintiffs' predicate exception also fails because it relies on a radical interpretation of "consumer" to include non-consumer victims of intentional criminal violence with no connection to the transaction at issue. Citing no authority, Plaintiffs ask the Court to expand the definition of "consumer" in the FTCA to cover third parties "foreseeably harmed" by criminal misuse of products.

In the absence of authority from the Supreme Court, the Fifth Circuit, or the FTC applying such an extreme interpretation, this Court should reject Plaintiffs' request to adopt their interpretation.

***Plaintiffs' negligence per se exception fails.*** Plaintiffs also rely on the FTCA for their negligence per se exception. No Texas court has held that negligence per se can be based on a violation of the FTCA. Plaintiffs ask the Court to recognize the FTCA as a new basis for negligence per se in Texas law. But the Fifth Circuit has repeatedly instructed that it is not the job of federal courts to develop state law and adopt novel legal theories.

Moreover, Texas law precludes basing a negligence per se claim on the FTCA because it is a civil statute. The Texas Supreme Court has repeatedly stated negligence per se requires a violation of a penal statute, and the Fifth Circuit uses this standard.

Plaintiffs' argument also fails because it would require the Court to ignore Congress' intent by effectively adopting a cause of action for violating the FTCA when Congress chose not to provide such a remedy. In addition, Plaintiffs lack the necessary, analogous common law duty needed for negligence per se. Generally, there is no duty to protect people from the criminal conduct of others. Thus, Plaintiffs now ask the Court to adopt a new common law duty that no Texas court has recognized –a duty to not encourage criminal conduct– again ignoring the Fifth Circuit's admonition that federal courts refrain from creating new theories of state law liability.

The PLCAA bars actions against manufacturers and sellers for harm caused by people who legally purchase firearms and then use them to commit heinous crimes. The Court should decline Plaintiffs' invitation to radically reconstruct and circumvent Congress' broad grant of immunity and Texas common law. Simply stated, the Court should apply the PLCAA as Congress intended and dismiss all of Plaintiffs' claims against Daniel Defense with prejudice.

## ARGUMENTS AND AUTHORITIES

I.      **Plaintiffs' reliance on the predicate exception fails.**

A.      **The FTCA cannot serve as a predicate statute under the PLCAA.**

The so-called "predicate exception" to PLCAA's expansive immunity must be narrowly construed.  Circuit courts have consistently held the predicate exception does not apply to statutes that broadly regulate conduct, but only to those specifically regulating firearms like those examples Congress provided in the exception.  *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 402 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009); *Ileto v. Glock, Inc.*, 565 F.3d  1126 (9th Cir. 2009).[1]  No court has held the FTCA qualifies as a predicate statute.  Plaintiffs invite this Court to be the first by relying on the deeply flawed majority opinion in *Soto*, which considered whether the Connecticut consumer protection statute (the "CUTPA"), not the FTCA, qualified as a predicate statute.  202 A.3d at 272.

1.      **The Court should decline Plaintiffs' invitation to adopt the flawed majority opinion in *Soto*.**

Plaintiffs argue the majority decision in *Soto* (a 4-3 split) is the "most on-point decision" and urge the Court to adopt its "careful analysis" and conclude the FTCA can serve as a predicate statute.  Response, p. 3-4.  But far from being a careful analysis, as both the dissent and commentators have found, the *Soto* majority ignored rules of statutory construction to judicially legislate a result not intended by Congress.  *See id.* at 346 (Robinson, J., dissenting); Scott R. Thomas and Mystica M. Alexander, *Suing Guns out of Existence?*, 75 WASH. & LEE L. REV. ONLINE 175, 196 (2019).

---

[1] Plaintiffs argue *Beretta* supports their position because the FTCA has been applied to the marketing of firearms and implicates the purchase and sale of firearms.  The FTCA has not been applied to how manufacturers and dealers sell firearms, as discussed below.  Further, as the *Berretta* court explained, the predicate exception "embraces" only those statutes similar to the examples listed in Section 7903(5)(A) "that clearly can be said to regulate the firearms industry." *Beretta*, 524 F.3d a 402; *see Ileto*, 565 F.3d at 1136 (finding it more likely that Congress intended only those type of statutes directly regulating the firearms industry, rather than general statutes, to qualify as predicate statutes).

For example, the predicate exception requires a knowing violation of a state or federal statute "applicable to the sale or marketing of firearms" and then identifies two specific examples. 15 U.S.C. § 7903(5)(A)(iii); *see* Amended Motion, p. 11-16. Unlike the examples Congress provided in the predicate exception, the *Soto* majority broadly construed the term "applicable" to mean statutes "capable of being applied" rather than those that directly regulate the sale and marketing of firearms. *Compare Soto*, 202 A.3d at 302 *with Beretta*, 524 F.3d at 402; *and Ileto*, 565 F.3d at 1136. The dissent explained that statutory exceptions are construed narrowly in order to preserve the primary operation of the statute. *Id.* at 335.[2] "In the absence of clear direction from Congress to construe the predicate exception differently, I disagree with the majority's suggestion that we should read the [PLCAA] narrowly and its predicate exception more broadly." *Id.*

The dissent further explained that, under the doctrine of noscitur a sociis, "the examples of federal laws provided [in the statute] indicate the type of statutory violations that would sustain invocation of the predicate exception." *Id.* at 336. "The very specific examples of firearms laws that Congress provides in the predicate exception strongly suggest that it intended only those statutes that are **specific to the firearms** trade to be considered 'applicable to the sale or marketing of the product. . . .'" *Id.* at 337 (emphasis added).

Next, the dissent went through the legislative history which indicated "manufacturers and sellers of firearms would be liable only for statutory violations concerning firearms regulations." *Id.* at 339-340. In particular, the dissent noted congressional concerns "about vague standards leading to liability also support a reading of the predicate exception that is limited to firearms industry-specific statutes, rather than statutes of general applicability such as CUTPA." *Id.* at 341. Citing comments from Senators Cornyn, Kyl, and Craig, the dissent concluded "that the legislative history demonstrates

---

[2] The Fifth Circuit also narrowly construes statutory exceptions to federal statutes that broadly prohibit certain action. *See* Amended Motion, p. 14, n.10 (citing cases)

Congress contemplated that only those statutes ***providing clear standards*** with respect to the sale or marketing of firearms would serve as predicate statutes." *Id.* at 343 (emphasis added).

Based on the statutory text, case law, canons of construction, and legislative history, the dissent concluded "that predicate statutes under the predicate exception . . . are limited to those specific to the sale and manufacture of firearms," and do not include general consumer protection statutes. *Id.* at 343. The dissent also admonished the majority for legislating from the bench.

> . . .[w]hen we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do.

*Id.* at 346 (citations omitted).[3]

Rather than being the "careful analysis" Plaintiffs advocate, the *Soto* majority engaged in a deeply flawed analysis with an apparent outcome in mind. The Court should refuse to apply the *Soto* majority's faulty analysis and construe the predicate exception narrowly as Congress intended.

### a. Additional flaws in the *Soto* majority's reasoning support rejecting it.

Other flaws in the majority's logic warn against adopting its reasoning. For example, Plaintiffs state that when PLCAA was enacted, there were no federal laws specifically regulating the marketing of firearms ("nor is there one now"). Response, p. 11. Quoting the majority opinion, Plaintiffs argue it "would have made little sense for the drafters of the legislation to carve out

---

[3] Professors Thomas and Alexander were equally critical of the majority's statutory analysis. They noted that while the majority stated it would look to the statutory text first, followed by rules of construction and legislative history, "the court veered from its purported route several times on the way to its destination." Thomas, at 182-83. Considering the plain meaning of the statute, the authors stated while "the court began with an orderly approach to statutory interpretation, the court then seemed to combine the principles in a manner that moves away from a logical review of the PLCAA and its predicate exception." *Id.* at 184. They particularly noted the majority's refusal to apply the rule of construction requiring exceptions to be narrowly construed. *Id.* at 185 (stating the majority "ignored the canon of construction requiring a narrow reading of an exception."). Finding that the majority's entire statutory analysis to be compounded by error, the authors concluded the majority "stepped into policymaking that contradicted the congressional intent in passing the PLCAA. The *Soto* dissent correctly understood the proper role of the courts in these matters and the restraint needed to play that role." *Id.* at 189.

exceptions for violations of laws applicable to the marketing of firearms if no such laws existed.'" *See id.* (quoting *Soto*, 202 A.2d at 304). Therefore, the "only sensible reading of the predicate exception is that Congress had in mind the FTC Act." *Id.* But in crafting the exception, Congress was not limited to considering only statutes existing at that time; it could also consider possible future state or federal legislation regulating the sale and marketing of firearms.[4] The predicate exception does not apply only to state or federal statutes "in effect at the time" the PLCAA was enacted. 15 U.S.C. § 7903(5)(iii). The majority's reasoning ignores the possibility of future legislation, and Plaintiffs use that oversight to jump to the unsupported conclusion that Congress intended for the FTCA to serve as a predicate statute. But certainly, if Congress meant for such a broad statute to qualify under the predicate exception, it could easily have identified it among the examples it cites in Section 7903(5)(A)(iii). Congress did not do this. It did not even come close.

Additionally, the *Soto* majority mistakenly asserted that the FTCA had been applied to the marketing of firearms. 202 A.3d at 306; *see* Response at 11-12 (same). The majority maintained that the FTCA applied to the marketing of firearms because the FTC had entered into consent decrees with firearms sellers. 202 A.3d at 306, n.48. Plaintiffs cite those same decisions. Response at 11. Several concerned anti-competitive practices (price-fixing). *In the Matter of Colt Indus. Operating Corp.*, 84 F.T.C. 58, 1974 WL 175276 (1974); *In re Browning Arms Co.*, 80 F.T.C. 749, 1972 WL 128729 (1972); *In re Ithaca Gun Co.*, 78 F.T.C. 1104, 1971 WL 128515 (1971). But none of those decisions concerned the actual marketing of firearms to customers.[5]

---

[4] For example, New York adopted a post-PLCAA law that specifically regulates the manufacture, marketing, and sale of firearms (New York General Business Law § 898-b (McKinney 2021)) which has been construed as a predicate statute. *National Shooting Sports Found., Inc. v. James*, No. 121CV1348MADCFH, 2022 WL 1659192, at *4 (N.D.N.Y. May 25, 2022).

[5] Plaintiffs also cite *In re National Housewares, Inc.*, 90 F.T.C. 512, 1977 WL 189060 (1977). Response, p. 11-12. That case concerned the practice of "package selling" in which a consumer is led to believe that he is not the target of a sales presentation when in fact he is and is offered false discounts to purchase several products in exchange for writing testimonial letters. *In re National Housewares, Inc.*, 1977 WL 189060 at *57-58. Among the many types of products offered for sale were firearms. *Id.* at *4. But that case did not concern how firearms manufacturers or dealers market firearms to consumers. The word "firearms" appears only twice in the 69-page order.

Considering its flawed analysis, the Court should decline to follow the *Soto* majority.[6]

> **2.      Recent authority further confirms courts narrowly construe the predicate exception.**

Rather than follow the *Soto* majority's flawed reasoning, the recent trend has been to apply the predicate exception narrowly as the circuit courts have done.  In *National Shooting Sports Foundation v. Platkin*, the district court considered whether a New Jersey statute, specifically creating a nuisance action against gun industry members "engaged in the sale, manufacturing, distribution, importing, or marketing of a gun-related product," fell within the PLCAA's predicate exception. CV226646ZNQTJB, 2023 WL 1380388, at *1, 4 (D.N.J. Jan. 31, 2023).  Plaintiffs' counsel in this case, Everytown Law, submitted an amicus brief arguing the statute qualified as a predicate statute. *Id.* at *5.  The court disagreed and enjoined enforcement of the statute.  *Id.* at *10.  Even though the statute expressly referred to the marketing of firearms, the court held that for it to qualify as a predicate statute, it must impose a ***concrete obligation*** that a manufacturer or seller can identify and follow.

> Accounting for both the specific and broader context in which "applicable to" is used, the Court agrees with NSSF that it would impose a concrete obligation with which industry members can confidently ensure compliance.  ***The predicate exception exempts only those civil actions that require proof that the actor knowingly violated the relevant statute.  The knowingly requirement of the predicate exception necessitates the actor to have a sufficiently concrete duty to have knowingly violated a relevant statute.***  It is contrary to the PLCAA to hold an industry member liable who complies with all laws but did not know that it failed to employ "reasonable procedures, safeguards, and business practices," or has conducted its lawful business in a manner so "unreasonable under all the circumstances" that it can be said to have "contribute[d] to" "a condition which ... contributes to the injury or endangerment of the health, safety, peace, comfort, or convenience of others."

*Id.* at *6 (citations omitted) (emphasis added); *see Soto*, 202 A.3d at 343 (Robinson, J., dissenting) (stating Congress contemplated only statutes providing clear standards with respect to selling and

---

[6] Plaintiffs also cite cases from Nevada and California for reaching the same conclusion as *Soto*.  Response, p. 13.  Neither case, however, held or even considered whether the FTCA qualifies as a predicate statute.  Rather, they considered state statutes not alleged or applicable in this case.  *See Prescott v. Slide Fire Sols.*, 410 F. Supp. 3d 1123, 1139 (D. Nev. 2019); *Goldstein v. Earnest*, No. 37-2020-00016638, slip op. At *5 (Cal. Super. Ct. San Diego County, July 2, 2021).

marketing firearms as predicate statutes).  Thus, even though the statute referred to the marketing of firearms, the court narrowly construed the predicate exception to apply to statutes that provide sufficiently defined obligations to allow an industry member to know whether it is violating the standard.

The FTCA, in comparison, does not provide concretely defined standards for gun industry members to follow.  *Id.*  Section 45(a) prohibits "unfair acts," but the elements of an "unfair act" are all defined in the ***outcome*** of the party's conduct –a substantial injury– rather than the actual conduct leading to the outcome.[7]  The statute does not even provide a "reasonableness" standard that the *Platkin* court found insufficient to qualify as a predicate statute.  Under that court's properly narrow construction, the FTCA would not qualify as a predicate statute.

The predicate exception is narrowly construed and only applies to statutes specifically applicable to the sale and marketing of firearms that provide concrete guidelines for sellers and manufacturers.  The FTCA is not such a statute and, thus, fails to qualify as a predicate statute.

### B.      Even if the FTCA qualifies as a predicate exception, Plaintiffs cannot establish a knowing violation as a matter of law.

To satisfy the predicate exception, a plaintiff must show the defendant "knowingly violated" an eligible state or federal statute.  15 U.S.C. § 7903(5)(A)(iii).  Congress requires proof of a ***violation*** of the eligible statute not proof that the conduct there is merely "***violative of***" the eligible statute.  *Id.* Plaintiffs cannot establish a knowing violation of the FTCA because it does not provide a private right of action and the only entity with jurisdiction to determine such a violation is the FTC.  Amended

---

[7] Again, to be "unfair" a practice must be one that "[1] causes or is likely to cause substantial injury to consumers [2] which is not reasonably avoidable by consumers themselves and [3] not outweighed by countervailing benefits to consumers or to competition."  *Federal Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009).

165790

Motion, p. 17-18; *see* 15 U.S.C. § 45(m) (authorizing FTC to pursue civil actions for knowing violations of FTCA).[8]

Plaintiffs maintain a predicate statute need not be privately enforceable to serve as a predicate statute.  Response, p. 16-18.  They state this argument was rejected in *Prescott* where the "court held a common-law negligence claim predicated on a violation of the Nevada Deceptive Trade Practices Act (NDTPA) which (like the FTC Act) ***did not contain a private right of action, satisfied the predicate exception***."  Response, p. 17 (emphasis added).  Plaintiffs' reliance on *Prescott* is misplaced because, as the court stated, the NDTPA creates a private cause of action.  *Prescott*, 410 F. Supp. 3d at 1138; *see Guerra v. Dematic Corp*, No. 3:18-CV-0376-LRH-CLB, 2020 WL 5995496, at *2 (D. Nev. Oct. 8, 2020) (stating NDPTA provides a right of action for victims of consumer fraud).[9]

Daniel Defense does not contend that only statutes permitting a private cause of action qualify as predicate statutes.  Plaintiffs pursuing a qualified civil liability action under the predicate exception must establish both a cause of action and a statutory exception.  In the case of the predicate exception, a knowing violation of an eligible statute is required.  15 U.S.C. § 7903(5)(A)(iii).  If an eligible predicate statute is alleged and provides a private right of action, then it is certainly easier for a plaintiff to establish a predicate exception.  But, if the predicate statute vests remedial power in a government agency that has exclusive jurisdiction to find a knowing violation of the statute (like the FTCA), then that jurisdiction must be respected, and the plaintiff will be foreclosed from bringing its action unless and until the agency has found a knowing violation.  Here, Plaintiffs' claims fail as a

---

[8] Plaintiffs state Daniel Defense should have raised this jurisdictional issue in under Rule 12(b)(1) rather than 12(b)(6). Response, p. 17, n. 8.  However, if a jurisdictional argument arises in a Rule 12(b)(6) motion, courts can treat it as if filed under Rule 12(b)(1).  *Hart v. Bank of Am., N.A.*, No. 3:14-CV-1609-D, 2014 WL 2777526, at *6 (N.D. Tex. June 19, 2014);  *DT Apartment Group, LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *14 (N.D. Tex. Dec. 26, 2012).

[9] Rather than include a private right of action in the NDTPA itself, Nevada funnels such claims through a general statute creating a private right of action for violation of various enumerated statutes, including the NDTPA. NEV. REV. STAT. § 41.600.

matter of law because, even assuming the FTCA is an eligible statute, there has been no finding by the FTC that Daniel Defense knowingly violated the FTCA, and it alone makes that determination.[10]

### C.      Plaintiffs are not "consumers" in this case.

Plaintiffs' reliance on the FTCA as a predicate statute fails even if: (1) it qualifies as an eligible statute (it does not), and (2) the Court had jurisdiction to decide whether the FTCA was knowingly violated (it does not), because Plaintiffs are not "consumers" of the Subject Firearm.  At the most fundamental level, a victim intentionally shot by a stranger who legally purchased the firearm is not a "consumer" of that firearm.  In this instance, the Assailant was the "consumer" of the Subject Firearm.  Given this fact, Plaintiffs failed to plead the elements of an unfair practice and can never plead certain elements.  Amended Motion, p. 18-27.

Plaintiffs argue the statutory text, court opinions, and enforcement actions support a "broad" definition of "consumer."  Response, p. 20-23.  ***None of these authorities*** hold or suggest that victims of intentional criminal violence, with no connection to the transaction at issue, qualify as "consumers" under the FTCA.  Plaintiffs want the Court to radically extend the scope of the FTCA into areas neither the courts nor the FTC have even considered.  In support of this expansion, Plaintiffs misrepresent Daniel Defense's argument.  Daniel Defense does not maintain that only purchasers of products are "consumers" under the statute.  *See* Response, p. 20 (stating "Daniel Defense's contention that 'consumer' is limited to the individual purchaser of the product"); *id.* at 24 ("[t]here is no requirement that the injured consumer have purchased Daniel Defense's products").  Daniel Defense explained that, under Section 45(a), "the consumer is a participant in a transaction (or their beneficiary) . . ."  Amended Motion, p. 21; *id.* at 24.  Consumer status requires a connection to the

---

[10] Plaintiffs also mischaracterize Daniel Defense's argument as suggesting the FTCA cannot serve as a predicate statute "because only the FTC may enforce the FTC Act . . . ."  Response,  p. 10.  Not so.  Assuming the FTCA is an eligible statute, it could serve as a predicate statute, but the determination of a knowing violation of the statute would still have to be made by the FTC, and that determination does not exist in this case.

165790

transaction that is the subject of the alleged unfair practice or act.  *Id.* at 22-24.  Here, Plaintiffs have no such connection and, thus, are not "consumers."

> **1.    Nothing within the FTCA supports an interpretation of "consumer" to include the victims of intentional, physical violence by third parties.**

Plaintiffs state that because the FTCA does not define "consumer," its ordinary meaning applies, and "a consumer is simply 'one that utilizes economic goods.'"  Response, p. 21 (quoting MERRIAM-WEBSTER COLLEGIATE DICTIONARY).  Of course, that definition is so broad it is meaningless.[11]  Under Plaintiffs' interpretation, Section 45(n) would read:

> The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to ~~consumers~~ [***anyone***] which is not reasonably avoidable by ~~consumers~~ [***anyone***] themselves and not outweighed by countervailing benefits to ~~consumers~~ [***anyone***] or to competition.

15 U.S.C. § 45(n) (as modified) (emphasis added).  Rather than a statute limited to protecting consumers from injuries caused by unfair practices, Plaintiffs' interpretation rewrites the FTCA to protect anyone from unfair practices, even if they have no connection to the transaction at issue, including victims of criminal violence.  Plaintiffs argue the definition of "consumer" extends to "third parties directly and ***foreseeably*** harmed by the purchasers encouraged misuse of the seller's product."  Response, p. 20 (emphasis added); *see id.* at 21, 23 and 24 (same).  There is nothing in the text of the FTCA to support this "foreseeable harm" standard for "consumers."  15 U.S.C. § 45(n).[12]  And none of the opinions or enforcement actions that Plaintiffs cite hold, state, or suggest that "consumers" include third parties foreseeably harmed by criminal misuse by product users.[13]

---

[11] Again, in their Amended Complaint, Plaintiffs now allege they are consumers because they "purchased school supplies, clothing, sneakers, and backpacks . . . ."  Doc. 26, ¶ 236. But Plaintiffs do not allege Daniel Defense made or sold these products, unfairly marketed them, or that Plaintiffs were injured by them.  In other words, Plaintiffs do not claim to be consumers of the product they allege to be unfairly marketed.

[12] The only time the word "foreseeable" appears in Section 45 is in connection with foreign commerce which is not at issue here.  *See* 15 U.S.C. § 45(a)(3) and (4).

[13] In contrast to Plaintiffs' unsupported and sweeping definition of "consumer" to include third parties foreseeably harmed by criminal conduct, Texas courts consistently hold that intentional criminal acts are not a foreseeable result of improperly

165790

The statute does not support Plaintiffs' sweeping interpretation of "consumer," and the Court should decline Plaintiffs' request to become the first court to adopt it.

> **2.      Plaintiffs cite no court opinions holding "consumers" include the victims of criminal violence.**

Plaintiffs argue federal courts have upheld agency enforcement actions for harm to non-purchasers.  Response, p. 21.  These cases, however, do not involve murder, physical assault, or any type of violent crime.  Moreover, Plaintiffs misrepresent the "consumer" status of the alleged victims in those cases.  For example, plaintiffs cite *Neovi, Inc.*, involving online checking accounts, arguing the victims were "consumers" under the FTCA even though they were "not customers of the company."  Response, p. 22.  But the opinion notes the victims had to first sign up for an account with the defendant at which point other users could exploit the system and withdraw funds without authorization.  *Federal Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1153 (9th Cir. 2010).  The victims had a connection to the transaction at issue, the electronic check system, and, thus, were properly consumers.

Plaintiffs also cite *Accusearch, Inc.* as a similar example.  Response, p. 22.  In that case the defendant was accused of improperly selling personal phone records it purchased from third parties.  *F.T.C. v. Accusearch, Inc.*, No. 06-CV-105-D, 2007 WL 4356786, at *1-2 (D. Wyo. Sept. 28, 2007), *aff'd*, 570 F.3d 1187 (10th Cir. 2009).  While the ostensible victims did not purchase any products or services from the defendant, they had a connection to the transactions at issue because their phone records were being sold.

---

supplying products to others, including minors.  *See Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999) (reinstating summary judgment in favor of store and stating "the intentional sexual assault and brutal murder of two teenage girls who happen upon a gang initiation some distance and time [hours] and location from the illegal sale of alcohol is not the type of harm that would ordinarily result from such a sale"); *Boggs v. Bottomless Pit Cooking Team*, 25 S.W.3d 818, 825 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same and stating "[t]he intentional murder by Bergeron which was some distance in time [hours] and location from the sale of alcohol 'is not the type of harm that would ordinarily result from such a sale" and would not have been foreseeable); *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784–85 (Tex. App.—Dallas 2000, pet. denied) (same and stating "Kmart could not foresee that this sale to a seventeen-year-old minor would result in negligent or intentional misuse of the ammunition").

165790

Simply put, no court has held that the FTCA protects victims of criminal violence who have no connection to the allegedly unfair consumer transaction.

### 3. Plaintiffs cite no FTC enforcement actions finding "consumers" include victims of criminal violence.

Plaintiffs argue that FTC enforcement actions also support a broad reading of "consumer." Response, p. 23. None of the cited actions involved murder, assault, or violent crimes or suggested that victims of such intentional crimes are "consumers" for purposes of the FTCA. Rather, most of them are garden-variety consumer protection actions seeking to prevent accidental injuries. *See In the Matter of Int'l Harvester Co.*, 104 F.T.C. 949, 1984 WL 565290, at *2 (1984) (pursuing action against manufacturer for failure to disclose that pressure in tractor fuel systems could result in fuel spraying users in close proximity, resulting in injuries); *In the Matter of AMF Inc.*, 95 F.T.C. 310, 1980 WL 338993, at *2 (1980) (advertisements for children's bicycles could encourage unsafe riding); *In the Matter of Mego Int'l, Inc.*, 92 F.T.C. 186, 1978 WL 206501, at *2 (1978) (advertisement for Cher doll could encourage children to use hairdryers near water); *In the Matter of Uncle Ben's, Inc.*, 89 F.T.C. 131, 1977 WL 188982, at *2 (1977) (advertisement could encourage children to cook food without parental supervision).[14] None of these enforcement actions suggest the FTCA is intended to protect consumers from criminal violence.

### 4. Plaintiffs fail to adequately plead the elements of an unfair practices act.

Relying on their extreme interpretation of "consumer" to include victims of criminal violence with no connection to the transaction, Plaintiffs argue they sufficiently pleaded all three elements of an unfair practice under the FTCA. Response, p. 27-28. In particular, for the second element

---

[14] Nor do any of the other actions Plaintiffs cite suggest the FTC liberally interprets "consumers" to include victims of criminal violence. *See In the Matter of Retina-x Studios, LLC*, No. 172-3118, 2019 WL 5587282, at *1-2 (F.T.C. Oct. 17, 2019) (action against provider of software that allowed for surreptitious monitoring of a user's mobile device or computer if purchaser first had physical access to the device to install the software); *In the Matter of Support King, LLC*, No. 192-3003, 2021 WL 4101690, at *1-2 (F.T.C. Aug. 26, 2021) (same).

(whether the consumer could reasonably avoid the harm), Plaintiffs argue that they "had neither the ability to 'anticipate the impending harm and the means to avoid it.'"  Response p., 28 (quoting *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1365 (11th Cir. 1988)).[15]  Plaintiffs, however, are not consumers of the product or unfair practice at issue for the reasons Daniel Defense has explained.[16]  Accordingly, Plaintiffs failed to adequately plead the elements of an FTCA violation and cannot rely on it as the basis for their predicate exception and their negligence per se exception. Amended Motion, p. 24-26.  The Assailant, the only consumer relevant in this case, could both anticipate and avoid the harm that he caused.

## II.      Plaintiffs' reliance on the negligence per se exception fails.

### A.      Plaintiffs fail to adequately plead their negligence per se claim because they do not allege any Texas court has held a violation of the FTCA constitutes negligence per se.

"Negligence per se applies ***when the courts have determined*** that the violation of a particular statute is negligence as a matter of law."  *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *5 (S.D. Tex. July 13, 2016) (emphasis added).[17]  Thus, federal courts dismiss negligence per se claims when the plaintiff fails to allege that courts in the state have determined the statute can serve as the basis for negligence per se.  *See* Amended Motion, p. 29-30 (citing cases).

---

[15] In *Orkin*, the pest control company was accused of unfair practices by breaching its contracts with over 200,000 customers.  849 F.2 at 1355.  Plaintiffs also cite *F.T.C. v. IFC Credit Corp.*, which involved unfair practices against equipment lessees.  543 F. Supp. 2d 925, 928  (N.D. Ill. 2008).  In both cases, those harmed were clearly consumers because they had contractual relationships with the defendants.  Again, Daniel Defense does not contend privity is required to be a consumer, but there must be a connection to the transaction in dispute, and Plaintiffs have none here.

[16] Plaintiffs acknowledge courts consider whether "consumers had a fair and free choice" in deciding Section 45(n)'s second element.  Response, p. 25 Citing *Neovi*, Plaintiffs argue this factor "does not preclude a court from determining that harm to a third party (who is not a party to the transaction) satisfies the second prong."  *Id.*  But this argument is based on Plaintiffs' misreading of *Neovi*.  Again, as previously discussed, the victims in that case had to first sign up an account with the defendant.  *Neovi*, 604 F.3d at 1153.  The victims had a connection to the transaction and, thus, were "consumers."

[17] *See Menlo Inv. Group, LLC v. Fought*, No. 3:12-CV-4182-K BF, 2015 WL 547343, at *5 (N.D. Tex. Feb. 5, 2015) (same); *Trevarthen v. U.S. Bank Nat'l Ass'n*, No. A-13-CA-154-SS, 2013 WL 12099974, at *3 (W.D. Tex. Apr. 29, 2013), *aff'd sub nom.*, 551 Fed. Appx. 148 (5th Cir. 2014) (same).

14

Plaintiffs attempt to distinguish those cases, arguing they all involved instances where **no specific statute** was alleged. Response, p. 30-31. That's incorrect. In *Menlo Inv. Group, LLC*, cited in the motion, the court dismissed the plaintiffs' negligence per se claim because they "fail[ed] to cite any authority that a violation of Chapter 51 [of the Texas Property Code]—or any specific provision thereof—constitutes negligence per se." 2015 WL 547343, at *5. In *Burgess*, Judge Ezra dismissed a negligence per se claim based on Section 192.007 of the Texas Government Code because the plaintiff "failed to cite any authority that a mere violation of that statute constitutes negligence per se . . . ." 2014 WL 5461803, at *12. Additionally, in *Trevarthen*, Judge Sparks dismissed a negligence per se claim, based on a specific statute, because the plaintiff cited no state authority indicating the statute established a standard of care. 2013 WL 12099974, at *3. And in *Allen v. Walmart Stores, L.L.C.*, the Fifth Circuit affirmed the dismissal of a negligence per se claim, based on a penal statute, finding "no caselaw in which any court has created civil tort liability based on Texas Health & Safety Code § 485.031 . . . ." 907 F.3d 170, 178 (5th Cir. 2018).

Plaintiffs argue requiring them to plead authority to support their negligence per se claim "would make little sense, as it would stunt the development of the law." Response, p. 31. This is a tacit admission Plaintiffs want the Court to expand Texas tort law by recognizing a negligence per se claim based on the FTCA. But as the Fifth Circuit has repeatedly admonished, it is not the job of federal courts to develop state law. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782, 781 (5th Cir. 2018) (stating "a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not recognized by state courts"); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 Fed. Appx. 239, 249–50 (5th Cir. 2020) (same and stating "we cannot recognize a claim that the Texas Supreme Court has not yet recognized"). As Judge Costa noted, "[a] party who wants a court to adopt an innovative rule of state law should litigate in state rather than federal court.... Federal judges are disinclined to make departures in areas of law that we

have no responsibility for developing." *New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 883–84 (S.D. Tex. 2014) (quoting *Hinojosa v. City of Terrell, Tex.,* 834 F.2d 1223, 1231 n.12 (5th Cir. 1988)). Dismissing a negligence per se claim that fails to allege Texas courts have applied the subject statute to such claims is consistent with the Fifth Circuit's instruction that federal courts should leave the development of state law to the state courts.

Plaintiffs must allege both a specific statute and that a Texas court has held it can serve as the basis for a negligence per se claim. Plaintiffs failed to allege such authority (nor can they)[18] and, therefore, dismissal is warranted. *Burgess*, 2014 WL 5461803, at *12. However, even if this Court were inclined to create new Texas law, the Plaintiffs' negligence per se claim fails for additional reasons.

**B.      Plaintiffs' negligence per se claim fails as a matter of law.**

**1.      The Fifth Circuit follows the Texas Supreme Court's standard, limiting negligence per se claims to violations of penal statutes, thus precluding Plaintiffs' reliance on the FTCA.**

The Texas Supreme Court unequivocally states that a negligence per se claim requires a violation of a penal statute. "Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct ***created by a penal statute*** rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) (emphasis added); *see Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex. 2001) (same). Plaintiffs cite old cases in which the court applied negligence per se to a civil statute and ordinance. Response, p. 31. Neither case actually considered whether negligence per se should be applied to civil statutes. With *Smith* and *Reeder*, the court clarified the standard.[19] And the Fifth Circuit expressly follows this standard.

---

[18] In their response, Plaintiffs do not cite any Texas case holding the FTCA can serve as the basis for negligence per se. Response, p. 29-36.

[19] Plaintiffs argue that, in the absence of Texas Supreme Court authority expressly abrogating the prior cases, negligence per se claims can still be based on violations of civil statutes. Response, p. 32. But in those cases, the court simply presumed, without considering or specifically holding, that civil statutes could be used for negligence per se claims. Thus,

165790

*See Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018) (citing *Reeder* and stating "[n]egligence per se is a common-law doctrine that allows courts to rely on a penal statute to define a reasonably prudent person's standard of care").[20]  The Texas Supreme Court, Fifth Circuit, and Western District courts explicitly state a penal statute is needed for a negligence per se claim.  It is undisputed that the FTCA is not a penal statute and, accordingly, the Court should dismiss Plaintiffs' negligence per se claim.

>  **2.     Plaintiffs are neither within the class of persons the FTCA was designed to protect, nor is the statute intended to prevent intentional criminal violence against persons unconnected to the transaction at issue.**

Plaintiffs' negligence per se claim fails even if the FTCA was a penal statute and eligible to serve as the basis for such a claim.  Plaintiffs argue they are consumers under the FTCA, and that the statute was intended to prevent foreseeable harm, including intentional criminal violence.  Response, p. 29-30.  This argument fails for the reasons Daniel Defense has previously explained in its motion and this reply.  Plaintiffs are not consumers in this case; and the FTCA was not intended to prevent intentional criminal violence against people with no connection to the allegedly unfair transaction.  Accordingly, Plaintiffs cannot establish these required elements of their negligence per se claim, and dismissal is appropriate.  *See* Amended  Motion, p. 34-36.

>  **3.     Permitting a negligence per se claim would thwart Congress' intent to not create a private right of action for violations of the FTCA.**

---

there was no rule of law for the *Smith* or *Reed* courts to abrogate when they stated negligence per se is based on the violation of penal statutes.

[20] *See Coyoy v. CoreCivic, Inc.*, No. SA-19-CA-00916-FB, 2022 WL 18034487, at *9 (W.D. Tex. Oct. 11, 2022) (same); *Armstrong v. Sw. Airlines Co.*, No. 3:20-CV-3610-BT, 2021 WL 4391247, at *3 (N.D. Tex. Sept. 24, 2021) (same); *Duarte v. St. Paul Fire & Marine Ins. Co.*, No. EP-14-CV-305-KC, 2016 WL 4257752, at *9 (W.D. Tex. Mar. 29, 2016) (same); *see also Peterson v. Sw. Airlines Co.*, No. 3:21-CV-1311-B, 2023 WL 2700719, at *4 (N.D. Tex. Mar. 29, 2023) ("Only a violation of a "penal statute" can serve as the basis for a negligence per se claim.").

The Texas Supreme Court has repeatedly refused to recognize negligence per se claims based on statutes where the Legislature could have but chose not to provide a private right of action.  *See* Amended Motion, p. 36-38 (citing cases).  Plaintiffs state this position undermines Daniel Defense's argument that only penal statutes can serve as the basis for negligence per se claims because such statutes are only enforceable by the government.  Response, p. 32-33.  But Plaintiffs ignore a key distinction between penal and civil statutes.  When a legislature enacts a penal statute, a private right of action is not an option.  Thus, legislative intent as to creating a civil remedy is not an issue when deciding whether a penal statute can serve as the basis for negligence per se.  But when enacting a civil statute, a legislature has the option to create a private remedy.  In that situation, the Texas Supreme Court will examine legislative intent.  In both *Smith* and *Reeder*, the Texas Supreme Court considered whether a statute that provided both criminal penalties and civil remedies could serve as the basis for a negligence per se claim and, in both cases, held it could not because doing so would thwart the exclusive civil remedies provided by the Legislature.  *Smith*, 940 S.W.2d at 608; *Reeder*, 61 S.W.3d at 364.  In short, the Texas Supreme Court defers to the legislative branch and will refrain from creating a civil remedy through negligence per se, based on civil statutes for which the legislature chose not to create such a remedy.  Congress could have created a private right of action for violations of the FTCA but did not.  15 U.S.C. § 7903(5)(C).  Allowing such a claim through negligence per se would be legislating by judicial decree.

Plaintiffs cite the Court to federal cases outside the circuit applying the FTCA to negligence per se claims.  Response, p. 33-34.  None of the cited cases concern Texas law.  And the local state laws in those cases do not apply the same standards for negligence per se as Texas does, because they permitted a civil statute to give rise to such a claim.  Further, none of those courts in those cases considered legislative intent as the Texas Supreme Court did in *Smith* and *Reed*.  *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 598 (S.D.N.Y. 2022) (stating that permitting

negligence per se claim based on FTCA would be "inconsistent with the legislative scheme").  By encouraging the Court to follow these other cases (Response, p. 34-35), Plaintiffs ask it to adopt a new basis for negligence per se that no Texas court has recognized.  And doing so would greatly expand the scope of Texas tort law despite the Fifth Circuit's admonition that federal courts should not take on the task of developing state law.  *In re DePuy Orthopaedics, Inc.*, 888 F.3d at 781-82 (admonishing district courts from adopting novel state law theories).[21]  The Court should decline Plaintiffs' improper request.

> **4.   There is no analogous common law duty for Plaintiffs' negligence per se claim, so Plaintiffs effectively (and improperly) ask the Court to recognize a new duty under Texas law.**

Even if the FTCA could supply a standard of care for Plaintiffs' negligence per se claim (it cannot), the claim still fails as a matter of law because Plaintiffs here lack an analogous common law duty.  Amended Motion, p. 40-42.  The Texas Supreme Court has explained "there is generally no duty to protect another from criminal acts of a third party. . . ."  *Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998).  Plaintiffs attempt to distinguish this case arguing for a legal duty ***to not encourage criminal conduct*** which they maintain arises from the foreseeable harm of marketing firearms to "young, disaffected men. . . ."  Response, p. 36.  But as previously noted, Texas courts consistently hold that criminal conduct is not a foreseeable harm of improperly furnishing products to others.  *See* p. 11, n.13, *supra*.  Further, while Plaintiffs argue there is a duty not to encourage criminal conduct, they fail to cite a Texas case recognizing such a duty.  Response, p. 35-36.  Nor is there such authority. *See Rocha v. Faltys*, 69 S.W.3d 315, 321–22 (Tex. App.—Austin 2002, no pet.) ("None of the parties have identified any Texas case suggesting that an adult encouraging another adult to engage in a dangerous activity can give rise to a legal duty. We are unable to locate any such precedent.").  In the

---

[21] Permitting the FTCA to serve as the basis for a negligence per se claim would not just expand Texas tort law with respect to the marketing of firearms but would create potential causes of action for the marketing of all products and services actually regulated by the FTCA.

165790

absence of such authority, Plaintiffs are effectively asking the Court –once again– to expand the scope of Texas tort law by recognizing a new legal duty in Texas in spite of the Fifth Circuit's contrary admonition. *See In re DePuy Orthopaedics, Inc.*, 888 F.3d at 781-82 (stating "federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not recognized by state courts").

No Texas court has recognized the FTCA as the basis for a negligence per se claim or that there is a tort duty to not encourage others to commit criminal acts.[22] Federal courts should leave the development of Texas law to Texas courts and, consequently, this Court should dismiss Plaintiffs' negligence per se claim against Daniel Defense.

### III. Plaintiffs fail to plead sufficient facts establishing proximate causation.

Plaintiffs maintain their Amended Complaint alleges facts that Daniel Defense's conduct proximately caused Plaintiffs' injuries. *See* Response, p. 36-42. Plaintiffs do not plead facts to establish proximate causation.[23] Plaintiffs allege Daniel Defense negligently and unfairly marketed its products by suggesting they could be used to commit criminal acts against civilians. But Plaintiffs do not allege any facts that the Assailant saw the marketing materials they claim to have caused their injuries; that he relied on those materials to purchase the Subject Firearm; or that they motivated him to commit his crimes. *See* Amended Motion at 28-29. Plaintiffs quote various allegations in their response; but none of them allege facts that the Assailant saw and acted on the advertisements and social media posts Plaintiffs contend to be illegal. Response at 38-39. Accordingly, Plaintiffs failed to adequately plead proximate causation for both their negligence and negligence per se claims.

---

[22] Daniel Defense denies that it has ever encouraged a criminal act of any kind but recognizes that such factual disputes are not presently before the Court.

[23] Plaintiffs wrongly assert that "Daniel Defense does not dispute that their marketing proximately caused the specific harm suffered by Plaintiffs. . . ." Response, p. 27, n. 16. Of course, Daniel Defense repeatedly stated in its motion that the Assailant was responsible for Plaintiffs' injuries. Amended Motion, p. 1-2. Further, in its Answer subject to its Rule 12(b)(6) Motion, Daniel Defense expressly denied that its marketing (or any alleged acts or omissions by it) caused Plaintiffs' harm. *See* Answer (Doc. 23), ¶¶ 71-84, 230-233.

IV.    **Plaintiffs' counsel has had three opportunities to plead viable claims against Daniel Defense, and further amendments are unwarranted.**

Finally, Plaintiffs request leave to further amend if any portion of their Amended Complaint is dismissed "so that they may add additional factual allegations to bolster their complaint." Plaintiffs' complaint includes over 300 paragraphs, so it is hard to imagine any new factual allegations they could assert.  Regardless, Plaintiffs' counsel in this case also represents the plaintiffs in *Zamora* and, between those two cases, they filed three complaints.[24]  A "fourth bite at the apple" would be futile.  Accordingly, the Court should deny further leave to amend.  *Bowling v. Dahlheimer*, No. 20-40642, 2022 WL 670150, at *2 (5th Cir. Mar. 7, 2022).

## CONCLUSION

WHEREFORE, Defendant Daniel Defense, LLC respectfully requests the Court dismiss all of Plaintiffs' claims against Daniel Defense, LLC with prejudice and deny Plaintiffs leave to amend those claims.  Daniel Defense, LLC further requests any additional relief to which it is entitled.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail:  dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

---

[24] Plaintiffs' allegations in its Amended Complaint are essentially identical to those in *Zamora*.

165790

*COUNSEL FOR DEFENDANT,*
*DANIEL DEFENSE, LLC F/K/A*
*DANIEL DEFENSE, INC.*

### CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of April 2023, I served all counsel of record, through electronic service, as authorized by the Federal Rules of Civil Procedure:

*/s/ David M. Prichard*
David M. Prichard

22