UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| SANDRA C. TORRES, INDIVIDUALLY AND AS MOTHER AND REPRESENTATIVE OF THE ESTATE OF DECEDENT, E.T., et al., | § § § § § § § § § § § § § § § § |
| *Plaintiffs,* | |
| v. | |
| DANIEL DEFENSE, LLC, et al., | |
| *Defendants.* | |

Case No. 2:22-CV-00059-AM

**PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs respectfully move this Court pursuant to Fed. R. Civ. P. 15(a)(2) to grant leave for them to file the attached proposed second amended complaint against all Defendants. This Court should grant leave to amend under Rule 15(a)(2), which "evinces a bias in favor of granting leave to amend." Such leave shall be "granted freely." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quotation omitted). On June 12, 2024, Plaintiffs emailed Defendants a request for their consent to this motion, accompanied by the text of the second amended complaint and a request that Defendants respond by noon on June 14. Defendants all oppose the motion. The proposed second amended complaint is filed as **Exhibit 1**. For the Court's reference, a redline showing the changes is filed as **Exhibit 2**.

## BACKGROUND

As the Court is aware, this case arises out of the mass shooting at Robb Elementary School in Uvalde, Texas, which took place on May 24, 2022. Plaintiffs are the family members of E.T., one of the 19 children and two teachers who was killed that day by a shooter armed with a Daniel Defense DDM4 V7 AR-15-style semi-automatic rifle. They filed suit against Defendants on November 28, 2022. Compl. at 1, ECF No. 1. Plaintiffs filed their first amended complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B) and Local Rule CV-15 on February 22, 2023. Am. Compl., ECF No. 26. Between March 9 and June 13, 2023, all Defendants filed motions to dismiss the complaint. ECF Nos. 35, 57, 58, 59, 66, 77, 81, 88, 90, 105. All of those motions remain pending. No scheduling order has yet been entered, and discovery has not commenced.

Since Plaintiffs' first amended complaint was filed, there have been new sources of facts and information about the shooting. Most notably, on May 24, 2024, other families of the children and teachers killed and wounded at Robb Elementary filed three new lawsuits—including one against law enforcement that is before this Court; one in Texas state court against Daniel Defense,

Oasis Outback, and additional defendants; and one in California state court against Meta/Instagram and Activision/Call of Duty, as well as related defendants.[1] These new lawsuits credibly allege significant new facts that were not previously public, most significantly information gleaned from the cellular phone of Salvador Ramos, the shooter, which detail his social media use.[2]

Other new facts have also emerged since Plaintiffs filed their first amended complaint, which Plaintiffs previously referenced in support of their claims. These include newspaper articles with details concerning the response of senior and supervising law enforcement officers,[3] and the January 2024 U.S. Department of Justice report on the law enforcement response.[4]

## PROPOSED COMPLAINT AMENDMENTS

Plaintiffs now file this motion to amend their complaint to reflect these new, highly relevant facts, as well as to provide some additional context to both these new facts and certain previously alleged facts. Plaintiffs' proposed amendments do not add any new defendants or any new claims, but only additional facts in support of its pending claims against the previously named defendants.

---

[1] *See* Complaint, *Cazares v. Maldonado*, No. 24-cv-00045 (W.D. Tex. May 24, 2024); Complaint, *Rubio v. Daniel Defense, LLC*, No. 2024-05-35546 (Tex. Dist. May 24, 2024); Complaint, *Mata v. Meta Platforms, Inc.*, No. 24SMCV02494 (Cal. Super. Ct. May 24, 2024).

[2] *See, e.g.*, Complaint at ¶¶ 297-98, *Rubio*, No. 2024-05-35546 (describing Ramos's frequent visits to Daniel Defense's website); *id.* at ¶¶ 395-404 (detailing Ramos's cellular phone activity prior to his purchase of a weapon from Daniel Defense); *id.* at ¶¶ 431-33, 435-36 (quoting Ramos's Google searches and text messages in the days leading up to the shooting).

[3] *See* ECF No. 91-1 at 23-24; ECF No. 92 at 19-20; ECF No. 107-1 at 25; ECF No. 118 at 18; ECF No. 120 at 20; ECF No. 122 at 20 (citing Joyce Sohyun Lee, et al., *A year after Uvalde, officers who botched response face few consequences,* WASHINGTON POST (May 24, 2023), https://www.washingtonpost.com/nation/2023/05/24/uvalde-school-shooting-police-response/).

[4] *See* ECF No. 131 at 2-3 (citing United States Department of Justice, *Critical Incident Review: Active Shooter at Robb Elementary School* (2024), available at https://www.documentcloud.org/documents/24366209critical-incidentreview-active-shooter-at-robb-elementary-school).

Plaintiffs' amendments include detailed new allegations regarding the shooter's exposure to Daniel Defense's marketing. New data from Ramos's phone reveals that he used Instagram compulsively, often more than 100 times in a single day—dramatically increasing the likelihood that he was influenced by Daniel Defense's Instagram posts glorifying the use of military weapons against civilians. Pls.' Second Am. Compl. ("2AC") ¶ 97. Photos and messages from Ramos's phone also reveal that he was an avid player of *Call of Duty: Modern Warfare*. *Id*. ¶¶ 93, 98, 106. This video game prominently features Daniel Defense's DDM4 V7 assault rifle on its loading screen. *Id*. ¶¶ 66-68. In the months after downloading *Modern Warfare*, Ramos's browser history shows that he frequently visited the Daniel Defense website to view the DDM4 V7—the weapon that he would use to murder students and staff at Robb Elementary. *Id*. ¶¶ 103-07. He visited the Daniel Defense website so frequently that the browser on his iPhone automatically marked it as a "frequently visited site." *Id*. ¶ 105. The cache in Ramos's phone contained Daniel Defense marketing images for the rifle he purchased, as well as other Daniel Defense rifles. *Id*. ¶ 108.

As the second amended complaint alleges, Ramos made an account on Daniel Defense's website and added a DDM4 V7 to his virtual shopping cart while he was still a minor. 2AC ¶¶ 127-28. Ramos was able to view this firearm because Daniel Defense does nothing to prevent underage users from viewing its website, browsing through its products, or creating membership accounts. *Id*. ¶¶ 121-22. Daniel Defense not only did not stop seventeen-year-old Ramos from adding the firearm to his cart; it created a price quote for him and sent him a personalized follow-up email offering again to sell him the weapon. *Id*. ¶¶ 129-32.

The proposed second amended complaint also adds additional facts about Ramos's behavior inside Oasis Outback, the store that transferred him the DDM4 V7 rifle and sold him enough other guns and ammunition to fight off a small army. Based on security footage from inside

3

the store, the way Ramos handled the rifles he purchased was an additional red flag to Oasis Outback that Ramos was a dangerous person who was likely to use the rifles he obtained from Oasis Outback for unlawful purposes, including to kill and injure people. 2AC ¶ 150.

Finally, the proposed second amended complaint adds significant detail to the catastrophic failures in law enforcement's response on May 24, 2022. Several individual officers either had or were in position to take control of the scene, but none of them did. For instance, the Department of Justice ("DOJ") report concluded that Defendant Arredondo "was the de facto on-scene incident commander" with the "necessary authority" to command officers that day. 2AC ¶ 173. Defendant Pargas was found to be "in the best position to start taking command and control, and to start coordinating with approaching personnel." *Id.* ¶ 174. Defendant Maldonado arrived on scene within sixty seconds of the shooter entering the West building—as Sergeant, Defendant Maldonado had supervisory authority. *Id.* ¶ 176. Defendant Kindell had twenty years of experience as a TDPS officer, as well as rapid response training and training on how to teach civilians to respond to active shooter situations. Kindell had the authority to exercise de facto supervisory authority over TDPS, UPD, UCISD, and County law enforcement officers. *Id.* ¶¶ 222, 229.

And as reflected in new direct quotes from several law enforcement defendants, it was fear of Ramos's Daniel Defense AR-15-style rifle, combined with deliberate indifference to Plaintiffs' constitutional rights, that caused the law enforcement defendants to disregard their training and treat Ramos as a barricaded subject, even though all the evidence available to the law enforcement defendants made clear that Ramos was an active shooter. 2AC ¶¶ 179-82, 204, 223, 231, 237-38. By ignoring this evidence—audible gunshots and radio broadcasts about the ongoing shooting and classes in session, to highlight the most obvious—the law enforcement defendants trapped the students in the classrooms with the shooter, cut them off from emergency medical responder

4

assistance, and physically prevented the students' desperate parents from trying to save their children themselves. *Id.* ¶¶ 199-202, 209, 225-26, 237-38, 248.

Additionally, Plaintiffs move to add/substitute the administrator of the Estate of E.T. (Albino Salinas, Jr.) as a plaintiff in this case. Plaintiffs previously noted for the Court that an application for letters of administration for E.T.'s estate was pending in state probate court,[5] and Albino Salinas, Jr. has now been appointed administrator of the estate. The Letters of Administration for E.T.'s estate are filed as **Exhibit 3**.

## ARGUMENT

At this early juncture, there is no "substantial reason" to deny Plaintiffs leave to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "The language of the rule evinces a bias in favor of granting leaving to amend," *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted), and "[a]mendments should be liberally allowed." *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). In considering whether to allow amendment, the Supreme Court has provided a list of factors to consider, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

There is no undue prejudice to Defendants or unwarranted burden to the Court by amending at this point. The Fifth Circuit has described prejudice as "denying the defendants notice of the nature of the complaint." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997). In other words, undue prejudice accrues if the amendments would so "fundamentally alter the nature of the case" that a defendant is unable to properly defend against the allegations during the

---

[5] *See* ECF. No. 120 at 19; ECF No. 122 at 19-20.

litigation process. *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). That is not the case here, as litigation has barely begun: Defendants' motions to dismiss are still pending, discovery has not yet started, and there is no scheduling order to reconfigure. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018) (finding no "undue delay" even after some discovery had occurred); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("[i]nstances abound in which appellate courts on review have required that leave to amend be granted after dismissal or entry of judgment").[6]

Nor can there be any credible argument that there has been bad faith, dilatory motive, or delay—let alone undue delay—given that Plaintiffs moved promptly to apprise the Court of new information and now to amend the complaint after determining that additional new information rose to a sufficient level to warrant the filing of an amended complaint. Undue delay is not merely "delay alone"—"it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux*, 376 F.3d at 427; *cf. Dussouy* 660 F.2d at 599 (finding no undue delay or bad faith when plaintiff promptly moved for leave to amend as soon as it became necessary).

The proposed amendments to the complaint are not futile. "When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint." *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). In particular, if a plaintiff has made several unsuccessful attempts to cure a deficiency in its complaint, the court may justifiably deny leave to

---

[6] The fact that the amendment may lead some parties to submit some additional briefing on the pending motions to dismiss is not sufficient to constitute undue prejudice, especially since Defendants will have to brief issues raised by the new facts in responding to (and presumably moving to dismiss) the three new lawsuits just filed against them. *See* n.1, *supra*.

further amend. *See, e.g.*, *Herrmann Holdings*, 302 F.3d at 567. Here, there has been no pattern of ineffectual amendments; on the contrary, Plaintiffs have filed no prior discretionary motions to amend their complaint, and none of their claims have been dismissed.

Moreover, Plaintiffs' amendments directly address issues raised in Defendant Daniel Defense's motion to dismiss. For example, Daniel Defense—wrongly—claims immunity under the Protection of Lawful Commerce in Arms Act ("PLCAA"). *See* Daniel Defense, LLC's Am. Rule 12(b)(6) Mot. to Dismiss 1, ECF Nos. 35-1/140. As addressed in Plaintiffs' earlier briefing, this immunity claim fails because of the so-called "predicate exception" to PLCAA, which permits suits to move forward when Defendants have "knowingly violated a State or Federal statute applicable to the sale and marketing" of firearms and that violation is a proximate cause of Plaintiffs' injuries. 15 U.S.C. § 7903(5)(A)(iii); Pls.' Opp. To Def. Daniel Defense's Mot. to Dismiss the First Am. Compl. ("Opp. to DD MTD") at 8, ECF No. 63-1. In their original complaint, Plaintiffs cited the Federal Trade Commission Act as the underlying statute that Defendants violated, *i.e.*, as the "predicate violation" that makes PLCAA immunity inapplicable.

The proposed amendments strengthen Plaintiffs' argument by adding a second statutory predicate violation: a violation of Texas's criminal ban on offering to sell firearms to minors. *See* Tex. Penal Code Ann. § 46.06(a)(2). Under that statute, a "person commits an offense if the person . . . intentionally or knowingly sells . . . or offers to sell . . . to any child younger than 18 years of age any firearm." *Id.* Texas defines "offers" to sell in line with the Second Restatement of Contracts. Under that definition, an offer is "an act that leads the offeree reasonably to believe that assent (i.e., acceptance) will conclude the deal." *Axelson, Inc. v. McEvoy–Willis*, 7 F.3d 1230, 1232 (5th Cir. 1993). While advertisements aimed at the general public may not be offers to sell, *see Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 232 (Tex. App. 1993), *writ denied* (Oct. 6, 1993), "a

7

price quotation, if detailed enough, can constitute an offer capable of acceptance" if it "reasonably appear[s] from the price quote that assent to the quote is all that is needed to ripen the offer into a contract." *J.D. Fields & Co. v. U.S. Steel Int'l, Inc.*, 426 F. App'x 271, 276-77 (5th Cir. 2011). That is particularly true when the offer "is directed not to the public generally but to one person individually." *Operating Tech. Elecs., Inc. v. Generac Power Sys., Inc.*, No. 4:12-CV-345-Y, 2014 WL 11498165, at *4-5 (N.D. Tex. Mar. 11, 2014), *aff'd*, 589 F. App'x 292 (5th Cir. 2015) (citation omitted).

The newly public facts show that Daniel Defense twice made an offer to sell a firearm to seventeen-year-old Ramos, in violation of § 46.06(a)(2). First, it created a shopping cart containing a personalized price quotation including the details of the gun itself, as well as the price, tax, and shipping fee. 2AC ¶ 129. That constituted a personalized price quotation assembled by Daniel Defense that constituted an offer to sell the gun to Ramos. Then, it resent him the offer via personalized email two days later. *Id.* ¶¶ 131-32. As now alleged, it did this knowing or consciously avoiding learning that Ramos was under eighteen years of age. *Id.* ¶¶ 133-37. These actions constitute a violation of Texas law, and thus provide a second, separate, and independent ground for rejecting Daniel Defense's claim to PLCAA protection.

Plaintiffs' proposed second amended complaint also adds new facts further refuting Daniel Defense's arguments that Plaintiffs were asking this Court to "speculate" about whether Ramos was exposed to and influenced by Daniel Defense's marketing. *See* ECF Nos. 35-1/140 at 28. Plaintiffs' First Amended Complaint already alleged a "constellation of facts" supporting an inference that Daniel Defense's marketing was a substantial and proximate cause that influenced Ramos to carry out the shooting that injured Plaintiffs. *See* Opp. to DD MTD at 40-41 (cataloging those facts). With new information about Ramos's social media use and browser history, those

8

allegations are significantly strengthened by concrete and direct evidence that Ramos repeatedly was exposed to and sought out Daniel Defense's marketing when planning his attack. *See supra* at 2-3 (citing 2AC ¶¶ 66-68, 93, 97-98, 103-07).

Additionally, Plaintiffs' proposed second amended complaint includes descriptions of Ramos's behavior in Oasis Outback based on excerpts of surveillance footage, which became available after Plaintiffs filed their amended complaint (and was referenced in Plaintiffs' earlier briefing). *See* ECF No. 104 at 19; 2AC ¶150. The way he handled the Daniel Defense rifle in the store, shouldering the rifle and pulling the trigger with the gun pointed toward the area where other customers could be shopping, further supports Plaintiffs' claims that Oasis knew or reasonably should have known that Ramos was a dangerous person who was likely to use the rifles he obtained from Oasis Outback for unlawful purposes, including to kill and injure people. For these reasons, Defendant Oasis Outback engaged in a negligent sale and transfer.

The additional law enforcement allegations are also centered on new evidence. The new allegations bolster Plaintiffs' claims that the law enforcement defendants were deliberately indifferent to and thus violated Plaintiffs' Fourth and Fourteenth Amendment rights in barricading the children and teachers in the classroom (instead of responding to the active shooter). The law enforcement defendants' deliberate indifference to Plaintiffs' rights is reflected, in particular, in the new allegations of several defendants' acknowledging in real time the danger of the shooter being left unfettered in the classroom (*i.e.*, in their fear of his AR-15-style weapon) and explicitly expressing their decision and instructions to other defendants not to breach the classroom for fear of their own safety, deciding instead to confine them in the classroom. *See* 2AC ¶¶ 179-82, 199-202, 204, 220-25, 231, 248 These allegations also further establish municipal liability in the allegations that: (a) Defendants Arredondo and Pargas were acting as final policymakers when

9

they chose to disregard the active shooter policy and instituted a policy to barricade the students and teachers inside the classroom with a killer, *see id*. ¶¶ 173-74, 176, 220-24; and (b) by virtue of the authority Defendants Arredondo, Pargas, Maldonado, and Kindell wielded, the individual law enforcement defendants were able to involuntarily confine—and instruct other officers on scene to confine—those trapped in the classroom by treating Ramos as a barricaded subject and not an active shooter who needed to be stopped immediately. In short, these new allegations further "make it plausible that [the law enforcement defendants] made the deliberate decision" and "a deliberate choice to" barricade the children in with the shooter, "a course of action [] made from among various alternatives" available to them that day. *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 317 (5th Cir. 2019) (cleaned up).

Finally, while there would be no undue prejudice to Defendants in granting the motion to amend, there would be substantial prejudice to Plaintiffs if the motion were denied. *See Jamieson*, 772 F.2d at 1208 ("Even if substantial reason to deny leave exists, the court should consider prejudice to the movant, as well as judicial economy, in determining whether justice requires granting leave."). The sufficiency of Plaintiffs' claims should be decided based on the full sweep of evidence now available, and on the same body of evidence that will be considered in the recently filed lawsuits on behalf of the other victims and survivors of the horrific May 24, 2022, shooting.

## CONCLUSION

For all these reasons, Plaintiffs respectfully request that this Court grant Plaintiffs leave to file their proposed second amended complaint.

Respectfully submitted,

By: */s/Laura Keeley*

**LAW OFFICES OF BLAS DELGADO, P.C.**
Blas H. Delgado

**EVERYTOWN LAW**
Eric Tirschwell (*pro hac vice*)

| | |
|---|---|
| 2806 Fredericksburg Rd., Ste. 116<br>San Antonio, TX 78201<br>210-227-4186<br>delgadoblas@yahoo.com | Laura Keeley (*pro hac vice*)<br>450 Lexington Avenue, P.O. Box #4184<br>New York, NY 10017<br>646-324-8226<br>etirschwell@everytown.org<br>lkeeley@everytown.org<br><br>**LM LAW GROUP, PLLC**<br>David Lopez (*pro hac vice*)<br>2806 Fredericksburg Rd., Ste. 118<br>San Antonio, TX 78201<br>210-396-2045<br>Moreno.LMLawGroup@gmail.com |

Dated: June 14, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June 2024, I served the following counsel through electronic service (ECF) as authorized by Fed. R. Civ. Pro. 5:

David M. Prichard
David R. Montpas
Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216

Stephen B. Barron
Blair J. Leake
Wright and Greenhill PC
4700 Mueller Blvd.
Suite 200
Austin, TX 78723

Thomas Phillip Brandt
Charles D. Livingston
Laura Dahl O'Leary
Fanning Harper Martinson Brandt & Kutchin, P.C.
One Glen Lakes
8140 Walnut Hill Lane
Ste 200
Dallas, TX 75231

D. Craig Wood
Katie E. Payne
Walsh Gallegos Trevino Kyle & Robinson P.C.
1020 N.E. Loop 410, Suite 450
San Antonio, Texas 78209

James E. Byrom
Stephanie Anne Hamm
Thompson & Horton, L.L.P.
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, TX 77027

Andre M. Landry, III
J.J. Hardig
Justin R. Cowan
Gray Reed
1300 Post Oak Blvd., Suite 2000
Houston, TX 77056

Clarissa M. Rodriguez
Patrick Charles Bernal
Denton, Navarro, Rocha & Bernal PC
2517 North Main Avenue
San Antonio, TX 78212

Charles Straight Frigerio
Hector Xavier Saenz
Law Offices of Charles S Frigerio
Riverview Towers
111 Soledad, Suite 465
San Antonio, TX 78205

William Scott Helfand
Norman Ray Giles
Randy Edward Lopez
Lewis Brisbois Bisgaard & Smith LLP
24 Greenway Plaza, Suite 1400
Houston, TX 77046

Briana Webb
Office of the Attorney General
Law Enforcement Defense Division
300 W 15th St.
Austin, TX 78701

*/s/ Laura Keeley*
Laura Keeley

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SANDRA C. TORRES, INDIVIDUALLY AND AS MOTHER AND REPRESENTATIVE OF THE ESTATE OF DECEDENT, E.T., et al., | § § § § § § § § § § § § § § § | Case No. 2:22-CV-00059-AM |
| *Plaintiffs,* | | |
| v. | | |
| DANIEL DEFENSE, LLC, et al., | | |
| *Defendants.* | | |

**[PROPOSED] ORDER GRANTING MOTION FOR LEAVE TO AMEND**

The Court is in receipt of Plaintiffs' Motion for Leave to Amend Complaint. For good cause shown, the motion is GRANTED.

SIGNED and ENTERED this _____ day of _____, 2024.

_____
Chief U.S. District Judge Alia Moses